| United States Bankruptcy Court<br>Northern District of Ohio | Voluntary Petition |
|---|---|

| Name of Debtor (if individual, enter Last, First, Middle):<br>**LifeLine Partners, Inc.** | Name of Joint Debtor (Spouse) (Last, First, Middle): |
|---|---|
| All Other Names used by the Debtor in the last 8 years<br>(include married, maiden, and trade names): | All Other Names used by the Joint Debtor in the last 8 years<br>(include married, maiden, and trade names): |
| Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN) No./Complete EIN<br>(if more than one, state all)<br>**34-1918386** | Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN) No./Complete EIN<br>(if more than one, state all) |

| Street Address of Debtor (No. and Street, City, and State):<br>**1825 Tibbetts-Wick Rd.**<br>**Girard, OH**       ZIP Code **44420** | Street Address of Joint Debtor (No. and Street, City, and State):    ZIP Code |
|---|---|
| County of Residence or of the Principal Place of Business:<br>**Trumbull** | County of Residence or of the Principal Place of Business: |
| Mailing Address of Debtor (if different from street address):    ZIP Code | Mailing Address of Joint Debtor (if different from street address):    ZIP Code |

Location of Principal Assets of Business Debtor
(if different from street address above):

### Type of Debtor
(Form of Organization)
(Check one box)

- ☐ Individual (includes Joint Debtors)
  *See Exhibit D on page 2 of this form.*
- ■ Corporation (includes LLC and LLP)
- ☐ Partnership
- ☐ Other (If debtor is not one of the above entities, check this box and state type of entity below.)

### Nature of Business
(Check one box)

- ☐ Health Care Business
- ☐ Single Asset Real Estate as defined in 11 U.S.C. § 101 (51B)
- ☐ Railroad
- ☐ Stockbroker
- ☐ Commodity Broker
- ☐ Clearing Bank
- ■ Other

#### Tax-Exempt Entity
(Check box, if applicable)

- ☐ Debtor is a tax-exempt organization under Title 26 of the United States Code (the Internal Revenue Code).

### Chapter of Bankruptcy Code Under Which the Petition is Filed (Check one box)

- ☐ Chapter 7
- ☐ Chapter 9
- ■ Chapter 11
- ☐ Chapter 12
- ☐ Chapter 13
- ☐ Chapter 15 Petition for Recognition of a Foreign Main Proceeding
- ☐ Chapter 15 Petition for Recognition of a Foreign Nonmain Proceeding

#### Nature of Debts
(Check one box)

- ☐ Debts are primarily consumer debts, defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."
- ■ Debts are primarily business debts.

### Filing Fee (Check one box)

- ■ Full Filing Fee attached
- ☐ Filing Fee to be paid in installments (applicable to individuals only). Must attach signed application for the court's consideration certifying that the debtor is unable to pay fee except in installments. Rule 1006(b). See Official Form 3A.
- ☐ Filing Fee waiver requested (applicable to chapter 7 individuals only). Must attach signed application for the court's consideration. See Official Form 3B.

### Chapter 11 Debtors

Check one box:
- ■ Debtor is a small business debtor as defined in 11 U.S.C. § 101(51D).
- ☐ Debtor is not a small business debtor as defined in 11 U.S.C. § 101(51D).

Check if:
- ■ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,343,300 (*amount subject to adjustment on 4/01/13 and every three years thereafter*).

Check all applicable boxes:
- ☐ A plan is being filed with this petition.
- ☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

### Statistical/Administrative Information

- ■ Debtor estimates that funds will be available for distribution to unsecured creditors.
- ☐ Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditors.

THIS SPACE IS FOR COURT USE ONLY

**Estimated Number of Creditors**

| ■ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|---|
| 1-49 | 50-99 | 100-199 | 200-999 | 1,000-5,000 | 5,001-10,000 | 10,001-25,000 | 25,001-50,000 | 50,001-100,000 | OVER 100,000 |

**Estimated Assets**

| ☐ | ☐ | ■ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|---|
| $0 to $50,000 | $50,001 to $100,000 | $100,001 to $500,000 | $500,001 to $1 million | $1,000,001 to $10 million | $10,000,001 to $50 million | $50,000,001 to $100 million | $100,000,001 to $500 million | $500,000,001 to $1 billion | More than $1 billion |

**Estimated Liabilities**

| ☐ | ☐ | ☐ | ☐ | ■ | ☐ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|---|
| $0 to $50,000 | $50,001 to $100,000 | $100,001 to $500,000 | $500,001 to $1 million | $1,000,001 to $10 million | $10,000,001 to $50 million | $50,000,001 to $100 million | $100,000,001 to $500 million | $500,000,001 to $1 billion | More than $1 billion |

| **Voluntary Petition** | Name of Debtor(s): |
| *(This page must be completed and filed in every case)* | **LifeLine Partners, Inc.** |

### All Prior Bankruptcy Cases Filed Within Last 8 Years (If more than two, attach additional sheet)

| Location Where Filed:  **- None -** | Case Number: | Date Filed: |
| Location Where Filed: | Case Number: | Date Filed: |

### Pending Bankruptcy Case Filed by any Spouse, Partner, or Affiliate of this Debtor (If more than one, attach additional sheet)

| Name of Debtor: **- None -** | Case Number: | Date Filed: |
| District: | Relationship: | Judge: |

| **Exhibit A** | **Exhibit B** |
| | (To be completed if debtor is an individual whose debts are primarily consumer debts.) |
| (To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11.) | I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter. I further certify that I delivered to the debtor the notice required by 11 U.S.C. §342(b). |
| ☐ Exhibit A is attached and made a part of this petition. | X _____ |
| | Signature of Attorney for Debtor(s)              (Date) |

### Exhibit C

Does the debtor own or have possession of any property that poses or is alleged to pose a threat of imminent and identifiable harm to public health or safety?

☐ Yes, and Exhibit C is attached and made a part of this petition.

■ No.

### Exhibit D

(To be completed by every individual debtor. If a joint petition is filed, each spouse must complete and attach a separate Exhibit D.)

☐ Exhibit D completed and signed by the debtor is attached and made a part of this petition.

If this is a joint petition:

☐ Exhibit D also completed and signed by the joint debtor is attached and made a part of this petition.

### Information Regarding the Debtor - Venue
#### (Check any applicable box)

■ Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.

☐ There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District.

☐ Debtor is a debtor in a foreign proceeding and has its principal place of business or principal assets in the United States in this District, or has no principal place of business or assets in the United States but is a defendant in an action or proceeding [in a federal or state court] in this District, or the interests of the parties will be served in regard to the relief sought in this District.

### Certification by a Debtor Who Resides as a Tenant of Residential Property
#### (Check all applicable boxes)

☐ Landlord has a judgment against the debtor for possession of debtor's residence. (If box checked, complete the following.)

_____

(Name of landlord that obtained judgment)

_____

(Address of landlord)

☐ Debtor claims that under applicable nonbankruptcy law, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after the judgment for possession was entered, and

☐ Debtor has included in this petition the deposit with the court of any rent that would become due during the 30-day period after the filing of the petition.

☐ Debtor certifies that he/she has served the Landlord with this certification. (11 U.S.C. § 362(l)).

## Voluntary Petition

*(This page must be completed and filed in every case)*

**Name of Debtor(s):**
**LifeLine Partners, Inc.**

**Signatures**

### Signature(s) of Debtor(s) (Individual/Joint)

I declare under penalty of perjury that the information provided in this petition is true and correct.
[If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under chapter 7] I am aware that I may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7.
[If no attorney represents me and no bankruptcy petition preparer signs the petition] I have obtained and read the notice required by 11 U.S.C. §342(b).

I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X _____
Signature of Debtor

X _____
Signature of Joint Debtor

_____
Telephone Number (If not represented by attorney)

_____
Date

### Signature of Attorney*

X **/s/ Melissa M. Macejko**
Signature of Attorney for Debtor(s)

**Melissa M. Macejko 0070974**
Printed Name of Attorney for Debtor(s)

**Suhar & Macejko, LLC**
Firm Name

**29 E. Front St., 2nd Floor**
**P.O. Box 1497**
**Youngstown, OH 44501-1497**

Address

**Email: mmacejko@suharlaw.com**
**(330) 744-9007  Fax: (330) 744-5857**
Telephone Number

**January 21, 2011**
Date

*In a case in which § 707(b)(4)(D) applies, this signature also constitutes a certification that the attorney has no knowledge after an inquiry that the information in the schedules is incorrect.

### Signature of Debtor (Corporation/Partnership)

I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor.

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X **/s/ Kathleen Burgdorf**
Signature of Authorized Individual

**Kathleen Burgdorf**
Printed Name of Authorized Individual

**President**
Title of Authorized Individual

**January 21, 2011**
Date

### Signature of a Foreign Representative

I declare under penalty of perjury that the information provided in this petition is true and correct, that I am the foreign representative of a debtor in a foreign proceeding, and that I am authorized to file this petition.

(Check only one box.)

☐ I request relief in accordance with chapter 15 of title 11. United States Code. Certified copies of the documents required by 11 U.S.C. §1515 are attached.

☐ Pursuant to 11 U.S.C. §1511, I request relief in accordance with the chapter of title 11 specified in this petition. A certified copy of the order granting recognition of the foreign main proceeding is attached.

X _____
Signature of Foreign Representative

_____
Printed Name of Foreign Representative

_____
Date

### Signature of Non-Attorney Bankruptcy Petition Preparer

I declare under penalty of perjury that: (1) I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110; (2) I prepared this document for compensation and have provided the debtor with a copy of this document and the notices and information required under 11 U.S.C. §§ 110(b), 110(h), and 342(b); and, (3) if rules or guidelines have been promulgated pursuant to 11 U.S.C. § 110(h) setting a maximum fee for services chargeable by bankruptcy petition preparers, I have given the debtor notice of the maximum amount before preparing any document for filing for a debtor or accepting any fee from the debtor, as required in that section. Official Form 19 is attached.

_____
Printed Name and title, if any, of Bankruptcy Petition Preparer

_____
Social-Security number (If the bankrutpcy petition preparer is not an individual, state the Social Security number of the officer, principal, responsible person or partner of the bankruptcy petition preparer.)(Required by 11 U.S.C. § 110.)

_____
Address

X _____

_____
Date

Signature of Bankruptcy Petition Preparer or officer, principal, responsible person,or partner whose Social Security number is provided above.

Names and Social-Security numbers of all other individuals who prepared or assisted in preparing this document unless the bankruptcy petition preparer is not an individual:

If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person.

*A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both 11 U.S.C. §110; 18 U.S.C. §156.*

## LIFELINE PARTNERS, INC.
## RESOLUTION AUTHORIZING COMMENCMENT OF CHAPTER 11 CASE

The undersigned constituting all of the Shareholders, Officers and Directors of LifeLine Partners, Inc. (the "Company") having convened for a special meeting, after due notice to all Shareholders, Officers and Directors, take the following action:

WHEREAS, the financial condition of this Company has deteriorated as a result of its inability to pay debts in a timely manner; and

WHEREAS, after extensive review of this Company's financial condition, it appears that continued operation in its current fashion is not viable; and

WHEREAS, it is in the best interest of this Company to seek relief under chapter 11 of title 11, United States Code.

Upon motion and a unanimous vote by the Shareholders, Officers and Directors of this Company, the following was adopted:

RESOLVED:

That this Company shall file a voluntary petition for relief under chapter 11 of title 11, United States Code in the United States Bankruptcy Court for the Northern District of Ohio - Youngstown.

RESOLVED:

That Kathleen Burgdorf, President shall be authorized to engage the services of attorneys and other professionals as may be necessary for filing for relief under chapter 11 of the of title 11, United States Code.

RESOLVED:

That Steve T. Shelton, CPA, Inc. shall be engaged as the accountant for this Company in its bankruptcy.

RESOLVED:

That the law firm of Suhar & Macejko, LLC shall be engaged to represent this Company in its filing for relief under chapter 11, United States Code.

RESOLVED:

That Kathleen Burgdorf, President shall be authorized to execute all documents and to testify on behalf of this Company as may be necessary in its bankruptcy.

There being no further business to come before this special meeting, and the foregoing being unanimously approved by the Shareholders, Officers and Directors of this Company, the motion to adjourn was made and seconded and the meeting was adjourned.

Dated: 1-20-11                          /s/ Kathleen Burgdorf
                                        Kathleen Burgdorf, President
                                        82% Shareholder

Dated: 1-20-11                          /s/ George Havas
                                        George Havas
                                        9% Shareholder

Dated: 01/20/11                       /s/ Sarah Kapp

                                           Sarah Kapp
                                           9% Shareholder


*★ December month end entries not done ★*

# LIFELINE PARTNERS, INC.
## Balance Sheet
### December 31, 2010

### ASSETS

| | | |
|---|---:|---:|
| **Current Assets** | | |
| Checking-FNB | $ 7,805.41 | |
| Checking-Chase | 27,000.00 | |
| Savings | 199.70 | |
| Petty Cash | 80.00 | |
| A/R - Insurance | 364,025.83 | |
| A/R - Patient | 8,997.54 | |
| Allowance for Est Uncoll A/R | (223,814.03) | |
| A/R Contra | (149,209.34) | |
| Inventory - CPAP Equipment | 3,692.48 | |
| Notes Receivable - Burgdorf | 35,507.36 | |
| Inter-company Reimb. - Canton | 169,298.36 | |
| Inter-company Reimb. - Sleep | 39,665.00 | |
| N/P Bruce Burgdorf | 44,500.00 | |
| Total Current Assets | | 327,748.31 |
| | | |
| **Property and Equipment** | | |
| Equipment | 144,910.36 | |
| Leasehold Improvements | 9,732.49 | |
| Building Improvement | 64,174.82 | |
| Billing Software | 17,318.92 | |
| Furniture and Fixtures | 35,285.11 | |
| Building | 485.33 | |
| Computer equipment & software | 42,894.96 | |
| Vehicles | 184,200.60 | |
| Accumulated Depreciation | (334,089.00) | |
| Total Property and Equipment | | 164,913.59 |
| | | |
| **Other Assets** | | |
| Deposit - Rent | 3,362.00 | |
| Total Other Assets | | 3,362.00 |
| | | |
| **Total Assets** | $ | 496,023.90 |

### LIABILITIES AND CAPITAL

| | | |
|---|---:|---:|
| **Current Liabilities** | | |
| Federal Income Taxes (941) | $ 6,154.32 | |
| Ohio Withholding | 2,136.70 | |
| Campbell Withholding | 243.33 | |
| Girard Withholding | 65.85 | |
| Hubbard Withholding | 132.74 | |
| McDonald Withholding | 341.41 | |
| 401k Withholding | 2,331.51 | |
| PA State Withholding | 432.92 | |
| OH State Unemployment | 146.86 | |
| Federal Unemployment | 50.53 | |
| N/P - Capital Distribution | 14,663.00 | |
| FNB Loan #44301275 | 15,510.09 | |
| N/P - 2004 Montana | 7,584.59 | |
| Current Portion Long Term Debt | 47,465.04 | |
| Current Portion Long Term Debt | (47,465.04) | |

Unaudited - For Management Purposes Only

| | | |
|---|---:|---:|
| Total Current Liabilities | | 49,793.85 |
| **Long-Term Liabilities** | | |
| N/P - G. Havas | 14,441.30 | |
| LOC - FNB 44204105 | 97,742.96 | |
| N/P - FNB 44203535 | 122,001.42 | |
| FNB-Loan#44448000 Bldg | 57,340.63 | |
| PNC Loan Bldg | 72,564.85 | |
| Total Long-Term Liabilities | | 364,091.16 |
| Total Liabilities | | 413,885.01 |
| **Capital** | | |
| Common Stock | 500.00 | |
| Retained Earnings | 87,709.45 | |
| Net Income | (6,070.56) | |
| Total Capital | | 82,138.89 |
| Total Liabilities & Capital | $ | 496,023.90 |

Unaudited - For Management Purposes Only

# LIFELINE PARTNERS, INC.
## Income Statement
### For the Twelve Months Ending December 31, 2010

*December month end entries not done*

| | Current Month | | | Year to Date | |
|---|---|---|---|---|---|
| **Revenues** | | | | | |
| Fees | $ 108,525.79 | 100.22 | $ | 1,473,379.98 | 83.63 |
| CPAP Sales | 260.35 | 0.24 | | 260.35 | 0.01 |
| Reimbursement for CPAP | 0.00 | 0.00 | | 0.00 | 0.00 |
| Sumai Billing | 0.00 | 0.00 | | 0.00 | 0.00 |
| Interest Income | 0.00 | 0.00 | | 53.45 | 0.00 |
| Rental Income | 0.00 | 0.00 | | 0.00 | 0.00 |
| Reimburesment - CHM | 19.58 | 0.02 | | 19.58 | 0.00 |
| Herbalife Sales | 0.00 | 0.00 | | 0.00 | 0.00 |
| Reimbursement - Canton | 0.00 | 0.00 | | 121,142.26 | 6.88 |
| Reimbursement - Sleep | 0.00 | 0.00 | | 152,147.63 | 8.64 |
| Reimbursement Paychex | 0.00 | 0.00 | | 0.00 | 0.00 |
| Consulting income | 0.00 | 0.00 | | 0.00 | 0.00 |
| Reimbursement Carl Ho | 0.00 | 0.00 | | 913.26 | 0.05 |
| Miscellaneous Income | (520.00) | (0.48) | | 14,165.90 | 0.80 |
| Refunds | 0.00 | 0.00 | | (359.05) | (0.02) |
| Rental income | 0.00 | 0.00 | | 0.00 | 0.00 |
| **Total Revenues** | 108,285.72 | 100.00 | | 1,761,723.36 | 100.00 |
| | | | | | |
| **Cost of Sales** | | | | | |
| Herbalife COGS | 0.00 | 0.00 | | 0.00 | 0.00 |
| COGS - CPAP | 0.00 | 0.00 | | 0.00 | 0.00 |
| **Total Cost of Sales** | 0.00 | 0.00 | | 0.00 | 0.00 |
| | | | | | |
| **Gross Profit** | 108,285.72 | 100.00 | | 1,761,723.36 | 100.00 |
| | | | | | |
| **Expenses** | | | | | |
| Marketing | 180.00 | 0.17 | | 2,384.24 | 0.14 |
| Transfer funds | 0.00 | 0.00 | | 0.00 | 0.00 |
| Auto Expense | 452.98 | 0.42 | | 34,424.92 | 1.95 |
| Auto Lease | 3,006.50 | 2.78 | | 6,873.80 | 0.39 |
| Lease Expense | 0.00 | 0.00 | | 0.00 | 0.00 |
| Bank Service Charges | 108.15 | 0.10 | | 4,865.63 | 0.28 |
| Late Charges | 25.00 | 0.02 | | 1,744.87 | 0.10 |
| Finance Charge | 8.20 | 0.01 | | 1,577.42 | 0.09 |
| Collection fees | 0.00 | 0.00 | | 0.00 | 0.00 |
| Insurance Management Fee | 0.00 | 0.00 | | 844.91 | 0.05 |
| Depreciation Expense | 2,833.50 | 2.62 | | 34,002.00 | 1.93 |
| Equipment Lease Expense | 424.56 | 0.39 | | 548.28 | 0.03 |
| Bank Card Merchant Fees | 76.34 | 0.07 | | 693.42 | 0.04 |
| Professional Fees | 750.00 | 0.69 | | 7,665.00 | 0.44 |
| Dues and Subscriptions | 250.00 | 0.23 | | 3,956.65 | 0.22 |
| Meals and Entertainment | 129.56 | 0.12 | | 1,553.16 | 0.09 |
| Food & Beverage - Patients | 0.00 | 0.00 | | 0.00 | 0.00 |
| Insurance - Health | 3,612.37 | 3.34 | | 33,612.59 | 1.91 |
| Insurance - Business | 0.00 | 0.00 | | 0.00 | 0.00 |
| Insurance - Other | 1,003.88 | 0.93 | | 21,306.20 | 1.21 |
| Laundry | 0.00 | 0.00 | | 1,101.68 | 0.06 |
| Janitorial | 0.00 | 0.00 | | 0.00 | 0.00 |
| Sharps Disposal | 0.00 | 0.00 | | 0.00 | 0.00 |
| Repairs and Maintenance | 224.20 | 0.21 | | 14,401.07 | 0.82 |
| Computer Expense | 0.00 | 0.00 | | 0.00 | 0.00 |
| Billing expenses | 133.33 | 0.12 | | 4,624.72 | 0.26 |
| Medical Supplies | 370.42 | 0.34 | | 8,702.30 | 0.49 |
| Supplies | 0.00 | 0.00 | | 17,443.79 | 0.99 |

For Management Purposes Only

LIFELINE PARTNERS, INC.
Income Statement
For the Twelve Months Ending December 31, 2010

| | Current Month | | Year to Date | |
|---|---|---|---|---|
| Equipment Accessories | 0.00 | 0.00 | 0.00 | 0.00 |
| Office Expense | 7,953.62 | 7.35 | 43,683.62 | 2.48 |
| Oxygen Rental and Equipment | 418.98 | 0.39 | 10,049.58 | 0.57 |
| Postage | 400.00 | 0.37 | 4,801.33 | 0.27 |
| Bonus | 0.00 | 0.00 | 9,407.75 | 0.53 |
| Wages | 102,303.06 | 94.48 | 1,052,834.40 | 59.76 |
| 401K total | 0.00 | 0.00 | 0.00 | 0.00 |
| 401K match expense | 2,725.73 | 2.52 | 28,075.59 | 1.59 |
| Withheld AFLAC | 0.00 | 0.00 | 0.00 | 0.00 |
| 401k loan | 0.00 | 0.00 | 0.00 | 0.00 |
| Garnishment | 0.00 | 0.00 | 0.00 | 0.00 |
| Payroll taxes | 7,634.67 | 7.05 | 83,439.03 | 4.74 |
| Paychex fee | 0.00 | 0.00 | 942.07 | 0.05 |
| Workers Compensation | 0.00 | 0.00 | 2,852.77 | 0.16 |
| Pension Expense | 0.00 | 0.00 | 1,185.00 | 0.07 |
| Rent Expense | 11,093.27 | 10.24 | 167,840.77 | 9.53 |
| Education | 0.00 | 0.00 | 414.00 | 0.02 |
| Travel | 71.51 | 0.07 | 3,209.77 | 0.18 |
| Utilities | 733.05 | 0.68 | 17,113.80 | 0.97 |
| Security Services | 0.00 | 0.00 | 2,234.91 | 0.13 |
| Telephone | 0.00 | 0.00 | 19,926.85 | 1.13 |
| Subcontract 1099 | 8,303.85 | 7.67 | 89,857.27 | 5.10 |
| Subcontract medical svc | 0.00 | 0.00 | 0.00 | 0.00 |
| Subcontract transportation svc | 0.00 | 0.00 | 0.00 | 0.00 |
| Property Tax - OPP | 0.00 | 0.00 | 0.00 | 0.00 |
| Ohio Dept of Taxation | 0.00 | 0.00 | 3,447.10 | 0.20 |
| Licenses and Registration | 0.00 | 0.00 | 0.00 | 0.00 |
| Payroll Fee Expense | 0.00 | 0.00 | 0.00 | 0.00 |
| Interest Expense | 1,458.74 | 1.35 | 17,535.64 | 1.00 |
| Ex Reimbursement - Canton | 0.00 | 0.00 | 0.00 | 0.00 |
| Miscellaneous expense | 0.00 | 0.00 | 0.00 | 0.00 |
| Ex Reimbursement - Sleep | 0.00 | 0.00 | 0.00 | 0.00 |
| Ex. Reimbursement - Alt. Ave | 0.00 | 0.00 | 0.00 | 0.00 |
| Loss on sale of vehicle | 0.00 | 0.00 | 0.00 | 0.00 |
| Gifts Given | 0.00 | 0.00 | 0.00 | 0.00 |
| Charitable Donations | 260.00 | 0.24 | 1,940.00 | 0.11 |
| Overpayments/Refunds | 0.00 | 0.00 | 0.00 | 0.00 |
| Start up expenses | 0.00 | 0.00 | 4,645.00 | 0.26 |
| Alternative Avenues | 0.00 | 0.00 | 0.00 | 0.00 |
| Sam's Club Discover | 0.00 | 0.00 | 0.00 | 0.00 |
| Visa Advanta | 0.00 | 0.00 | 0.00 | 0.00 |
| Visa Capital One | 0.00 | 0.00 | 31.02 | 0.00 |
| Visa Bank One | 0.00 | 0.00 | 0.00 | 0.00 |
| Total Expenses | 156,945.47 | 144.94 | 1,767,793.92 | 100.34 |
| Net Income | $ (48,659.75) | (44.94) | $ (6,070.56) | (0.34) |

For Management Purposes Only

| Form **1120S** | **U.S. Income Tax Return for an S Corporation** | OMB No. 1545-0130 |
|---|---|---|
| Department of the Treasury Internal Revenue Service (77) | ▶ Do not file this form unless the corporation has filed or is attaching Form 2553 to elect to be an S corporation. | **2009** |

For calendar year 2009 or tax year beginning _____, and ending _____

| | | | |
|---|---|---|---|
| **A** S election effective date 03/22/2000 | Use IRS label. Otherwise, print or type. | Name **LIFELINE PARTNERS, INC.** | **D** Employer identification number **34-1918386** |
| **B** Business activity code number (see instructions) 621498 | | Number, street, and room or suite no. If a P.O. box, see instructions. **397 CHURCHILL-HUBBARD ROAD SUITE 2** | **E** Date incorporated **03/22/2000** |
| **C** Check if Sch. M-3 attached ☐ | | City or town, state, and ZIP code **YOUNGSTOWN, OH  44505** | **F** Total assets (see instructions) **$ 395,947.** |

**G** Is the corporation electing to be an S corporation beginning with this tax year? ☐ Yes ☒ No  If "Yes," attach Form 2553 if not already filed

**H** Check if: **(1)** ☐ Final return **(2)** ☐ Name change **(3)** ☐ Address change **(4)** ☐ Amended return **(5)** ☐ S election termination or revocation

**I** Enter the number of shareholders who were shareholders during any part of the tax year ▶ 3

**Caution:** Include only trade or business income and expenses on lines 1a through 21. See the instructions for more information.

| | | | | |
|---|---|---|---|---|
| **Income** | **1 a** Gross receipts or sales | 1,959,495. **b** Less returns and allowances | **c** Bal ▶ | **1c** 1,959,495. |
| | **2** Cost of goods sold (Schedule A, line 8) | | | **2** |
| | **3** Gross profit. Subtract line 2 from line 1c | | | **3** 1,959,495. |
| | **4** Net gain (loss) from Form 4797, Part II, line 17 *(attach Form 4797)* | | | **4** |
| | **5** Other income (loss) *(attach statement)* | | | **5** |
| | **6** **Total income (loss).** Add lines 3 through 5 | | ▶ | **6** 1,959,495. |
| **Deductions (See instructions for limitations)** | **7** Compensation of officers | STATEMENT 1 | | **7** 132,000. |
| | **8** Salaries and wages (less employment credits) | | | **8** 1,049,473. |
| | **9** Repairs and maintenance | | | **9** 7,683. |
| | **10** Bad debts | | | **10** |
| | **11** Rents | | | **11** 156,890. |
| | **12** Taxes and licenses | STATEMENT 2 | | **12** 99,565. |
| | **13** Interest | | | **13** 20,619. |
| | **14** Depreciation not claimed on Schedule A or elsewhere on return *(attach Form 4562)* | | | **14** 24,407. |
| | **15** Depletion  **(Do not deduct oil and gas depletion.)** | | | **15** |
| | **16** Advertising | | | **16** 6,335. |
| | **17** Pension, profit-sharing, etc., plans | | | **17** 33,058. |
| | **18** Employee benefit programs | | | **18** 31,237. |
| | **19** Other deductions *(attach statement)* | STATEMENT 3 | | **19** 297,301. |
| | **20** **Total deductions.** Add lines 7 through 19 | | ▶ | **20** 1,858,568. |
| | **21** **Ordinary business income (loss).** Subtract line 20 from line 6 | | | **21** 100,927. |

| | | | | |
|---|---|---|---|---|
| **Tax and Payments** | **22 a** Excess net passive income or LIFO recapture tax *(see instructions)* | **22a** | | |
| | **b** Tax from Schedule D (Form 1120S) | **22b** | | |
| | **c** Add lines 22a and 22b | | | **22c** |
| | **23 a** 2009 estimated tax payments and 2008 overpayment credited to 2009 | **23a** | | |
| | **b** Tax deposited with Form 7004 | **23b** | | |
| | **c** Credit for federal tax paid on fuels *(attach Form 4136)* | **23c** | | |
| | **d** Add lines 23a through 23c | | | **23d** |
| | **24** Estimated tax penalty (see instructions). Check if Form 2220 is attached ▶ ☐ | | | **24** |
| | **25** **Amount owed.** If line 23d is smaller than the total of lines 22c and 24, enter amount owed | | | **25** |
| | **26** **Overpayment.** If line 23d is larger than the total of lines 22c and 24, enter amount overpaid | | | **26** |
| | **27** Enter amount from line 26 Credited to 2010 estimated tax ▶ | Refunded ▶ | | **27** |

**Sign Here**

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

| Signature of officer | Date | Title **PRESIDENT** | May the IRS discuss this return with the preparer shown below (see instr.)? ☒ Yes ☐ No |
|---|---|---|---|

| **Paid Preparer's Use Only** | Preparer's signature **W. THOMAS POOLE** | Date **03/04/10** | Check if self-employed ☐ | Preparer's SSN or PTIN **P00045018** |
|---|---|---|---|---|
| | Firm's name (or yours if self-employed), address, and ZIP code ▶ **HILL, BARTH & KING LLC  514 CITY CENTRE ONE  YOUNGSTOWN, OH  44503-1887** | | EIN **34-1897225** | |
| | | | Phone no. **(330)747-1903** | |

JWA  For Privacy Act and Paperwork Reduction Act Notice, see separate instructions.  Form **1120S** (2009)

911701 12-17-09

## Schedule A | Cost of Goods Sold (see instructions)

| | | | |
|---|---|---|---|
| 1 | Inventory at beginning of year | 1 | |
| 2 | Purchases | 2 | |
| 3 | Cost of labor | 3 | |
| 4 | Additional section 263A costs (attach statement) | 4 | |
| 5 | Other costs (attach statement) | 5 | |
| 6 | **Total.** Add lines 1 through 5 | 6 | |
| 7 | Inventory at end of year | 7 | |
| 8 | **Cost of goods sold.** Subtract line 7 from line 6. Enter here and on page 1, line 2 | 8 | |

9 a Check all methods used for valuing closing inventory:   (i) ☐ Cost as described in Regulations section 1.471-3

  (ii) ☐ Lower of cost or market as described in Regulations section 1.471-4

  (iii) ☐ Other (Specify method used and attach explanation) ▶

  b Check if there was a writedown of subnormal goods as described in Regulations section 1.471-2(c)    ▶ ☐

  c Check if the LIFO inventory method was adopted this tax year for any goods (if checked, attach Form 970)    ▶ ☐

  d If the LIFO inventory method was used for this tax year, enter percentage (or amounts) of closing inventory

    computed under LIFO    9d

  e If property is produced or acquired for resale, do the rules of Section 263A apply to the corporation?    ☐ Yes ☐ No

  f Was there any change in determining quantities, cost, or valuations between opening and closing inventory?    ☐ Yes ☐ No

    If "Yes," attach explanation.

## Schedule B | Other Information (see instructions)

| | | Yes | No |
|---|---|---|---|
| 1 Check accounting method:  (a) ☒ Cash  (b) ☐ Accrual  (c) ☐ Other (specify) ▶ | | | |
| 2 See the instructions and enter the: | | | |
|   (a) Business activity ▶OUTPATIENT SERVICES   (b) Product or service ▶ RESPIRATORY THERAPY | | | |
| 3 At the end of the tax year, did the corporation own, directly or indirectly, 50% or more of the voting stock of a domestic corporation? (For rules of attribution, see section 267(c).) If "Yes," attach a statement showing: (a) name and employer identification number (EIN), (b) percentage owned, and (c) if 100% owned, was a QSub election made? | | | X |
| 4 Has this corporation filed, or is it required to file, a return under section 6111 to provide information on any reportable transaction? | | | X |
| 5 Check this box if the corporation issued publicly offered debt instruments with original issue discount   ▶ ☐ | | | |
|   If checked, the corporation may have to file **Form 8281,** Information Return for Publicly Offered Original Issue Discount Instruments. | | | |
| 6 If the corporation: (a) was a C corporation before it elected to be an S corporation **or** the corporation acquired an asset with a basis determined by reference to its basis (or the basis of any other property) in the hands of a C corporation **and (b)** has net unrealized built-in gain (defined in section 1374(d)(1)) in excess of the net recognized built-in gain from prior years, enter the net unrealized built-in gain reduced by net recognized built-in gain from prior years   ▶ $ | | | |
| 7 Enter the accumulated earnings and profits of the corporation at the end of the tax year   $ | | | |
| 8 Are the corporation's total receipts (see instructions) for the tax year **and** its total assets at the end of the tax year less than $250,000? If "Yes," the corporation is not required to complete Schedules L and M-1 | | | X |

## Schedule K | Shareholders' Pro Rata Share Items

| | | | | Total amount |
|---|---|---|---|---|
| Income (Loss) | 1 Ordinary business income (loss) (page 1, line 21) | | 1 | 100,927. |
| | 2 Net rental real estate income (loss) (attach Form 8825) | | 2 | |
| | 3a Other gross rental income (loss) | 3a | | |
| |   b Expenses from other rental activities (attach statement) | 3b | | |
| |   c Other net rental income (loss). Subtract line 3b from line 3a | | 3c | |
| | 4 Interest income                 STATEMENT 4 | | 4 | 87. |
| | 5 Dividends: a Ordinary dividends | | 5a | |
| |          b Qualified dividends | 5b | | |
| | 6 Royalties | | 6 | |
| | 7 Net short-term capital gain (loss) (attach Schedule D (Form 1120S)) | | 7 | |
| | 8a Net long-term capital gain (loss) (attach Schedule D (Form 1120S)) | | 8a | |
| |   b Collectibles (28%) gain (loss) | 8b | | |
| |   c Unrecaptured section 1250 gain (attach statement) | 8c | | |
| | 9 Net section 1231 gain (loss) (attach Form 4797) | | 9 | |
| | 10 Other income (loss) (see instructions)    Type ▶ | | 10 | |

JWA

9 11711
12-17-09

11-40169-kw  Doc 1  FILED 01/21/11  ENTERED 01/21/11 16:14:54  Page 11 of 142

| | Shareholders' Pro Rata Share Items (continued) | | Total amount |
|---|---|---|---|
| **Deductions** | 11 Section 179 deduction (attach Form 4562) | 11 | 8,269. |
| | 12 a Contributions | 12a | |
| | b Investment interest expense | 12b | |
| | c Section 59(e)(2) expenditures   (1) Type ▶ _____ | | |
| | (2) Amount ▶ | 12c(2) | |
| | d Other deductions (see instructions) Type ▶ | 12d | |
| **Credits** | 13 a Low-income housing credit (section 42(j)(5)) | 13a | |
| | b Low-income housing credit (other) | 13b | |
| | c Qualified rehabilitation expenditures (rental real estate) (attach Form 3468) | 13c | |
| | d Other rental real estate credits (see instructions)   Type ▶ | 13d | |
| | e Other rental credits (see instructions)         Type ▶ | 13e | |
| | f Alcohol and cellulosic biofuel fuels credit (attach Form 6478) | 13f | |
| | g Other credits (see instructions) Type ▶ | 13g | |
| **Foreign Transactions** | 14 a Name of country or U.S. possession ▶ | | |
| | b Gross income from all sources | 14b | |
| | c Gross income sourced at shareholder level | 14c | |
| | Foreign gross income sourced at corporate level | | |
| | d Passive category | 14d | |
| | e General category | 14e | |
| | f Other (attach statement ) | 14f | |
| | Deductions allocated and apportioned at shareholder level | | |
| | g Interest expense | 14g | |
| | h Other | 14h | |
| | Deductions allocated and apportioned at corporate level to foreign source income | | |
| | i Passive category | 14i | |
| | j General category | 14j | |
| | k Other (attach statement) | 14k | |
| | Other information | | |
| | l Total foreign taxes (check one): ▶ ☐ Paid   ☐ Accrued | 14l | |
| | m Reduction in taxes available for credit (attach statement) | 14m | |
| | n Other foreign tax information (attach statement) | | |
| **Alternative Minimum Tax (AMT) Items** | 15 a Post-1986 depreciation adjustment | 15a | 3,348. |
| | b Adjusted gain or loss | 15b | |
| | c Depletion (other than oil and gas) | 15c | |
| | d Oil, gas, and geothermal properties - gross income | 15d | |
| | e Oil, gas, and geothermal properties - deductions | 15e | |
| | f Other AMT items (attach statement) | 15f | |
| **Items Affecting Shareholder Basis** | 16 a Tax-exempt interest income | 16a | |
| | b Other tax-exempt income | 16b | |
| | c Nondeductible expenses                STATEMENT 5 | 16c | 2,409. |
| | d Property distributions | 16d | |
| | e Repayment of loans from shareholders | 16e | |
| **Other Information** | 17 a Investment income | 17a | 87. |
| | b Investment expenses | 17b | |
| | c Dividend distributions paid from accumulated earnings and profits | 17c | |
| | d Other items and amounts (attach statement) | | |
| **Recon-ciliation** | 18 **Income/loss reconciliation.** Combine the amounts on lines 1 through 10 in the far right column. From the result, subtract the sum of the amounts on lines 11 through 12d and 14l | 18 | 92,745. |

JWA

Form **1120S** (2009)

911721
12-17-09

## Schedule L — Balance Sheets per Books

| Assets | | Beginning of tax year (a) | (b) | End of tax year (c) | (d) |
|---|---|---|---|---|---|
| 1 | Cash | | 83,820. | | 89,205. |
| 2 a | Trade notes and accounts receivable | | | | |
| b | Less allowance for bad debts | | | | |
| 3 | Inventories | | | | |
| 4 | U.S. Government obligations | | | | |
| 5 | Tax-exempt securities | | | | |
| 6 | Other current assets (att. stmt.) | | | | |
| 7 | Loans to shareholders | | 80,007. | | 80,007. |
| 8 | Mortgage and real estate loans | | | | |
| 9 | Other investments (att. stmt.) | | | | |
| 10 a | Buildings and other depreciable assets | 374,437. | | 406,775. | |
| b | Less accumulated depreciation | 254,518. | 119,919. | 300,087. | 106,688. |
| 11 a | Depletable assets | | | | |
| b | Less accumulated depletion | | | | |
| 12 | Land (net of any amortization) | | | | |
| 13 a | Intangible assets (amortizable only) | | | | |
| b | Less accumulated amortization | | | | |
| 14 | Other assets (att. stmt.) | STATEMENT 8 | 91,584. | | 120,047. |
| 15 | Total assets | | 375,330. | | 395,947. |
| | **Liabilities and Shareholders' Equity** | | | | |
| 16 | Accounts payable | | | | |
| 17 | Mortgages, notes, bonds payable in less than 1 year | | 147,687. | | 145,208. |
| 18 | Other current liabilities (att. stmt.) | STATEMENT 9 | 29,390. | | 0. |
| 19 | Loans from shareholders | | 18,000. | | 14,663. |
| 20 | Mortgages, notes, bonds payable in 1 year or more | | 168,623. | | 147,867. |
| 21 | Other liabilities (att. stmt.) | | | | |
| 22 | Capital stock | | 500. | | 500. |
| 23 | Additional paid-in capital | | | | |
| 24 | Retained earnings | STATEMENT 11 | 11,130. | | 87,709. |
| 25 | Adjustments to shareholders' equity (att. stmt.) | | | | |
| 26 | Less cost of treasury stock | | ( ) | | ( ) |
| 27 | Total liabilities and shareholders' equity | | 375,330. | | 395,947. |

## Schedule M-1 — Reconciliation of Income (Loss) per Books With Income (Loss) per Return

**Note:** Schedule M-3 required instead of Schedule M-1 if total assets are $10 million or more - see instructions

| | | | | | |
|---|---|---|---|---|---|
| 1 | Net income (loss) per books | 76,579. | 5 | Income recorded on books this year not included on Schedule K, lines 1 through 10 (itemize): | |
| 2 | Income included on Schedule K, lines 1, 2, 3c, 4, 5a, 6, 7, 8a, 9, and 10, not recorded on books this year (itemize): | | | a Tax-exempt interest $ | |
| 3 | Expenses recorded on books this year not included on Schedule K, lines 1 through 12 and 14l (itemize): | | 6 | Deductions included on Schedule K, lines 1 through 12 and 14l, not charged against book income this year (itemize): | |
| | a Depreciation $ 45,569. | | | a Depreciation $ 32,676. | |
| | b Travel and entertainment $ 2,409. | | | | 32,676. |
| | STMT 10 864. | 48,842. | 7 | Add lines 5 and 6 | 32,676. |
| 4 | Add lines 1 through 3 | 125,421. | 8 | Income (loss) (Schedule K, line 18) Line 4 less line 7 | 92,745. |

## Schedule M-2 — Analysis of Accumulated Adjustments Account, Other Adjustments Account, and Shareholders' Undistributed Taxable Income Previously Taxed (see instructions)

| | | (a) Accumulated adjustments account | (b) Other adjustments account | (c) Shareholders' undistributed taxable income previously taxed |
|---|---|---|---|---|
| 1 | Balance at beginning of tax year | 3,254. | | |
| 2 | Ordinary income from page 1, line 21 | 100,927. | | |
| 3 | Other additions STATEMENT 6 | 87. | | |
| 4 | Loss from page 1, line 21 | ( ) | | |
| 5 | Other reductions STATEMENT 7 | ( 10,678.) | ( ) | |
| 6 | Combine lines 1 through 5 | 93,590. | | |
| 7 | Distributions other than dividend distributions | | | |
| 8 | Balance at end of tax year. Subtract line 7 from line 6 | 93,590. | | |

911731
12-17-09  JWA

Form **1120S** (2009)

Form **4562**

Department of the Treasury
Internal Revenue Service   (99)

## Depreciation and Amortization
### (Including Information on Listed Property)   OTHER
▶ See separate instructions.   ▶ Attach to your tax return.

OMB No. 1545-0172

**2009**

Attachment
Sequence No. **67**

Name(s) shown on return

**LIFELINE PARTNERS, INC.**

Business or activity to which this form relates

**OTHER DEPRECIATION**

Identifying number

**34-1918386**

**Part I** | Election To Expense Certain Property Under Section 179 **Note:** *If you have any listed property, complete Part V before you complete Part I.*

| | | |
|---|---|---|
| 1 Maximum amount. See the instructions for a higher limit for certain businesses | 1 | 250,000. |
| 2 Total cost of section 179 property placed in service (see instructions) | 2 | 32,338. |
| 3 Threshold cost of section 179 property before reduction in limitation | 3 | 800,000. |
| 4 Reduction in limitation. Subtract line 3 from line 2. If zero or less, enter -0- | 4 | |
| 5 Dollar limitation for tax year. Subtract line 4 from line 1. If zero or less, enter -0-. If married filing separately, see instructions | 5 | 250,000. |

| 6 | (a) Description of property | (b) Cost (business use only) | (c) Elected cost |
|---|---|---|---|
| | **SEE STATEMENT 12** | 2,349. | 2,349. |

| | | | |
|---|---|---|---|
| 7 Listed property. Enter the amount from line 29 | 7 | 5,920. | |
| 8 Total elected cost of section 179 property. Add amounts in column (c), lines 6 and 7 | | 8 | 8,269. |
| 9 Tentative deduction. Enter the **smaller** of line 5 or line 8 | | 9 | 8,269. |
| 10 Carryover of disallowed deduction from line 13 of your 2008 Form 4562 | | 10 | |
| 11 Business income limitation. Enter the smaller of business income (not less than zero) or line 5 | | 11 | 232,927. |
| 12 Section 179 expense deduction. Add lines 9 and 10, but do not enter more than line 11 | | 12 | 8,269. |
| 13 Carryover of disallowed deduction to 2010. Add lines 9 and 10, less line 12 ▶ | 13 | | |

**Note:** *Do not use Part II or Part III below for listed property. Instead, use Part V.*

**Part II** | Special Depreciation Allowance and Other Depreciation (Do not include listed property.)

| | | |
|---|---|---|
| 14 Special depreciation allowance for qualified property (other than listed property) placed in service during the tax year | 14 | |
| 15 Property subject to section 168(f)(1) election | 15 | |
| 16 Other depreciation (including ACRS) | 16 | 91. |

**Part III** | MACRS Depreciation (Do not include listed property.) (See instructions.)

### Section A

| | | |
|---|---|---|
| 17 MACRS deductions for assets placed in service in tax years beginning before 2009 | 17 | 13,624. |
| 18 If you are electing to group any assets placed in service during the tax year into one or more general asset accounts, check here ▶ ☐ | | |

### Section B - Assets Placed in Service During 2009 Tax Year Using the General Depreciation System

| (a) Classification of property | (b) Month and year placed in service | (c) Basis for depreciation (business/investment use only - see instructions) | (d) Recovery period | (e) Convention | (f) Method | (g) Depreciation deduction |
|---|---|---|---|---|---|---|
| **19a** 3-year property | | | | | | |
| **b** 5-year property | | | | | | |
| **c** 7-year property | | | | | | |
| **d** 10-year property | | | | | | |
| **e** 15-year property | | | | | | |
| **f** 20-year property | | | | | | |
| **g** 25-year property | | | 25 yrs. | | S/L | |
| **h** Residential rental property | / | | 27.5 yrs. | MM | S/L | |
| | / | | 27.5 yrs. | MM | S/L | |
| **i** Nonresidential real property | / | | 39 yrs. | MM | S/L | |
| | / | | | MM | S/L | |

### Section C - Assets Placed in Service During 2009 Tax Year Using the Alternative Depreciation System

| | | | | | | |
|---|---|---|---|---|---|---|
| **20a** Class life | | | | | S/L | |
| **b** 12-year | | | 12 yrs. | | S/L | |
| **c** 40-year | / | | 40 yrs. | MM | S/L | |

**Part IV** | Summary (See instructions.)

| | | |
|---|---|---|
| 21 Listed property. Enter amount from line 28 | 21 | 10,692. |
| 22 Total. Add amounts from line 12, lines 14 through 17, lines 19 and 20 in column (g), and line 21. Enter here and on the appropriate lines of your return. Partnerships and S corporations - see instr. | 22 | 24,407. |
| 23 For assets shown above and placed in service during the current year, enter the portion of the basis attributable to section 263A costs | 23 | |

916251
11-04-09   LHA  **For Paperwork Reduction Act Notice, see separate instructions.**   Form **4562** (2009)

**Part V**  Listed Property (Include automobiles, certain other vehicles, cellular telephones, certain computers, and property used for entertainment, recreation, or amusement.)

**Note:** For any vehicle for which you are using the standard mileage rate or deducting lease expense, complete only 24a, 24b, columns (a) through (c) of Section A, all of Section B, and Section C if applicable.

**Section A - Depreciation and Other Information (Caution: See the instructions for limits for passenger automobiles)**

24a Do you have evidence to support the business/investment use claimed? [X] Yes [ ] No  24b If "Yes," is the evidence written? [X] Yes [ ] No

| (a) Type of property (list vehicles first) | (b) Date placed in service | (c) Business/ investment use percentage | (d) Cost or other basis | (e) Basis for depreciation (business/investment use only) | (f) Recovery period | (g) Method/ Convention | (h) Depreciation deduction | (i) Elected section 179 cost |
|---|---|---|---|---|---|---|---|---|
| 25 Special depreciation allowance for qualified listed property placed in service during the tax year and used more than 50% in a qualified business use | | | | | | 25 | | |
| 26 Property used more than 50% in a qualified business use: | | | | | | | | |
| | | % | | | | | | |
| SEE STATEMENT 13 | | % | | | | | 10,692. | 5,920. |
| | | % | | | | | | |
| 27 Property used 50% or less in a qualified business use: | | | | | | | | |
| | | % | | | | S/L - | | |
| | | % | | | | S/L - | | |
| | | % | | | | S/L - | | |
| 28 Add amounts in column (h), lines 25 through 27. Enter here and on line 21, page 1 | | | | | | 28 | 10,692. | |
| 29 Add amounts in column (i), line 26. Enter here and on line 7, page 1 | | | | | | | 29 | 5,920. |

**Section B - Information on Use of Vehicles**

Complete this section for vehicles used by a sole proprietor, partner, or other "more than 5% owner," or related person.

If you provided vehicles to your employees, first answer the questions in Section C to see if you meet an exception to completing this section for those vehicles.

| | (a) Vehicle | | (b) Vehicle | | (c) Vehicle | | (d) Vehicle | | (e) Vehicle | | (f) Vehicle | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 30 Total business/investment miles driven during the year (do not include commuting miles) | | | | | | | | | | | | |
| 31 Total commuting miles driven during the year | | | | | | | | | | | | |
| 32 Total other personal (noncommuting) miles driven | | | | | | | | | | | | |
| 33 Total miles driven during the year. Add lines 30 through 32 | | | | | | | | | | | | |
| 34 Was the vehicle available for personal use during off-duty hours? | Yes | No | Yes | No | Yes | No | Yes | No | Yes | No | Yes | No |
| 35 Was the vehicle used primarily by a more than 5% owner or related person? | | | | | | | | | | | | |
| 36 Is another vehicle available for personal use? | | | | | | | | | | | | |

**Section C - Questions for Employers Who Provide Vehicles for Use by Their Employees**

Answer these questions to determine if you meet an exception to completing Section B for vehicles used by employees who **are not** more than 5% owners or related persons.

| | | Yes | No |
|---|---|---|---|
| 37 Do you maintain a written policy statement that prohibits all personal use of vehicles, including commuting, by your employees? | | | X |
| 38 Do you maintain a written policy statement that prohibits personal use of vehicles, except commuting, by your employees? See the instructions for vehicles used by corporate officers, directors, or 1% or more owners | | | X |
| 39 Do you treat all use of vehicles by employees as personal use? | | | X |
| 40 Do you provide more than five vehicles to your employees, obtain information from your employees about the use of the vehicles, and retain the information received? | | X | |
| 41 Do you meet the requirements concerning qualified automobile demonstration use? | | | X |

**Note:** If your answer to 37, 38, 39, 40, or 41 is "Yes," do not complete Section B for the covered vehicles.

**Part VI**  Amortization

| (a) Description of costs | (b) Date amortization begins | (c) Amortizable amount | (d) Code section | (e) Amortization period or percentage | (f) Amortization for this year |
|---|---|---|---|---|---|
| 42 Amortization of costs that begins during your 2009 tax year: | | | | | |
| | | | | | |
| | | | | | |
| 43 Amortization of costs that began before your 2009 tax year | | | | 43 | |
| 44 Total. Add amounts in column (f). See the instructions for where to report | | | | 44 | |

9 16252  11-04-09

**FORM 1120S**                 COMPENSATION OF OFFICERS              STATEMENT    1

| NAME OF OFFICER | SOCIAL SECURITY NUMBER | TIME DEVOTED TO BUSINESS | PCT OF STOCK | AMOUNT OF COMPENSATION |
|---|---|---|---|---|
| KATHLEEN A. BURGDORF | ▓▓▓▓▓▓▓ | 100 | 82.00% | 132,000. |
| GEORGE HAVAS | | 100 | 9.00% | 0. |

| | | |
|---|---|---|
| TOTAL COMPENSATION OF OFFICERS | | 132,000. |
| LESS: COMPENSATION CLAIMED ELSEWHERE | | |
|       EMPLOYMENT CREDIT REDUCTION | | |
| TOTAL TO FORM 1120S, PAGE 1, LINE 7 | | 132,000. |

**FORM 1120S**                 TAXES AND LICENSES                  STATEMENT    2

| DESCRIPTION | AMOUNT |
|---|---|
| PAYROLL TAXES | 95,684. |
| STATE AND LOCAL TAXES | 3,881. |
| TOTAL TO FORM 1120S, PAGE 1, LINE 12 | 99,565. |

**FORM 1120S**                 OTHER DEDUCTIONS                   STATEMENT    3

| DESCRIPTION | AMOUNT |
|---|---|
| AUTOMOBILE LEASE EXPENSE | 28,989. |
| BANK SERVICE CHARGES | 875. |
| DUES AND SUBSCRIPTIONS | 2,464. |
| EQUIPMENT LEASE | 924. |
| INSURANCE | 17,666. |
| LAUNDRY | 2,653. |
| MEALS AND ENTERTAINMENT | 2,410. |
| MEDICAL SUPPLIES | 17,872. |
| OFFICE EXPENSES | 38,374. |
| PAYROLL EXPENSES | 4,981. |
| POSTAGE | 5,431. |
| PROFESSIONAL FEES | 8,428. |
| SECURITY SERVICES | 1,231. |
| SEMINARS | 1,632. |
| SUBCONTRACT SERVICES | 57,708. |
| SUPPLIES | 15,836. |
| TELEPHONE EXPENSE | 17,902. |
| TRAVEL AND TRANSPORTATION | 50,341. |
| UTILITIES | 21,584. |
| TOTAL TO FORM 1120S, PAGE 1, LINE 19 | 297,301. |

STATEMENT(S) 1, 2, 3

| SCHEDULE K | INTEREST INCOME | STATEMENT 4 |
|---|---|---|

| DESCRIPTION | AMOUNT |
|---|---|
| INTEREST | 87. |
| TOTAL TO SCHEDULE K, LINE 4 | 87. |

| SCHEDULE K | NONDEDUCTIBLE EXPENSES | STATEMENT 5 |
|---|---|---|

| DESCRIPTION | AMOUNT |
|---|---|
| EXCLUDED MEALS AND ENTERTAINMENT EXPENSES | 2,409. |
| TOTAL TO SCHEDULE K, LINE 16C | 2,409. |

| SCHEDULE M-2   ACCUMULATED ADJUSTMENTS ACCOUNT - OTHER ADDITIONS | STATEMENT 6 |
|---|---|

| DESCRIPTION | AMOUNT |
|---|---|
| PORTFOLIO INTEREST INCOME | 87. |
| TOTAL TO SCHEDULE M-2, LINE 3 - COLUMN (A) | 87. |

| SCHEDULE M-2   ACCUMULATED ADJUSTMENTS ACCOUNT- OTHER REDUCTIONS | STATEMENT 7 |
|---|---|

| DESCRIPTION | AMOUNT |
|---|---|
| SECTION 179 EXPENSE DEDUCTION | 8,269. |
| NONDEDUCTIBLE EXPENSES | 2,409. |
| TOTAL TO SCHEDULE M-2, LINE 5 - COLUMN (A) | 10,678. |

SCHEDULE L                    OTHER ASSETS                    STATEMENT    8

| DESCRIPTION | BEGINNING OF TAX YEAR | END OF TAX YEAR |
|---|---|---|
| N/R AFFILIATED PARTIES | 50,141. | 114,127. |
| RENT DEPOSIT | 5,920. | 5,920. |
| DEPOSIT PAYROLL SERVICE | 35,523. | 0. |
| TOTAL TO SCHEDULE L, LINE 14 | 91,584. | 120,047. |

SCHEDULE L                OTHER CURRENT LIABILITIES            STATEMENT    9

| DESCRIPTION | BEGINNING OF TAX YEAR | END OF TAX YEAR |
|---|---|---|
| DUE TO RELATED PARTIES | 29,390. | 0. |
| TOTAL TO SCHEDULE L, LINE 18 | 29,390. | 0. |

SCHEDULE M-1          EXPENSES RECORDED ON BOOKS THIS YEAR      STATEMENT   10
                          NOT INCLUDED ON SCHEDULE K

| DESCRIPTION | AMOUNT |
|---|---|
| COUNTRY CLUB DUES | 864. |
| TOTAL TO SCHEDULE M-1, LINE 3 | 864. |

SCHEDULE L        ANALYSIS OF TOTAL RETAINED EARNINGS PER BOOKS     STATEMENT   11

| DESCRIPTION | AMOUNT |
|---|---|
| BALANCE AT BEGINNING OF YEAR | 11,130. |
| NET INCOME PER BOOKS | 76,579. |
| DISTRIBUTIONS | 0. |
| OTHER INCREASES (DECREASES) | |
| BALANCE AT END OF YEAR - SCHEDULE L, LINE 24, COLUMN (D) | 87,709. |

FORM 4562          PART I - SECTION 179 EXPENSE          STATEMENT  12

| (A)<br>DESCRIPTION OF PROPERTY | (B)<br>COST | (C)<br>ELECTED<br>COST |
|---|---|---|
| TELEPHONE | 343. | 343. |
| EXERCISE PEDDLE BIKE | 345. | 345. |
| MULTI-USER COMPUTING TERMINAL | 148. | 148. |
| WALL-MOUNTED VERTICAL JUMP TESTER | 556. | 556. |
| KOSS ANTIVIUS(40) | 957. | 957. |
| TOTAL TO FORM 4562, PART I, LINE 6 | 2,349. | 2,349. |

FORM 4562          LISTED PROPERTY INFORMATION-MORE THAN 50%          STATEMENT  13

| (A)<br>DESCRIPTION | (B)<br>DATE | (C)<br>BUS. % | (D)<br>COST | (E)<br>BASIS | (F)<br>LIFE | (G)<br>MTH/CV | (H)<br>DEDUCTION | (I) 179<br>ELECTED |
|---|---|---|---|---|---|---|---|---|
| (K)<br>TOTAL<br>MILES | (L)<br>BUSINESS<br>MILES | (M)<br>COMMUTING<br>MILES | (N)<br>PERSONAL<br>MILES | (O)<br>WAS VEH.<br>AVAIL.?<br>Y  N | (P)<br>> 5%<br>OWNER?<br>Y  N | (Q)<br>ANOTHER VEH.<br>AVAILABLE?<br>Y  N | | |
| PONTIAC<br>MONTANA | 01/21/02 | | | | | | | |
| | | 100.00 | 24,737. | 24,737. | 5<br>YRS | 200DB-HY | | 1,775. |
| 2004<br>SUBURBAN | 08/06/04 | | | | | | | |
| | | 100.00 | 45,143. | 39,307. | 5<br>YRS | 200DB-HY | | 1,675. |
| 2004<br>MONTANA | 07/31/04 | | | | | | | |
| | | 100.00 | 24,699. | 14,089. | 5<br>YRS | 200DB-HY | | 1,675. |
| 2005<br>CHEVROLET<br>IMPALA | 06/24/05 | | | | | | | |
| | | 100.00 | 21,244. | 21,244. | 5<br>YRS | 200DB-HY | | 1,675. |
| 2002<br>MONTANA | 01/18/05 | | | | | | | |
| | | 100.00 | 12,791. | 12,791. | 5<br>YRS | 200DB-HY | | 1,473. |
| 2003<br>CHRYSLER | 08/22/07 | | | | | | | |
| | | 100.00 | 12,598. | 12,598. | 5<br>YRS | 200DB-HY | | 2,419. |

LIFELINE PARTNERS, INC.                                            34-1918386

| | | | | | | |
|---|---|---|---|---|---|---|
| 2005 BUICK TERRAZA | 05/26/09 | 100.00 | 15,154. | 12,194. | 5 YRS | 200DB-HY | 2,960. |
| 2006 CHRYSLER PACIFICA | 05/26/09 | 100.00 | 14,835. | 11,875. | 5 YRS | 200DB-HY | 2,960. |

TOTALS TO FORM 4562, PART V, LINE 26                    10,692.     5,920.

**Schedule K-1**
**(Form 1120S)**

Department of the Treasury
Internal Revenue Service

**2009**

For calendar year 2009, or tax
year beginning _____
ending _____

OMB No. 1545-0130

☐ Final K-1   ☐ Amended K-1

**Shareholder's Share of Income, Deductions, Credits, etc.** ▶ See separate instructions.

| Part III | Shareholder's Share of Current Year Income, Deductions, Credits, and Other Items |
|---|---|

| **Part I** | **Information About the Corporation** |
|---|---|

**A** Corporation's employer identification number
34-1918386

**B** Corporation's name, address, city, state, and ZIP code

LIFELINE PARTNERS, INC.
397 CHURCHILL-HUBBARD ROAD SUITE 2
YOUNGSTOWN, OH   44505

**C** IRS Center where corporation filed return
E-FILE

| **Part II** | **Information About the Shareholder** |
|---|---|

**D** Shareholder's identifying number

**E** Shareholder's name, address, city, state and ZIP code

KATHLEEN BURGDORF
5692 LAMPLIGHTER DRIVE
GIRARD, OH 44420-1628

**F** Shareholder's percentage of stock
ownership for tax year _____ 82.000000%

**For IRS Use Only**

| # | Item | Amount | # | Item | Amount |
|---|---|---|---|---|---|
| 1 | Ordinary business income (loss) | 82,760. | 13 | Credits | |
| 2 | Net rental real estate inc (loss) | | | | |
| 3 | Other net rental income (loss) | | | | |
| 4 | Interest income | 71. | | | |
| 5a | Ordinary dividends | | | | |
| 5b | Qualified dividends | | 14 | Foreign transactions | |
| 6 | Royalties | | | | |
| 7 | Net short-term capital gain (loss) | | | | |
| 8a | Net long-term capital gain (loss) | | | | |
| 8b | Collectibles (28%) gain (loss) | | | | |
| 8c | Unrecaptured sec 1250 gain | | | | |
| 9 | Net section 1231 gain (loss) | | | | |
| 10 | Other income (loss) | A | 15 | Alternative min tax (AMT) items | A 2,745. |
| 11 | Section 179 deduction | 6,781. | 16 | Items affecting shareholder basis | C* 1,975. |
| 12 | Other deductions | | | | |
| | | | 17 | Other information | A 71. |

*See attached statement for additional information.

9 11271
12-17-09   JWA   For Paperwork Reduction Act Notice, see Instructions for Form 1120S.

Schedule K-1 (Form 1120S) 2009
SHAREHOLDER NUMBER 1

SCHEDULE K-1          NONDEDUCTIBLE EXPENSES, BOX 16, CODE C

| DESCRIPTION | AMOUNT | SHAREHOLDER FILING INSTRUCTIONS |
|---|---|---|
| EXCLUDED MEALS AND ENTERTAINMENT EXPENSES | 1,975. | SEE FORM 1040 INSTRUCTIONS |
| TOTAL | 1,975. | |

SHAREHOLDER 1

 

This list identifies the codes used on Schedule K-1 for all shareholders and provides summarized reporting information for shareholders who file Form 1040. For detailed reporting and filing information, see the separate Shareholder's Instructions for Schedule K-1 and the instructions for your income tax return.

1. Ordinary business income (loss). Determine whether the income (loss) is passive or nonpassive and enter on your return as follows:

| | Report on |
|---|---|
| Passive loss | See the Shareholder's Instructions |
| Passive income | Schedule E, line 28, column (g) |
| Nonpassive loss | Schedule E, line 28, column (h) |
| Nonpassive income | Schedule E, line 28, column (j) |

2. Net rental real estate income (loss) — See the Shareholder's Instructions
3. Other net rental income (loss)
   - Net income — Schedule E, line 28, column (g)
   - Net loss — See the Shareholder's Instructions
4. Interest income — Form 1040, line 8a
5a. Ordinary dividends — Form 1040, line 9a
5b. Qualified dividends — Form 1040, line 9b
6. Royalties — Schedule E, line 4
7. Net short-term capital gain (loss) — Schedule D, line 5, column (f)
8a. Net long-term capital gain (loss) — Schedule D, line 12, column (f)
8b. Collectibles (28%) gain (loss) — 28% Rate Gain Worksheet, line 4 (Schedule D Instructions)
8c. Unrecaptured section 1250 gain — See the Shareholder's Instructions
9. Net section 1231 gain (loss) — See the Shareholder's Instructions
10. Other income (loss)

| Code | | Report on |
|---|---|---|
| A | Other portfolio income (loss) | See the Shareholder's Instructions |
| B | Involuntary conversions | See the Shareholder's Instructions |
| C | Sec. 1256 contracts & straddles | Form 6781, line 1 |
| D | Mining exploration costs recapture | See Pub. 535 |
| E | Other income (loss) | See the Shareholder's Instructions |

11. Section 179 deduction — See the Shareholder's Instructions
12. Other deductions

| A | Cash contributions (50%) | |
|---|---|---|
| B | Cash contributions (30%) | |
| C | Noncash contributions (50%) | |
| D | Noncash contributions (30%) | See the Shareholder's Instructions |
| E | Capital gain property to a 50% organization (30%) | |
| F | Capital gain property (20%) | |
| G | Contributions (100%) | |
| H | Investment interest expense | Form 4952, line 1 |
| I | Deductions - royalty income | Schedule E, line 18 |
| J | Section 59(e)(2) expenditures | See the Shareholder's Instructions |
| K | Deductions - portfolio (2% floor) | Schedule A, line 23 |
| L | Deductions - portfolio (other) | Schedule A, line 28 |
| M | Preproductive period expenses | See the Shareholder's Instructions |
| N | Commercial revitalization deduction from rental real estate activities | See Form 8582 Instructions |
| O | Reforestation expense deduction | See the Shareholder's Instructions |
| P | Domestic production activities information | See Form 8903 instructions |
| Q | Qualified production activities income | Form 8903, line 7 |
| R | Employer's Form W-2 wages | Form 8903, line 15 |
| S | Other deductions | See the Shareholder's Instructions |

13. Credits

| A | Low-income housing credit (section 42(j)(5)) from pre-2008 buildings | See the Shareholder's Instructions |
|---|---|---|
| B | Low-income housing credit (other) from pre-2008 buildings | See the Shareholder's Instructions |
| C | Low-income housing credit (section 42(j)(5)) from post-2007 buildings | Form 8586, line 11 |
| D | Low-income housing credit (other) from post-2007 buildings | Form 8586, line 11 |
| E | Qualified rehabilitation expenditures (rental real estate) | See the Shareholder's Instructions |
| F | Other rental real estate credits | |
| G | Other rental credits | |
| H | Undistributed capital gains credit | Form 1040, line 70; check box a |
| I | Alcohol and cellulosic biofuel fuels credit | Form 6478, line 7 |
| J | Work opportunity credit | Form 5884, line 3 |
| K | Disabled access credit | See the Shareholder's Instructions |
| L | Empowerment zone and renewal community employment credit | Form 8844, line 3 |

| Code | | Report on |
|---|---|---|
| M | Credit for increasing research activities | See the Shareholder's Instructions |
| N | Credit for employer social security and Medicare taxes | Form 8846, line 5 |
| O | Backup withholding | Form 1040, line 61 |
| P | Other credits | See the Shareholder's Instructions |

14. Foreign transactions

| A | Name of country or U.S. possession | |
|---|---|---|
| B | Gross income from all sources | Form 1116, Part I |
| C | Gross income sourced at shareholder level | |

Foreign gross income sourced at corporate level

| D | Passive category | |
|---|---|---|
| E | General category | Form 1116, Part I |
| F | Other | |

Deductions allocated and apportioned at shareholder level

| G | Interest expense | Form 1116, Part I |
|---|---|---|
| H | Other | Form 1116, Part I |

Deductions allocated and apportioned at corporate level to foreign source income

| I | Passive category | |
|---|---|---|
| J | General category | Form 1116, Part I |
| K | Other | |

Other information

| L | Total foreign taxes paid | Form 1116, Part II |
|---|---|---|
| M | Total foreign taxes accrued | Form 1116, Part II |
| N | Reduction in taxes available for credit | Form 1116, line 12 |
| O | Foreign trading gross receipts | Form 8873 |
| P | Extraterritorial income exclusion | Form 8873 |
| Q | Other foreign transactions | See the Shareholder's Instructions |

15. Alternative minimum tax (AMT) items

| A | Post-1986 depreciation adjustment | |
|---|---|---|
| B | Adjusted gain or loss | See the Shareholder's Instructions and the instructions for Form 6251 |
| C | Depletion (other than oil & gas) | |
| D | Oil, gas, & geothermal - gross income | |
| E | Oil, gas, & geothermal - deductions | |
| F | Other AMT items | |

16. Items affecting shareholder basis

| A | Tax-exempt interest income | Form 1040, line 8b |
|---|---|---|
| B | Other tax-exempt income | |
| C | Nondeductible expenses | See the Shareholder's Instructions |
| D | Property distributions | |
| E | Repayment of loans from shareholders | |

17. Other information

| A | Investment income | Form 4952, line 4a |
|---|---|---|
| B | Investment expenses | Form 4952, line 5 |
| C | Qualified rehabilitation expenditures (other than rental real estate) | See the Shareholder's Instructions |
| D | Basis of energy property | See the Shareholder's Instructions |
| E | Recapture of low-income housing credit (section 42(j)(5)) | Form 8611, line 8 |
| F | Recapture of low-income housing credit (other) | Form 8611, line 8 |
| G | Recapture of investment credit | See Form 4255 |
| H | Recapture of other credits | See the Shareholder's Instructions |
| I | Look-back interest - completed long-term contracts | See Form 8697 |
| J | Look-back interest - income forecast method | See Form 8866 |
| K | Dispositions of property with section 179 deductions | |
| L | Recapture of section 179 deduction | |
| M | Section 453(l)(3) information | |
| N | Section 453A(c) information | |
| O | Section 1260(b) information | |
| P | Interest allocable to production expenditures | See the Shareholder's Instructions |
| Q | CCF nonqualified withdrawals | |
| R | Depletion information - oil and gas | |
| S | Amortization of reforestation costs | |
| T | Section 108(i) information | |
| U | Other information | |

# Shareholder Basis Worksheet

| | | | |
|---|---|---|---|
| Shareholder Number: | 1 | Year Ended: | DECEMBER 31, 2009 |
| Shareholder Name: | | S Corporation Name: | |
| KATHLEEN BURGDORF | | LIFELINE PARTNERS, INC. | |
| Shareholder ID Number: | ███████ | S Corporation ID Number: | |
| Ownership Percentage: | 82.000000 % | 34-1918386 | |

## Stock Basis

| | | | | |
|---|---|---|---:|---:|
| 1. | a. | Stock basis, beginning of year (Not less than zero) | 0. | |
| | b. | Additional capital contributions | | |
| 2. | Increases: | | | |
| | a. | Ordinary income from trade or business | 82,760. | |
| | b. | Net income from rental real estate activities | | |
| | c. | Net income from other rental activities | | |
| | d. | Net short-term capital gains | | |
| | e. | Net long-term capital gains | | |
| | f. | Other portfolio income | 71. | |
| | g. | Net gain under Section 1231 | | |
| | h. | Other income | | |
| | i. | Tax exempt interest income | | |
| | j. | Other tax-exempt income | | |
| | k. | Section 179 recapture | | |
| | l. | Depletion (other than oil and gas) in excess of basis | | |
| | m. | Other increases: | | |
| | | | | |
| 3. | Total increases (Add lines 2(a) through 2(m)) | | 82,831. | |
| 4. | Total increases to stock basis (Add lines 1 and 3) | | | 82,831. |
| 5. | Less: Distributions | | | |
| 6. | Subtract line 5 from line 4 (Not less than zero) | | | 82,831. |
| 7. | Decreases: | | | |
| | a. | Ordinary losses from trade or business | | |
| | b. | Net losses from rental real estate activities | | |
| | c. | Net losses from other rental activities | | |
| | d. | Net short-term capital losses | | |
| | e. | Net long-term capital losses | | |
| | f. | Other portfolio losses | | |
| | g. | Net losses under Section 1231 | | |
| | h. | Other deductions | | |
| | i. | Charitable contributions | | |
| | j. | Section 179 expense deduction | 6,781. | |
| | k. | Deductions related to portfolio income (losses) | | |
| | l. | Interest expense on investment debts | | |
| | m. | Foreign taxes paid or accrued | | |
| | n. | Section 59(e) expenditures | | |
| | o. | Nondeductible expenses | 1,975. | |
| | p. | Oil and gas depletion | | |
| | q. | Other decreases: | | |
| | | | 8,756. | |
| | r. | Disallowed prior year's losses and deductions | 620. | |
| 8. | Total decreases (Add lines 7(a) through 7(r)) | | | 9,376. |
| 9. | Net increases or decreases to basis (Subtract line 8 from line 6) | | | 73,455. |
| 10. | Less: Net increases applied to debt basis | | | |
| 11. | Stock basis, end of year (Subtract line 10 from line 9) (Not less than zero) | | | 73,455. |

9 12 101
04-24-09

# Shareholder Basis Worksheet, Continued

Shareholder Number: 1

Shareholder Name: **KATHLEEN BURGDORF**

Year Ended: **DECEMBER 31, 2009**

Shareholder ID Number:

## Debt Basis

| | |
|---|---:|
| 12. Debt basis, beginning of year (Not less than zero) | 0. |
| 13. Loans made during the year | |
| 14. Restoration of debt basis (from line 10) | |
| 15. Subtotal (Add lines 13 and 14) | |
| 16. Less: Loan repayments | |
| 17. Gain from loan repayments | |
| 18. Other adjustments: | |
| 19. Subtotal (Combine lines 12, 15, 16, 17 and 18) | |
| 20. Applied against excess loss and deductions | |
| 21. Debt basis, end of year (Not less than zero) | 0. |
| 22. Total shareholder stock and debt basis, end of year (Add lines 11 and 21) (Not less than zero) | 73,455. |

## Gain on Distributions

| | |
|---|---|
| 23. Distributions | |
| 24. Less: Basis before distributions | |
| 25. Enter excess of line 23 over line 24 (capital gain) | |

## Carryover

| | Total Disallowed Losses | Debt Basis Applied Against Excess Losses and Deductions |
|---|---:|---|
| 26. Beginning of year | | |
| 27. Add: Losses and deductions this year | 620. | |
| 28. Less: Applied this year | 8,756. | |
| 29. End of year (Not less than zero) | 9,376. | |

9 12102
04-24-09

11-40169-kw   Doc 1   FILED 01/21/11   ENTERED 01/21/11 16:14:54   Page 25 of 142

# Allocation of Losses and Deductions

Shareholder Number: 1
Shareholder Name: **KATHLEEN BURGDORF**

Year Ended:
**DECEMBER 31, 2009**
Shareholder ID Number:

| | (a) Beginning of Year and Current Year Losses and Deductions | (b) % | (c) Allowable Losses and Deductions in Current Year | (d) Disallowed Losses and Deductions (Carryover to Next Year) |
|---|---|---|---|---|
| Ordinary losses from trade or business | 569. | 7.688150 | 569. | |
| Net losses from rental real estate activities | | | | |
| Net losses from other rental activities | | | | |
| Net short-term capital losses | | | | |
| Net long-term capital losses | | | | |
| Other portfolio losses | | | | |
| Net losses under Section 1231 | | | | |
| Other deductions | | | | |
| Charitable contributions | | | | |
| Section 179 expense deduction | 6,832. | 92.311850 | 6,832. | |
| Deductions related to portfolio income (losses) | | | | |
| Interest expense on investment debts | | | | |
| Foreign taxes paid or accrued | | | | |
| Section 59(e) expenditures | | | | |
| Other decreases | | | | |
| Total deductible losses and deductions | 7,401. | 100.000000 | 7,401. | |
| Nondeductible expenses | 1,975. | 100.000000 | 1,975. | |
| Oil and gas depletion | | | | |
| Total nondeductible expenses and oil and gas depletion | 1,975. | 100.000000 | 1,975. | |
| Totals | 9,376. | | 9,376. | |

912103
04-24-09

671109

Schedule K-1
(Form 1120S)

**2009**

Department of the Treasury
Internal Revenue Service

For calendar year 2009, or tax
year beginning _____
ending _____

□ Final K-1   □ Amended K-1      OMB No. 1545-0130

### Shareholder's Share of Income, Deductions, Credits, etc. ▶ See separate instructions.

| Part III | Shareholder's Share of Current Year Income, Deductions, Credits, and Other Items |
|---|---|

## Part I   Information About the Corporation

**A** Corporation's employer identification number
34-1918386

**B** Corporation's name, address, city, state, and ZIP code

LIFELINE PARTNERS, INC.
397 CHURCHILL-HUBBARD ROAD SUITE 2
YOUNGSTOWN, OH  44505

**C** IRS Center where corporation filed return
E-FILE

## Part II   Information About the Shareholder

**D** Shareholder's identifying number

**E** Shareholder's name, address, city, state and ZIP code

GEORGE HAVAS
1111 MANSELL DRIVE
YOUNGSTOWN, OH 44505

**F** Shareholder's percentage of stock
ownership for tax year ................ 9.000000%

| | | | | |
|---|---|---|---|---|
| 1 | Ordinary business income (loss) 9,084. | | 13 | Credits |
| 2 | Net rental real estate inc (loss) | | | |
| 3 | Other net rental income (loss) | | | |
| 4 | Interest income 8. | | | |
| 5a | Ordinary dividends | | | |
| 5b | Qualified dividends | | 14 | Foreign transactions |
| 6 | Royalties | | | |
| 7 | Net short-term capital gain (loss) | | | |
| 8a | Net long-term capital gain (loss) | | | |
| 8b | Collectibles (28%) gain (loss) | | | |
| 8c | Unrecaptured sec 1250 gain | | | |
| 9 | Net section 1231 gain (loss) | | | |
| 10 | Other income (loss) | | 15 | Alternative min tax (AMT) items A 302. |
| 11 | Section 179 deduction 744. | | 16 | Items affecting shareholder basis C* 217. |
| 12 | Other deductions | | | |
| | | | 17 | Other information A 8. |

\*See attached statement for additional information.

For IRS Use Only

9-11271
12-17-09  JWA  For Paperwork Reduction Act Notice, see Instructions for Form 1120S.

Schedule K-1 (Form 1120S) 2009
SHAREHOLDER NUMBER 3

SCHEDULE K-1          NONDEDUCTIBLE EXPENSES, BOX 16, CODE C

| DESCRIPTION | AMOUNT | SHAREHOLDER FILING INSTRUCTIONS |
|---|---|---|
| EXCLUDED MEALS AND ENTERTAINMENT EXPENSES | 217. | SEE FORM 1040 INSTRUCTIONS |
| TOTAL | 217. | |

SHAREHOLDER  3

This list identifies the codes used on Schedule K-1 for all shareholders and provides summarized reporting information for shareholders who file Form 1040. For detailed reporting and filing information, see the separate Shareholder's Instructions for Schedule K-1 and the instructions for your income tax return.

1. Ordinary business income (loss). Determine whether the income (loss) is passive or nonpassive and enter on your return as follows:

| | Report on |
|---|---|
| Passive loss | See the Shareholder's Instructions |
| Passive income | Schedule E, line 28, column (g) |
| Nonpassive loss | Schedule E, line 28, column (h) |
| Nonpassive income | Schedule E, line 28, column (j) |

2. Net rental real estate income (loss)  See the Shareholder's Instructions
3. Other net rental income (loss)

| | |
|---|---|
| Net income | Schedule E, line 28, column (g) |
| Net loss | See the Shareholder's Instructions |

4. Interest income — Form 1040, line 8a
5a. Ordinary dividends — Form 1040, line 9a
5b. Qualified dividends — Form 1040, line 9b
6. Royalties — Schedule E, line 4
7. Net short-term capital gain (loss) — Schedule D, line 5, column (f)
8a. Net long-term capital gain (loss) — Schedule D, line 12, column (f)
8b. Collectibles (28%) gain (loss) — 28% Rate Gain Worksheet, line 4 (Schedule D Instructions)
8c. Unrecaptured section 1250 gain — See the Shareholder's Instructions
9. Net section 1231 gain (loss) — See the Shareholder's Instructions
10. Other income (loss)

Code
A. Other portfolio income (loss) — See the Shareholder's Instructions
B. Involuntary conversions — See the Shareholder's Instructions
C. Sec. 1256 contracts & straddles — Form 6781, line 1
D. Mining exploration costs recapture — See Pub. 535
E. Other income (loss) — See the Shareholder's Instructions

11. Section 179 deduction — See the Shareholder's Instructions
12. Other deductions

A. Cash contributions (50%)
B. Cash contributions (30%)
C. Noncash contributions (50%)
D. Noncash contributions (30%)
E. Capital gain property to a 50% organization (30%)
F. Capital gain property (20%)
— See the Shareholder's Instructions
G. Contributions (100%)
H. Investment interest expense — Form 4952, line 1
I. Deductions - royalty income — Schedule E, line 18
J. Section 59(e)(2) expenditures — See the Shareholder's Instructions
K. Deductions - portfolio (2% floor) — Schedule A, line 23
L. Deductions - portfolio (other) — Schedule A, line 28
M. Preproductive period expenses — See the Shareholder's Instructions
N. Commercial revitalization deduction from rental real estate activities — See Form 8582 Instructions
O. Reforestation expense deduction — See the Shareholder's Instructions
P. Domestic production activities information — See Form 8903 instructions
Q. Qualified production activities income — Form 8903, line 7
R. Employer's Form W-2 wages — Form 8903, line 15
S. Other deductions — See the Shareholder's Instructions

13. Credits

A. Low-income housing credit (section 42(j)(5)) from pre-2008 buildings — See the Shareholder's Instructions
B. Low-income housing credit (other) from pre-2008 buildings — See the Shareholder's Instructions
C. Low-income housing credit (section 42(j)(5)) from post-2007 buildings — Form 8586, line 11
D. Low-income housing credit (other) from post-2007 buildings — Form 8586, line 11
E. Qualified rehabilitation expenditures (rental real estate) — See the Shareholder's Instructions
F. Other rental real estate credits — See the Shareholder's Instructions
G. Other rental credits — See the Shareholder's Instructions
H. Undistributed capital gains credit — Form 1040, line 70; check box a
I. Alcohol and cellulosic biofuel fuels credit — Form 6478, line 7
J. Work opportunity credit — Form 5884, line 3
K. Disabled access credit — See the Shareholder's Instructions
L. Empowerment zone and renewal community employment credit — Form 8844, line 3

Code
M. Credit for increasing research activities — See the Shareholder's Instructions
N. Credit for employer social security and Medicare taxes — Form 8846, line 5
O. Backup withholding — Form 1040, line 61
P. Other credits — See the Shareholder's Instructions

14. Foreign transactions

A. Name of country or U.S. possession
B. Gross income from all sources — Form 1116, Part I
C. Gross income sourced at shareholder level

Foreign gross income sourced at corporate level
D. Passive category
E. General category — Form 1116, Part I
F. Other

Deductions allocated and apportioned at shareholder level
G. Interest expense — Form 1116, Part I
H. Other — Form 1116, Part I

Deductions allocated and apportioned at corporate level to foreign source income
I. Passive category
J. General category — Form 1116, Part I
K. Other

Other information
L. Total foreign taxes paid — Form 1116, Part II
M. Total foreign taxes accrued — Form 1116, Part II
N. Reduction in taxes available for credit — Form 1116, line 12
O. Foreign trading gross receipts — Form 8873
P. Extraterritorial income exclusion — Form 8873
Q. Other foreign transactions — See the Shareholder's Instructions

15. Alternative minimum tax (AMT) items

A. Post-1986 depreciation adjustment
B. Adjusted gain or loss
C. Depletion (other than oil & gas)
D. Oil, gas, & geothermal - gross income
E. Oil, gas, & geothermal - deductions
F. Other AMT items
— See the Shareholder's Instructions and the instructions for Form 6251

16. Items affecting shareholder basis

A. Tax-exempt interest income — Form 1040, line 8b
B. Other tax-exempt income
C. Nondeductible expenses
D. Property distributions
E. Repayment of loans from shareholders
— See the Shareholder's Instructions

17. Other information

A. Investment income — Form 4952, line 4a
B. Investment expenses — Form 4952, line 5
C. Qualified rehabilitation expenditures (other than rental real estate) — See the Shareholder's Instructions
D. Basis of energy property — See the Shareholder's Instructions
E. Recapture of low-income housing credit (section 42(j)(5)) — Form 8611, line 8
F. Recapture of low-income housing credit (other) — Form 8611, line 8
G. Recapture of investment credit — See Form 4255
H. Recapture of other credits — See the Shareholder's Instructions
I. Look-back interest - completed long-term contracts — See Form 8697
J. Look-back interest - income forecast method — See Form 8866
K. Dispositions of property with section 179 deductions
L. Recapture of section 179 deduction
M. Section 453(l)(3) information
N. Section 453A(c) information
O. Section 1260(b) information
P. Interest allocable to production expenditures
Q. CCF nonqualified withdrawals
R. Depletion information - oil and gas
S. Amortization of reforestation costs
T. Section 108(i) information
U. Other information
— See the Shareholder's Instructions

11-40169-kw    Doc 1    FILED 01/21/11    ENTERED 01/21/11 16:14:54    Page 29 of 142

# Shareholder Basis Worksheet

| | | | |
|---|---|---|---|
| Shareholder Number: | 3 | Year Ended: | DECEMBER 31, 2009 |
| Shareholder Name: | | S Corporation Name: | |
| **GEORGE HAVAS** | | **LIFELINE PARTNERS, INC.** | |
| Shareholder ID Number: | | S Corporation ID Number: | |
| Ownership Percentage: | 9.000000 % | 34-1918386 | |

## Stock Basis

| | | |
|---|---|---|
| 1. a. Stock basis, beginning of year (Not less than zero) | 0. | |
| b. Additional capital contributions | | |
| 2. Increases: | | |
| a. Ordinary income from trade or business | 9,084. | |
| b. Net income from rental real estate activities | | |
| c. Net income from other rental activities | | |
| d. Net short-term capital gains | | |
| e. Net long-term capital gains | | |
| f. Other portfolio income | 8. | |
| g. Net gain under Section 1231 | | |
| h. Other income | | |
| i. Tax exempt interest income | | |
| j. Other tax-exempt income | | |
| k. Section 179 recapture | | |
| l. Depletion (other than oil and gas) in excess of basis | | |
| m. Other increases: | | |
| | | |
| 3. Total increases (Add lines 2(a) through 2(m)) | | 9,092. |
| 4. Total increases to stock basis (Add lines 1 and 3) | | 9,092. |
| 5. Less: Distributions | | |
| 6. Subtract line 5 from line 4 (Not less than zero) | | 9,092. |
| 7. Decreases: | | |
| a. Ordinary losses from trade or business | | |
| b. Net losses from rental real estate activities | | |
| c. Net losses from other rental activities | | |
| d. Net short-term capital losses | | |
| e. Net long-term capital losses | | |
| f. Other portfolio losses | | |
| g. Net losses under Section 1231 | | |
| h. Other deductions | | |
| i. Charitable contributions | | |
| j. Section 179 expense deduction | 744. | |
| k. Deductions related to portfolio income (losses) | | |
| l. Interest expense on investment debts | | |
| m. Foreign taxes paid or accrued | | |
| n. Section 59(e) expenditures | | |
| o. Nondeductible expenses | 217. | |
| p. Oil and gas depletion | | |
| q. Other decreases: | | |
| | | 961. |
| r. Disallowed prior year's losses and deductions | | 68. |
| 8. Total decreases (Add lines 7(a) through 7(r)) | | 1,029. |
| 9. Net increases or decreases to basis (Subtract line 8 from line 6) | | 8,063. |
| 10. Less: Net increases applied to debt basis | | |
| 11. Stock basis, end of year (Subtract line 10 from line 9) (Not less than zero) | | 8,063. |

9 12101
04-24-09

# Shareholder Basis Worksheet, Continued

| | |
|---|---|
| Shareholder Number: **3** | Year Ended: |
| Shareholder Name: **GEORGE HAVAS** | **DECEMBER 31, 2009** |
| | Shareholder ID Number: |

## Debt Basis

| | | |
|---|---|---:|
| 12. | Debt basis, beginning of year (Not less than zero) | 0. |
| 13. | Loans made during the year | |
| 14. | Restoration of debt basis (from line 10) | |
| 15. | Subtotal (Add lines 13 and 14) | |
| 16. | Less: Loan repayments | |
| 17. | Gain from loan repayments | |
| 18. | Other adjustments: | |
| 19. | Subtotal (Combine lines 12, 15, 16, 17 and 18) | |
| 20. | Applied against excess loss and deductions | |
| 21. | Debt basis, end of year (Not less than zero) | 0. |
| 22. | Total shareholder stock and debt basis, end of year (Add lines 11 and 21) (Not less than zero) | 8,063. |

## Gain on Distributions

| | | |
|---|---|---|
| 23. | Distributions | |
| 24. | Less: Basis before distributions | |
| 25. | Enter excess of line 23 over line 24 (capital gain) | |

## Carryover

| | | Total Disallowed Losses | Debt Basis Applied Against Excess Losses and Deductions |
|---|---|---:|---|
| 26. | Beginning of year | 68. | |
| 27. | Add: Losses and deductions this year | 961. | |
| 28. | Less: Applied this year | 1,029. | |
| 29. | End of year (Not less than zero) | | |

9 12 102
04-24-09

# Allocation of Losses and Deductions

Shareholder Number: 3

Shareholder Name: **GEORGE HAVAS**

Year Ended: **DECEMBER 31, 2009**

Shareholder ID Number: ▬▬▬▬

| | (a) Beginning of Year and Current Year Losses and Deductions | (b) % | (c) Allowable Losses and Deductions in Current Year | (d) Disallowed Losses and Deductions (Carryover to Next Year) |
|---|---|---|---|---|
| Ordinary losses from trade or business | 62. | 7.635468 | 62. | |
| Net losses from rental real estate activities | | | | |
| Net losses from other rental activities | | | | |
| Net short-term capital losses | | | | |
| Net long-term capital losses | | | | |
| Other portfolio losses | | | | |
| Net losses under Section 1231 | | | | |
| Other deductions | | | | |
| Charitable contributions | | | | |
| Section 179 expense deduction | 750. | 92.364532 | 750. | |
| Deductions related to portfolio income (losses) | | | | |
| Interest expense on investment debts | | | | |
| Foreign taxes paid or accrued | | | | |
| Section 59(e) expenditures | | | | |
| Other decreases | | | | |
| Total deductible losses and deductions | 812. | 100.000000 | 812. | |
| Nondeductible expenses | 217. | 100.000000 | 217. | |
| Oil and gas depletion | | | | |
| Total nondeductible expenses and oil and gas depletion | 217. | 100.000000 | 217. | |
| Totals | 1,029. | | 1,029. | |

9 12103
04-24-09

671109

Schedule K-1
(Form 1120S)

**2009**

Department of the Treasury
Internal Revenue Service

For calendar year 2009, or tax
year beginning _____
ending _____

☐ Final K-1    ☐ Amended K-1         OMB No. 1545-0130

**Part III**   Shareholder's Share of Current Year Income, Deductions, Credits, and Other Items

**Shareholder's Share of Income, Deductions, Credits, etc.**   ▶ See separate instructions.

| Part I | Information About the Corporation |
|---|---|

**A** Corporation's employer identification number
34-1918386

**B** Corporation's name, address, city, state, and ZIP code

LIFELINE PARTNERS, INC.
397 CHURCHILL-HUBBARD ROAD SUITE 2
YOUNGSTOWN, OH  44505

**C** IRS Center where corporation filed return
E-FILE

| Part II | Information About the Shareholder |
|---|---|

**D** Shareholder's identifying number

**E** Shareholder's name, address, city, state and ZIP code

SARAH KAPP
963 HEREFORD DRIVE
AKRON, OH 44303

**F** Shareholder's percentage of stock
ownership for tax year ___ 9.000000%

| | | | |
|---|---|---|---|
| 1 | Ordinary business income (loss) 9,083. | 13 | Credits |
| 2 | Net rental real estate inc (loss) | | |
| 3 | Other net rental income (loss) | | |
| 4 | Interest income 8. | | |
| 5a | Ordinary dividends | | |
| 5b | Qualified dividends | 14 | Foreign transactions |
| 6 | Royalties | | |
| 7 | Net short-term capital gain (loss) | | |
| 8a | Net long-term capital gain (loss) | | |
| 8b | Collectibles (28%) gain (loss) | | |
| 8c | Unrecaptured sec 1250 gain | | |
| 9 | Net section 1231 gain (loss) | | |
| 10 | Other income (loss) | 15 | Alternative min tax (AMT) items A 301. |
| 11 | Section 179 deduction 744. | 16 | Items affecting shareholder basis C* 217. |
| 12 | Other deductions | | |
| | | 17 | Other information A 8. |

For IRS Use Only

*See attached statement for additional information.

911271
12-17-09    JWA  For Paperwork Reduction Act Notice, see Instructions for Form 1120S.

Schedule K-1 (Form 1120S) 2009
SHAREHOLDER NUMBER 4

LIFELINE PARTNERS, INC.                                    34-1918386

SCHEDULE K-1          NONDEDUCTIBLE EXPENSES, BOX 16, CODE C

| DESCRIPTION | AMOUNT | SHAREHOLDER FILING INSTRUCTIONS |
|---|---|---|
| EXCLUDED MEALS AND ENTERTAINMENT EXPENSES | 217. | SEE FORM 1040 INSTRUCTIONS |
| TOTAL | 217. | |

SHAREHOLDER 4

This list identifies the codes used on Schedule K-1 for all shareholders and provides summarized reporting information for shareholders who file Form 1040. For detailed reporting and filing information, see the separate Shareholder's Instructions for Schedule K-1 and the instructions for your income tax return.

1. Ordinary business income (loss). Determine whether the income (loss) is passive or nonpassive and enter on your return as follows:

| | Report on |
|---|---|
| Passive loss | See the Shareholder's Instructions |
| Passive income | Schedule E, line 28, column (g) |
| Nonpassive loss | Schedule E, line 28, column (h) |
| Nonpassive income | Schedule E, line 28, column (j) |

2. Net rental real estate income (loss) — See the Shareholder's Instructions
3. Other net rental income (loss)

| | |
|---|---|
| Net income | Schedule E, line 28, column (g) |
| Net loss | See the Shareholder's Instructions |

4. Interest income — Form 1040, line 8a
5a. Ordinary dividends — Form 1040, line 9a
5b. Qualified dividends — Form 1040, line 9b
6. Royalties — Schedule E, line 4
7. Net short-term capital gain (loss) — Schedule D, line 5, column (f)
8a. Net long-term capital gain (loss) — Schedule D, line 12, column (f)
8b. Collectibles (28%) gain (loss) — 28% Rate Gain Worksheet, line 4 (Schedule D Instructions)
8c. Unrecaptured section 1250 gain — See the Shareholder's Instructions
9. Net section 1231 gain (loss) — See the Shareholder's Instructions
10. Other income (loss)

**Code**

| A | Other portfolio income (loss) | See the Shareholder's Instructions |
|---|---|---|
| B | Involuntary conversions | See the Shareholder's Instructions |
| C | Sec. 1256 contracts & straddles | Form 6781, line 1 |
| D | Mining exploration costs recapture | See Pub. 535 |
| E | Other income (loss) | See the Shareholder's Instructions |

11. Section 179 deduction — See the Shareholder's Instructions
12. Other deductions

| A | Cash contributions (50%) | |
|---|---|---|
| B | Cash contributions (30%) | |
| C | Noncash contributions (50%) | |
| D | Noncash contributions (30%) | See the Shareholder's Instructions |
| E | Capital gain property to a 50% organization (30%) | |
| F | Capital gain property (20%) | |
| G | Contributions (100%) | Form 4952, line 1 |
| H | Investment interest expense | Schedule E, line 18 |
| I | Deductions - royalty income | See the Shareholder's Instructions |
| J | Section 59(e)(2) expenditures | Schedule A, line 23 |
| K | Deductions - portfolio (2% floor) | Schedule A, line 28 |
| L | Deductions - portfolio (other) | See the Shareholder's Instructions |
| M | Preproductive period expenses | |
| N | Commercial revitalization deduction from rental real estate activities | See Form 8582 Instructions |
| O | Reforestation expense deduction | See the Shareholder's Instructions |
| P | Domestic production activities information | See Form 8903 Instructions |
| Q | Qualified production activities income | Form 8903, line 7 |
| R | Employer's Form W-2 wages | Form 8903, line 15 |
| S | Other deductions | See the Shareholder's Instructions |

13. Credits

| A | Low-income housing credit (section 42(j)(5)) from pre-2008 buildings | See the Shareholder's Instructions |
|---|---|---|
| B | Low-income housing credit (other) from pre-2008 buildings | See the Shareholder's Instructions |
| C | Low-income housing credit (section 42(j)(5)) from post-2007 buildings | Form 8586, line 11 |
| D | Low-income housing credit (other) from post-2007 buildings | Form 8586, line 11 |
| E | Qualified rehabilitation expenditures (rental real estate) | See the Shareholder's Instructions |
| F | Other rental real estate credits | |
| G | Other rental credits | |
| H | Undistributed capital gains credit | Form 1040, line 70; check box a |
| I | Alcohol and cellulosic biofuel fuels credit | Form 6478, line 7 |
| J | Work opportunity credit | Form 5884, line 3 |
| K | Disabled access credit | See the Shareholder's Instructions |
| L | Empowerment zone and renewal community employment credit | Form 8844, line 3 |

| | Code | | Report on |
|---|---|---|---|
| | M | Credit for increasing research activities | See the Shareholder's Instructions |
| | N | Credit for employer social security and Medicare taxes | Form 8846, line 5 |
| | O | Backup withholding | Form 1040, line 61 |
| | P | Other credits | See the Shareholder's Instructions |

14. Foreign transactions

| A | Name of country or U.S. possession | |
|---|---|---|
| B | Gross income from all sources | Form 1116, Part I |
| C | Gross income sourced at shareholder level | |

Foreign gross income sourced at corporate level

| D | Passive category | |
|---|---|---|
| E | General category | Form 1116, Part I |
| F | Other | |

Deductions allocated and apportioned at shareholder level

| G | Interest expense | Form 1116, Part I |
|---|---|---|
| H | Other | Form 1116, Part I |

Deductions allocated and apportioned at corporate level to foreign source income

| I | Passive category | |
|---|---|---|
| J | General category | Form 1116, Part I |
| K | Other | |

Other information

| L | Total foreign taxes paid | Form 1116, Part II |
|---|---|---|
| M | Total foreign taxes accrued | Form 1116, Part II |
| N | Reduction in taxes available for credit | Form 1116, line 12 |
| O | Foreign trading gross receipts | Form 8873 |
| P | Extraterritorial income exclusion | Form 8873 |
| Q | Other foreign transactions | See the Shareholder's Instructions |

15. Alternative minimum tax (AMT) items

| A | Post-1986 depreciation adjustment | |
|---|---|---|
| B | Adjusted gain or loss | See the |
| C | Depletion (other than oil & gas) | Shareholder's |
| D | Oil, gas, & geothermal - gross income | Instructions and |
| E | Oil, gas, & geothermal - deductions | the instructions for |
| F | Other AMT items | Form 6251 |

16. Items affecting shareholder basis

| A | Tax-exempt interest income | Form 1040, line 8b |
|---|---|---|
| B | Other tax-exempt income | |
| C | Nondeductible expenses | See the Shareholder's Instructions |
| D | Property distributions | |
| E | Repayment of loans from shareholders | |

17. Other information

| A | Investment income | Form 4952, line 4a |
|---|---|---|
| B | Investment expenses | Form 4952, line 5 |
| C | Qualified rehabilitation expenditures (other than rental real estate) | See the Shareholder's Instructions |
| D | Basis of energy property | See the Shareholder's Instructions |
| E | Recapture of low-income housing credit (section 42(j)(5)) | Form 8611, line 8 |
| F | Recapture of low-income housing credit (other) | Form 8611, line 8 |
| G | Recapture of investment credit | See Form 4255 |
| H | Recapture of other credits | See the Shareholder's Instructions |
| I | Look-back interest - completed long-term contracts | See Form 8697 |
| J | Look-back interest - income forecast method | See Form 8866 |
| K | Dispositions of property with section 179 deductions | |
| L | Recapture of section 179 deduction | |
| M | Section 453(l)(3) information | |
| N | Section 453A(c) information | |
| O | Section 1260(b) information | |
| P | Interest allocable to production expenditures | See the Shareholder's Instructions |
| Q | CCF nonqualified withdrawals | |
| R | Depletion information - oil and gas | |
| S | Amortization of reforestation costs | |
| T | Section 108(i) information | |
| U | Other information | |

SHAREHOLDER NUMBER 4

# Shareholder Basis Worksheet

| | |
|---|---|
| Shareholder Number: **4** | Year Ended: **DECEMBER 31, 2009** |
| Shareholder Name: | S Corporation Name: |
| **SARAH KAPP** | **LIFELINE PARTNERS, INC.** |
| Shareholder ID Number: | S Corporation ID Number: |
| Ownership Percentage: **9.000000** % | **34-1918386** |

## Stock Basis

| | | | |
|---|---|---:|---:|
| 1. | a. Stock basis, beginning of year (Not less than zero) | 6,742. | |
| | b. Additional capital contributions | | 6,742. |
| 2. | Increases: | | |
| | a. Ordinary income from trade or business | 9,083. | |
| | b. Net income from rental real estate activities | | |
| | c. Net income from other rental activities | | |
| | d. Net short-term capital gains | | |
| | e. Net long-term capital gains | | |
| | f. Other portfolio income | 8. | |
| | g. Net gain under Section 1231 | | |
| | h. Other income | | |
| | i. Tax exempt interest income | | |
| | j. Other tax-exempt income | | |
| | k. Section 179 recapture | | |
| | l. Depletion (other than oil and gas) in excess of basis | | |
| | m. Other increases: | | |
| | | | |
| 3. | Total increases (Add lines 2(a) through 2(m)) | 9,091. | |
| 4. | Total increases to stock basis (Add lines 1 and 3) | | 15,833. |
| 5. | Less: Distributions | | |
| 6. | Subtract line 5 from line 4 (Not less than zero) | | 15,833. |
| 7. | Decreases: | | |
| | a. Ordinary losses from trade or business | | |
| | b. Net losses from rental real estate activities | | |
| | c. Net losses from other rental activities | | |
| | d. Net short-term capital losses | | |
| | e. Net long-term capital losses | | |
| | f. Other portfolio losses | | |
| | g. Net losses under Section 1231 | | |
| | h. Other deductions | | |
| | i. Charitable contributions | | |
| | j. Section 179 expense deduction | 744. | |
| | k. Deductions related to portfolio income (losses) | | |
| | l. Interest expense on investment debts | | |
| | m. Foreign taxes paid or accrued | | |
| | n. Section 59(e) expenditures | | |
| | o. Nondeductible expenses | 217. | |
| | p. Oil and gas depletion | | |
| | q. Other decreases: | | |
| | | 961. | |
| | r. Disallowed prior year's losses and deductions | | |
| 8. | Total decreases (Add lines 7(a) through 7(r)) | | 961. |
| 9. | Net increases or decreases to basis (Subtract line 8 from line 6) | | 14,872. |
| 10. | Less: Net increases applied to debt basis | | |
| 11. | Stock basis, end of year (Subtract line 10 from line 9) (Not less than zero) | | 14,872. |

9 12101
04-24-09

# Shareholder Basis Worksheet, Continued

| | | |
|---|---|---|
| Shareholder Number: | **4** | Year Ended: |
| Shareholder Name: **SARAH KAPP** | | **DECEMBER 31, 2009** |
| | | Shareholder ID Number: |

## Debt Basis

| | | |
|---|---|---|
| 12. Debt basis, beginning of year (Not less than zero) | | 0. |
| 13. Loans made during the year | | |
| 14. Restoration of debt basis (from line 10) | | |
| 15. Subtotal (Add lines 13 and 14) | | |
| 16. Less: Loan repayments | | |
| 17. Gain from loan repayments | | |
| 18. Other adjustments: | | |
| | | |
| 19. Subtotal (Combine lines 12, 15, 16, 17 and 18) | | |
| 20. Applied against excess loss and deductions | | |
| 21. Debt basis, end of year (Not less than zero) | | 0. |
| 22. Total shareholder stock and debt basis, end of year (Add lines 11 and 21) (Not less than zero) | | 14,872. |

## Gain on Distributions

| | |
|---|---|
| 23. Distributions | |
| 24. Less: Basis before distributions | |
| 25. Enter excess of line 23 over line 24 (capital gain) | |

## Carryover

| | Total Disallowed Losses | Debt Basis Applied Against Excess Losses and Deductions |
|---|---|---|
| 26. Beginning of year | | |
| 27. Add: Losses and deductions this year | 961. | |
| 28. Less: Applied this year | 961. | |
| 29. End of year (Not less than zero) | | |

912102
04-24-09

# United States Bankruptcy Court
## Northern District of Ohio

In re **LifeLine Partners, Inc.**        Case No. _____

Debtor(s)      Chapter    **11**

## LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS

Following is the list of the debtor's creditors holding the 20 largest unsecured claims. The list is prepared in accordance with Fed. R. Bankr. P. 1007(d) for filing in this chapter 11 [*or* chapter 9] case. The list does not include (1) persons who come within the definition of "insider" set forth in 11 U.S.C. § 101, or (2) secured creditors unless the value of the collateral is such that the unsecured deficiency places the creditor among the holders of the 20 largest unsecured claims. If a minor child is one of the creditors holding the 20 largest unsecured claims, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See 11 U.S.C. § 112; Fed. R. Bankr. P. 1007(m).

| (1)<br><br>*Name of creditor and complete mailing address including zip code* | (2)<br><br>*Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted* | (3)<br><br>*Nature of claim (trade debt, bank loan, government contract, etc.)* | (4)<br><br>*Indicate if claim is contingent, unliquidated, disputed, or subject to setoff* | (5)<br><br>*Amount of claim [if secured, also state value of security]* |
|---|---|---|---|---|
| **ADT Security Services, Inc.**<br>**PO Box 371967**<br>**Pittsburgh, PA 15250-7967** | **ADT Security Services, Inc.**<br>**PO Box 371967**<br>**Pittsburgh, PA 15250-7967** | **Account** | | **128.36** |
| **Chase Card Services**<br>**PO Box 15153**<br>**Wilmington, DE 19886-5153** | **Chase Card Services**<br>**PO Box 15153**<br>**Wilmington, DE 19886-5153** | **Credit card purchases** | | **11,963.61** |
| **Chase Card Services**<br>**PO Box 15153**<br>**Wilmington, DE 19886-5153** | **Chase Card Services**<br>**PO Box 15153**<br>**Wilmington, DE 19886-5153** | **Credit card purchases** | | **1,300.91** |
| **First National Bank of Pennsylvania**<br>**Commercial Hermitage**<br>**1 Federal Plaza West**<br>**Youngstown, OH 44503** | **First National Bank of Pennsylvania**<br>**Commercial Hermitage**<br>**1 Federal Plaza West**<br>**Youngstown, OH 44503** | **Guaranteed loan** | **Contingent** | **Unknown** |
| **First National Bank of Pennsylvania**<br>**Commercial Hermitage**<br>**1 Federal Plaza West**<br>**Youngstown, OH 44503** | **First National Bank of Pennsylvania**<br>**Commercial Hermitage**<br>**1 Federal Plaza West**<br>**Youngstown, OH 44503** | **Guaranteed loan** | **Contingent** | **166,500.00** |
| **First National Bank of Pennsylvania**<br>**Commercial Hermitage**<br>**1 Federal Plaza West**<br>**Youngstown, OH 44503** | **First National Bank of Pennsylvania**<br>**Commercial Hermitage**<br>**1 Federal Plaza West**<br>**Youngstown, OH 44503** | **Guaranteed loan** | **Contingent** | **146,153.23** |
| **First National Bank of Pennsylvania**<br>**Commercial Hermitage**<br>**1 Federal Plaza West**<br>**Youngstown, OH 44503** | **First National Bank of Pennsylvania**<br>**Commercial Hermitage**<br>**1 Federal Plaza West**<br>**Youngstown, OH 44503** | **Guaranteed loan** | **Contingent** | **75,000.00** |
| **First National Bank of Pennsylvania**<br>**Commercial Hermitage**<br>**1 Federal Plaza West**<br>**Youngstown, OH 44503** | **First National Bank of Pennsylvania**<br>**Commercial Hermitage**<br>**1 Federal Plaza West**<br>**Youngstown, OH 44503** | **Guaranteed loan** | **Contingent** | **52,975.33** |

B4 (Official Form 4) (12/07) - Cont.

In re **LifeLine Partners, Inc.** _____  Case No. _____

Debtor(s)

## LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS
(Continuation Sheet)

| (1)<br><br>*Name of creditor and complete mailing address including zip code* | (2)<br><br>*Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted* | (3)<br><br>*Nature of claim (trade debt, bank loan, government contract, etc.)* | (4)<br><br>*Indicate if claim is contingent, unliquidated, disputed, or subject to setoff* | (5)<br><br>*Amount of claim [if secured, also state value of security]* |
|---|---|---|---|---|
| **First National Bank of Pennsylvania Commercial Hermitage 1 Federal Plaza West Youngstown, OH 44503** | **First National Bank of Pennsylvania Commercial Hermitage 1 Federal Plaza West Youngstown, OH 44503** | **Guaranteed loan** | **Contingent** | **50,000.00** |
| **Hill Barth & King LLC City Centre One, Suite 514 100 Federal Plaza East Youngstown, OH 44503** | **Hill Barth & King LLC City Centre One, Suite 514 100 Federal Plaza East Youngstown, OH 44503** | **Accounting Services** | | **4,800.00** |
| **Mahoning Valley Industrial Loan Fund 4319 Belmont Ave. Youngstown, OH 44505** | **Mahoning Valley Industrial Loan Fund 4319 Belmont Ave. Youngstown, OH 44505** | **Guaranteed loan** | **Contingent** | **75,000.00** |
| **O'Neals Tarpaulin 549 W. Indianola Ave. Youngstown, OH 44511** | **O'Neals Tarpaulin 549 W. Indianola Ave. Youngstown, OH 44511** | **Account** | | **1,438.11** |
| **Phillips-Sekanick Architects 142 E. Market St. Warren, OH 44481** | **Phillips-Sekanick Architects 142 E. Market St. Warren, OH 44481** | **Architect services** | **Disputed** | **17,070.90** |
| **PNC Bank PO Box 450 Youngstown, OH 44501** | **PNC Bank PO Box 450 Youngstown, OH 44501** | **Loan** | | **72,071.71** |
| **Sam's Club PO Box 960016 Orlando, FL 32896-0016** | **Sam's Club PO Box 960016 Orlando, FL 32896-0016** | **Credit card purchases** | | **945.99** |
| **The Emerald Health Network, Inc. PO Box 73746-N Cleveland, OH 44193-1049** | **The Emerald Health Network, Inc. PO Box 73746-N Cleveland, OH 44193-1049** | **Account** | | **345.71** |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

In re   **LifeLine Partners, Inc.**                                                    Case No. _____

_____
Debtor(s)

## LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS
(Continuation Sheet)

## DECLARATION UNDER PENALTY OF PERJURY
## ON BEHALF OF A CORPORATION OR PARTNERSHIP

I, the President of the corporation named as the debtor in this case, declare under penalty of perjury that I have read the foregoing list and that it is true and correct to the best of my information and belief.

Date   **January 21, 2011**                    Signature   **/s/ Kathleen Burgdorf**
_____

**Kathleen Burgdorf**
**President**

*Penalty for making a false statement or concealing property*:  Fine of up to $500,000 or imprisonment for up to 5 years or both.
18 U.S.C. §§  152 and 3571.

Software Copyright (c) 1996-2010 CCH INCORPORATED - www.bestcase.com                                                    Best Case Bankruptcy

# United States Bankruptcy Court

## Northern District of Ohio

In re    **LifeLine Partners, Inc.**                     ,      Case No. _____

Debtor

Chapter _____**11**_____

# SUMMARY OF SCHEDULES

Indicate as to each schedule whether that schedule is attached and state the number of pages in each. Report the totals from Schedules A, B, D, E, F, I, and J in the boxes provided. Add the amounts from Schedules A and B to determine the total amount of the debtor's assets. Add the amounts of all claims from Schedules D, E, and F to determine the total amount of the debtor's liabilities. Individual debtors must also complete the "Statistical Summary of Certain Liabilities and Related Data" if they file a case under chapter 7, 11, or 13.

| NAME OF SCHEDULE | ATTACHED (YES/NO) | NO. OF SHEETS | ASSETS | LIABILITIES | OTHER |
|---|---|---|---|---|---|
| A - Real Property | Yes | 1 | 0.00 | | |
| B - Personal Property | Yes | 12 | 483,138.90 | | |
| C - Property Claimed as Exempt | No | 0 | | | |
| D - Creditors Holding Secured Claims | Yes | 1 | | 243,440.13 | |
| E - Creditors Holding Unsecured Priority Claims (Total of Claims on Schedule E) | Yes | 1 | | 0.00 | |
| F - Creditors Holding Unsecured Nonpriority Claims | Yes | 4 | | 767,135.16 | |
| G - Executory Contracts and Unexpired Leases | Yes | 45 | | | |
| H - Codebtors | Yes | 3 | | | |
| I - Current Income of Individual Debtor(s) | No | 0 | | | N/A |
| J - Current Expenditures of Individual Debtor(s) | No | 0 | | | N/A |
| Total Number of Sheets of ALL Schedules | | 67 | | | |
| Total Assets | | | 483,138.90 | | |
| Total Liabilities | | | | 1,010,575.29 | |

# United States Bankruptcy Court
## Northern District of Ohio

In re    **LifeLine Partners, Inc.**

                                  Debtor

Case No. _____

Chapter _____ **11**

## STATISTICAL SUMMARY OF CERTAIN LIABILITIES AND RELATED DATA (28 U.S.C. § 159)

If you are an individual debtor whose debts are primarily consumer debts, as defined in § 101(8) of the Bankruptcy Code (11 U.S.C.§ 101(8)), filing a case under chapter 7, 11 or 13, you must report all information requested below.

☐ Check this box if you are an individual debtor whose debts are NOT primarily consumer debts. You are not required to report any information here.

**This information is for statistical purposes only under 28 U.S.C. § 159.**

**Summarize the following types of liabilities, as reported in the Schedules, and total them.**

| Type of Liability | Amount |
|---|---|
| Domestic Support Obligations (from Schedule E) | |
| Taxes and Certain Other Debts Owed to Governmental Units (from Schedule E) | |
| Claims for Death or Personal Injury While Debtor Was Intoxicated (from Schedule E) (whether disputed or undisputed) | |
| Student Loan Obligations (from Schedule F) | |
| Domestic Support, Separation Agreement, and Divorce Decree Obligations Not Reported on Schedule E | |
| Obligations to Pension or Profit-Sharing, and Other Similar Obligations (from Schedule F) | |
| TOTAL | |

**State the following:**

| | |
|---|---|
| Average Income (from Schedule I, Line 16) | |
| Average Expenses (from Schedule J, Line 18) | |
| Current Monthly Income (from Form 22A Line 12; OR, Form 22B Line 11; OR, Form 22C Line 20 ) | |

**State the following:**

| | | |
|---|---|---|
| 1. Total from Schedule D, "UNSECURED PORTION, IF ANY" column | | |
| 2. Total from Schedule E, "AMOUNT ENTITLED TO PRIORITY" column | | |
| 3. Total from Schedule E, "AMOUNT NOT ENTITLED TO PRIORITY, IF ANY" column | | |
| 4. Total from Schedule F | | |
| 5. Total of non-priority unsecured debt (sum of 1, 3, and 4) | | |

In re   **LifeLine Partners, Inc.**           ,     Case No. _____

                                           Debtor

# SCHEDULE A - REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a cotenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

**Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim." If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| Description and Location of Property | Nature of Debtor's Interest in Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption | Amount of Secured Claim |
|---|---|---|---|---|
| **None** | | | | |

| | | |
|---|---|---|
| Sub-Total > | **0.00** | (Total of this page) |
| Total > | **0.00** | |
| | (Report also on Summary of Schedules) | |

__0__   continuation sheets attached to the Schedule of Real Property

In re  **LifeLine Partners, Inc.**                                    ,      Case No. _____
                                                    Debtor

# SCHEDULE B - PERSONAL PROPERTY

Except as directed below, list all personal property of the debtor of whatever kind. If the debtor has no property in one or more of the categories, place an "x" in the appropriate position in the column labeled "None." If additional space is needed in any category, attach a separate sheet properly identified with the case name, case number, and the number of the category. If the debtor is married, state whether husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor is an individual or a joint petition is filed, state the amount of any exemptions claimed only in Schedule C - Property Claimed as Exempt.

**Do not list interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If the property is being held for the debtor by someone else, state that person's name and address under "Description and Location of Property."
If the property is being held for a minor child, simply state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

| | Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|---|
| 1. | Cash on hand | X | | | |
| 2. | Checking, savings or other financial accounts, certificates of deposit, or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives. | | **Chase Bank checking account** | - | 12,147.14 |
| | | | **First National Bank checking account** | - | 250.00 |
| | | | **First National Bank savings account** | - | 199.70 |
| 3. | Security deposits with public utilities, telephone companies, landlords, and others. | | **Security deposit held by Cocca Development, Ltd.** | - | 6,212.50 |
| | | | **Security deposit held by Churchill Square Properties** | - | 650.00 |
| 4. | Household goods and furnishings, including audio, video, and computer equipment. | X | | | |
| 5. | Books, pictures and other art objects, antiques, stamp, coin, record, tape, compact disc, and other collections or collectibles. | X | | | |
| 6. | Wearing apparel. | X | | | |
| 7. | Furs and jewelry. | X | | | |
| 8. | Firearms and sports, photographic, and other hobby equipment. | X | | | |
| 9. | Interests in insurance policies. Name insurance company of each policy and itemize surrender or refund value of each. | X | | | |
| 10. | Annuities. Itemize and name each issuer. | X | | | |

|  | Sub-Total > | 19,459.34 |
|---|---|---|
|  | (Total of this page) | |

___3___  continuation sheets attached to the Schedule of Personal Property

In re   **LifeLine Partners, Inc.**                     ,     Case No. _____
                                 Debtor

# SCHEDULE B - PERSONAL PROPERTY
### (Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 11. Interests in an education IRA as defined in 26 U.S.C. § 530(b)(1) or under a qualified State tuition plan as defined in 26 U.S.C. § 529(b)(1). Give particulars. (File separately the record(s) of any such interest(s). 11 U.S.C. § 521(c).) | X | | | |
| 12. Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans. Give particulars. | X | | | |
| 13. Stock and interests in incorporated and unincorporated businesses. Itemize. | X | | | |
| 14. Interests in partnerships or joint ventures. Itemize. | X | | | |
| 15. Government and corporate bonds and other negotiable and nonnegotiable instruments. | X | | | |
| 16. Accounts receivable. | | See the attached aging summary (Exhibit "A") | - | 150,396.20 |
| | | Accounts receivable 0-30 days - $282,952.06 (35% collectible) Accounts receivable 31-60 days - $44,280.25 (80% collectible) Accounts receivable 61-90 days - $19,923.47 (80% collectible) Accounts receivable more than 90 days - uncollectible and valued at $0 | | |
| | | Account receivable from Lifeline Partners Sleep & Diagnostic Center, Inc. | - | 68,970.00 |
| | | Account receivable from LifeLine Partners of Canton, Inc. (company now defunct and collectibility is not likely) | - | 149,298.36 |
| 17. Alimony, maintenance, support, and property settlements to which the debtor is or may be entitled. Give particulars. | X | | | |
| 18. Other liquidated debts owed to debtor including tax refunds. Give particulars. | X | | | |

|  |  |
|---|---|
| Sub-Total > | 368,664.56 |
| (Total of this page) | |

Sheet  **1**  of  **3**  continuation sheets attached
to the Schedule of Personal Property

In re  **LifeLine Partners, Inc.**
_____,  Case No. _____

Debtor

# SCHEDULE B - PERSONAL PROPERTY
(Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 19. Equitable or future interests, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule A - Real Property. | X | | | |
| 20. Contingent and noncontingent interests in estate of a decedent, death benefit plan, life insurance policy, or trust. | X | | | |
| 21. Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each. | X | | | |
| 22. Patents, copyrights, and other intellectual property. Give particulars. | X | | | |
| 23. Licenses, franchises, and other general intangibles. Give particulars. | X | | | |
| 24. Customer lists or other compilations containing personally identifiable information (as defined in 11 U.S.C. § 101(41A)) provided to the debtor by individuals in connection with obtaining a product or service from the debtor primarily for personal, family, or household purposes. | X | | | |
| 25. Automobiles, trucks, trailers, and other vehicles and accessories. | | **Vehicles as set forth and valued according to the attached appraisal report (Exhibit "B")** | - | 52,100.00 |
| 26. Boats, motors, and accessories. | X | | | |
| 27. Aircraft and accessories. | X | | | |
| 28. Office equipment, furnishings, and supplies. | X | | | |
| 29. Machinery, fixtures, equipment, and supplies used in business. | | **Equipment and supplies as set forth and valued according to the attached appraisal report (Exhibit "C")** | - | 42,915.00 |
| 30. Inventory. | X | | | |

Sub-Total >  95,015.00
(Total of this page)

Sheet  **2**  of  **3**  continuation sheets attached
to the Schedule of Personal Property

In re    **LifeLine Partners, Inc.**                     ,     Case No. _____

                                       Debtor

# SCHEDULE B - PERSONAL PROPERTY
### (Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 31. Animals. | X | | | |
| 32. Crops - growing or harvested. Give particulars. | X | | | |
| 33. Farming equipment and implements. | X | | | |
| 34. Farm supplies, chemicals, and feed. | X | | | |
| 35. Other personal property of any kind not already listed. Itemize. | X | | | |

| | |
|---|---|
| Sub-Total > | **0.00** |
| (Total of this page) | |
| Total > | **483,138.90** |

Sheet  __3__  of  __3__  continuation sheets attached
to the Schedule of Personal Property

(Report also on Summary of Schedules)

# Aging Report
## LIFELINE PARTNERS, INC.
### Group By Plan, Based on Service Date



| Based On: | Insurance and Patient Resp | | Balance Range: | ALL | | | |
|---|---|---|---|---|---|---|---|
| Pat ID | Patient Name | Phone | 0-30 | 31-60 | 61-90 | Over 90 | Aging Total |

**\*13 - WELFARE 6780**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4703.0 | ZAPKO, SUZANNE | (330) 758-3012 | $0.00 | $0.00 | $0.00 | ($14.90) | ($14.90) |
| * Count: | 7 | | 0.00 | 0.00 | 0.00 | (561.31) | (561.31) |
| | | | (0.00%) | (0.00%) | (0.00%) | (-0.17%) | (-0.17%) |

| Report Aging Summary | | | |
|---|---|---|---|
| Aging buckets | Totals | % of Total | Count of non-zero rows |
| 0-30 | $282,952.06 | 88.12% | 180 |
| 31-60 | $44,280.25 | 13.79% | 114 |
| 61-90 | $19,923.47 | 6.20% | 59 |
| Over 90 | ($26,064.87) | 8.12% | 771 |
| Aging Total | $321,090.91 | | 1,124 |
| Total patient count: 882 | | | |

| Report Collection Summary (Collection accounts indicated by bold print) | | | |
|---|---|---|---|
| Aging buckets | Totals | % of Total | Count of non-zero rows |
| 0-30 | $0.00 | 0.00% | 0 |
| 31-60 | $0.00 | 0.00% | 0 |
| 61-90 | $0.00 | 0.00% | 0 |
| Over 90 | $33,216.81 | -127.44% | 130 |
| Collection Aging Total | $33,216.81 | | 130 |
| %Collection Aging (Collection Aging Total/Aging Total) | | 10.34% | |
| Total patient count: 170 | | | |


EXHIBIT

B

LIFELINE PARTNERS: VEHICLES

| | |
|---|---|
| 2006 Chrysler Pacifica SR#2A4GM68456R778400, 73,370 miles | $8,400.00 |
| 2002 Pontiac Montana SR#1GMDX13E22D166134, 218,029 miles | $1,500.00 |
| 2005 Pontiac Montana SV6 SR#1GMDV03L35D177792, Approximately 80,000 miles | $5,700.00 |
| 2005 Buick Terraza SR#5GADV23L15D234461, 45,053 miles | $9,500.00 |
| 2007 Chevy Uplander SR#1GNDV23W67D143365, 115,913 miles | $5,200.00 |
| 2004 Chevy Suburban SR#3GNFK16Z64G100922, 95,262 miles | $11,200.00 |
| 2004 Pontiac Montana SR#1GMDX13E24D247637, 83,000 miles | $4,100.00 |
| 2003 Chrysler Town & County SR#2C4GP44323R352559, 123,488 miles | $3,000.00 |
| 2004 Pontiac Montana SR#1GMDU03E84D199693, 108,462 miles | $3,500.00 |
| TOTAL | $52,100.00 |

**EXHIBIT**



C

LIFELINE PARTNERS: 1825 Tibbets Wick Rd. Girard, OH

| | | |
|---|---|---:|
| (4) Gray arm chairs | $ | 60.00 |
| Small table | $ | 5.00 |
| (2) Two drawer lateral files | $ | 50.00 |
| Brother Intellifax 4750e | $ | 100.00 |
| hp Laserjet 4200tn | $ | 250.00 |
| Savin 8025e copier | $ | 900.00 |
| (2) Black swivel chairs | $ | 80.00 |
| Dell Dimension 4500S computer | $ | 125.00 |
| Electric heater | $ | 25.00 |
| Four drawer lateral file | $ | 75.00 |
| Two drawer lateral file | $ | 25.00 |
| Wood cabinet | $ | 25.00 |
| Four section computer desk | $ | 225.00 |
| (2) Black office chairs | $ | 60.00 |
| (2) Chairs | $ | 15.00 |
| (2) Dell Dimension E521 computer | $ | 275.00 |
| (2) Computers | $ | 200.00 |
| Four section computer desk | $ | 150.00 |
| Black swivel chair | $ | 40.00 |
| GE refrigerator | $ | 50.00 |
| Plastic organizer | $ | 20.00 |
| (2) Baumanometer | $ | 50.00 |
| (2) Swivel stools | $ | 50.00 |
| Utility cart | $ | 50.00 |
| Wire rack | $ | 20.00 |
| (4) SciFit Power Trainer I exercycles | $ | 400.00 |
| (4) Landice L7 treadmills | $ | 1,600.00 |
| (3) Vision Fitness R2000 exercycles | $ | 600.00 |
| (3) Discovery Model 6.0R exercycles | $ | 425.00 |
| Colorado Rehab cycle | $ | 150.00 |
| Plastic folding table | $ | 50.00 |
| (11) Plastic folding chairs | $ | 55.00 |
| Hausmann ambulation/mobility platform | $ | 200.00 |
| Schwinn #102 personal trainer | $ | 125.00 |
| (2) Horizon treadmills, Model PST6 | $ | 800.00 |
| Round table and chairs | $ | 75.00 |
| Body Solid gym system | $ | 750.00 |
| Utility cart | $ | 50.00 |
| Lot exercise balls, etc. | $ | 40.00 |
| Dynatron Solaris 709 stimulator | $ | 800.00 |
| (6) Arm chairs | $ | 75.00 |
| Wood exam table | $ | 75.00 |
| SS table | $ | 75.00 |
| Lot weights | $ | 35.00 |
| General Dynamics Tru-View 162 Telemetry | $ | 100.00 |
| Ambulation/mobility platform | $ | 200.00 |
| Corner desk | $ | 25.00 |
| Therapy table | $ | 50.00 |
| Utility cart | $ | 50.00 |
| Lot bands and dumbbells | $ | 50.00 |

| | | |
|---|---|---|
| Dynatron 950 Plus stimulator | $ | 500.00 |
| Triton hi-low traction table, Model TRE-24 | $ | 1,000.00 |
| (2) Swivel stools | $ | 35.00 |
| Lot Bowflex dumbbells | $ | 75.00 |
| Floor fan | $ | 20.00 |
| Bunn coffee maker | $ | 75.00 |
| Baker's table | $ | 65.00 |
| Phillips flat screen television | $ | 250.00 |
| Changeable sign | $ | 75.00 |
| Plastic folding table | $ | 25.00 |
| Lot desk, chairs, bookcase, file | $ | 90.00 |
| Antel computer | $ | 75.00 |
| Round table and (8) chairs | $ | 100.00 |
| Lot refrigerator and microwaves | $ | 125.00 |
| (2) Samsung front load dryers | $ | 700.00 |
| Werner 8' step ladder | $ | 75.00 |
| Chattanooga hydrocollator | $ | 300.00 |
| Savin 8025 copier | $ | 900.00 |
| hp Laserjet 4200tn | $ | 250.00 |
| Brother Intellifax 4750e | $ | 100.00 |
| Detecto physician scale | $ | 75.00 |
| (2) Four drawer files | $ | 50.00 |
| (2) Swivel chairs | $ | 60.00 |
| Eight section computer desk | $ | 300.00 |
| Group of computers, monitors, printers | $ | 350.00 |
| (3) Four drawer files | $ | 75.00 |
| (2) Swivel chairs | $ | 90.00 |
| Cherry finish desk unit | $ | 125.00 |
| Group of four computer servers | $ | 600.00 |
| Fujitsu "Du-Plex" scanner | $ | 100.00 |
| (2) Four drawer files | $ | 50.00 |
| Four drawer lateral file | $ | 50.00 |
| (2) Swivel chairs | $ | 75.00 |
| C-shaped desk | $ | 100.00 |
| Corner desk | $ | 40.00 |
| L-shaped desk | $ | 25.00 |
| Group of (3) Dell computers | $ | 350.00 |
| Adjustable wire rack | $ | 75.00 |
| Two drawer lateral file | $ | 25.00 |
| Wall map | $ | 25.00 |
| (4) Sections of metal shelving | $ | 160.00 |
| Step ladder | $ | 25.00 |
| (2) Four drawer lateral files | $ | 100.00 |
| Five drawer lateral file | $ | 65.00 |
| Fujitsu Fi-5650 Imprinter | $ | 200.00 |
| Dell Laptop | $ | 100.00 |
| Avaya phone system, 10 lines, (18) phones | $ | 800.00 |
| Exam table | $ | 25.00 |
| (2) Arm chairs | $ | 25.00 |
| Desk, chair, bookcase | $ | 40.00 |
| Dell Laptop | $ | 100.00 |
| Vertebrae model | $ | 25.00 |

| | | |
|---|---|---:|
| Shopmade steps | $ | 10.00 |
| Dyson sweeper | $ | 50.00 |
| Metal storage cabinet | $ | 75.00 |
| | | |
| TOTAL | $ | 19,055.00 |

LIFELINE PARTNERS: 250 Debartolo Pl. Boardman, OH

| | | |
|---|---|---:|
| (3) Black swivel chairs | $ | 120.00 |
| Savin copier, Model 9935DP | $ | 600.00 |
| Maple five section desk unit | $ | 250.00 |
| Brother Intellifax 4750e | $ | 100.00 |
| hp Laserjet tn printer | $ | 100.00 |
| Dell Dimension 2400 computer | $ | 150.00 |
| (14) Gray chairs | $ | 175.00 |
| Round table and four chairs | $ | 50.00 |
| Fitmaster portable massage table | $ | 100.00 |
| Corner desk and chair | $ | 50.00 |
| (2) Four drawer file cabinets | $ | 80.00 |
| Metal storage cabinet | $ | 75.00 |
| Lot AT & T telephones | $ | 150.00 |
| L-shaped desk and chair | $ | 65.00 |
| Bookcase | $ | 10.00 |
| Vertebrae model | $ | 15.00 |
| Master portable massage table | $ | 100.00 |
| Lot lockers | $ | 25.00 |
| Lot bands and frame | $ | 50.00 |
| Body Solid gym system | $ | 750.00 |
| Corner hutch top | $ | 25.00 |
| (6) Plastic folding chairs | $ | 30.00 |
| Plastic folding table | $ | 25.00 |
| Lasko heater | $ | 25.00 |
| Pro-Form Model 480cx exerciser | $ | 100.00 |
| Discovery exerciser, Model 6.0R | $ | 175.00 |
| Vision Fitness exerciser, Model R2000 | $ | 200.00 |
| Plastic folding table | $ | 50.00 |
| (2) Monark Rehab trainers | $ | 400.00 |
| NEG Aerobicycle | $ | 75.00 |
| Fan | $ | 15.00 |
| Sylvania television | $ | 50.00 |
| Utility cart | $ | 50.00 |
| Quinton treadmill, Model Medtrack R60 | $ | 350.00 |
| (2) Quinton treadmills, Model CR60 | $ | 1,200.00 |
| Trackmaster "Magnum" treadmill | $ | 400.00 |
| Oak L-shaped desk | $ | 50.00 |
| Hausman wall pulley exerciser | $ | 75.00 |
| Hydrocollator | $ | 300.00 |
| ColPac hydrocollator | $ | 200.00 |
| Baumanometer | $ | 50.00 |
| Quinton Q-Tel system | $ | 200.00 |
| Lot dumbbells and cart | $ | 65.00 |
| Swivel stool | $ | 20.00 |
| Wood examine table | $ | 75.00 |
| Utility cart | $ | 50.00 |
| Midland therapy table | $ | 75.00 |
| Baumanometer | $ | 50.00 |
| Dynatron 950 Plus stimulator | $ | 500.00 |
| Parabath | $ | 25.00 |

| | | |
|---|---|---:|
| Oak four drawer file | $ | 75.00 |
| Lot exercise balls, etc. | $ | 50.00 |
| Ambulatory/mobility platform | $ | 200.00 |
| (2) C-shaped desk units | $ | 125.00 |
| (2) Utility carts | $ | 50.00 |
| Floor fan | $ | 5.00 |
| (2) Dell computers | $ | 250.00 |
| Adjustable rack | $ | 65.00 |
| (3) Wood exam tables | $ | 75.00 |
| (2) Portable massage tables | $ | 200.00 |
| Four drawer lateral file | $ | 40.00 |
| (3) Chairs | $ | 20.00 |
| Folding ladder | $ | 25.00 |
| Privacy screen | $ | 25.00 |
| (2) Monark Rehab trainers, Model 818E | $ | 400.00 |
| Schwinn Airdyne exerciser | $ | 125.00 |
| Dyson sweeper | $ | 50.00 |
| Lot ladder, fan | $ | 25.00 |
| Wall map | $ | 35.00 |
| Lot refrigerator, microwave, etc. | $ | 125.00 |
| (2) Cherry beds, nightstands | $ | 200.00 |
| Ambulatory/mobility platform | $ | 200.00 |
| Memorex television | $ | 15.00 |
| Chattanooga hydrocollator | $ | 150.00 |
| Samsung tv/vcr | $ | 25.00 |
| Lot (2) Responics Alice 5 sleep systems with support equipment | $ | 8,000.00 |
| | | |
| | | |
| TOTAL | $ | 18,475.00 |

LIFELINE PARTNERS: 4531 Belmont Ave. Youngstown, OH

| | | |
|---|---|---|
| Lot (2) Viasys Healthcare Sensor Medics sleep systems and support equipment | $ | 4,000.00 |
| Samsung monitor, cameras, recorder | $ | 100.00 |
| Lexmark T640 printer | $ | 150.00 |
| L-shaped desk and chair | $ | 50.00 |
| Lot organizers | $ | 25.00 |
| Utility cart | $ | 40.00 |
| Canon Imageclass D761 copier | $ | 150.00 |
| Formica cabinet | $ | 20.00 |
| Formica top desk and chair | $ | 75.00 |
| Lot (3) cabinets | $ | 100.00 |
| Cherry bed and nightstand | $ | 75.00 |
| Coat rack | $ | 20.00 |
| Beige recliner | $ | 75.00 |
| (2) Plastic folding chairs | $ | 10.00 |
| Samsung tv/vcr | $ | 35.00 |
| Fan | $ | 10.00 |
| Stand and lamp | $ | 10.00 |
| Wrought iron bed and nightstand | $ | 100.00 |
| Coat rack | $ | 20.00 |
| Fan | $ | 20.00 |
| Folding chair | $ | 5.00 |
| Lot (2) tables and lamp | $ | 20.00 |
| Toshiba tv/vcr | $ | 40.00 |
| Lot prints/frames | $ | 10.00 |
| Lot GE refrigerator, microwave, etc. | $ | 75.00 |
| Dyson sweeper | $ | 50.00 |
| (3) Sections metal shelving | $ | 75.00 |
| Lot bedding, etc. | $ | 25.00 |
| | | |
| TOTAL | $ | 5,385.00 |

In re    **LifeLine Partners, Inc.**          ,      Case No. _____

                                         Debtor

# SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is a creditor, the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor" ,include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".

If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion" on the Statistical Summary of Certain Liabilities and Related Data.

☐   Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|---|---|
| | | H | W | J C | | | | | | |
| Account No. **xxxxxxxxxx5501** <br><br> **Chase Auto Finance** <br> **PO Box 9001801** <br> **Louisville, KY 40290-1801** | | | - | | **Vehicle loan** <br><br> **2004 Pontiac Montana** <br><br><br> Value $      **4,100.00** | | | | 7,430.07 | 3,330.07 |
| Account No. **xxxx1275** <br><br> **First National Bank** <br> **4140 E. State St.** <br> **Hermitage, PA 16148** | | | - | | **Term loan** <br><br> **2006 Chrysler Pacifica ($8,400) & 2005 Buick Terraza ($9,500)** <br><br> Value $     **17,900.00** | | | | 15,510.09 | 0.00 |
| Account No. **xxxx3535** <br><br> **First National Bank of Pennsylvania Commercial Hermitage** <br> **1 Federal Plaza West** <br> **Youngstown, OH 44503** | X | | - | | **Term loan** <br><br> **Inventory, chattel paper, accounts, equipment, receivables and general intangibles** <br><br> Value $    **424,176.40** | | | | 122,745.01 | 0.00 |
| Account No. **xxxx4105** <br><br> **First National Bank of Pennsylvania Commercial Hermitage** <br> **1 Federal Plaza West** <br> **Youngstown, OH 44503** | X | | - | | **Line of credit** <br><br> **Inventory, accounts, equipment, receivables and general intangibles** <br><br> Value $    **424,176.40** | | | | 97,754.96 | 0.00 |

   __0__   continuation sheets attached

| | Subtotal <br> (Total of this page) | 243,440.13 | 3,330.07 |
|---|---|---|---|
| | Total <br> (Report on Summary of Schedules) | 243,440.13 | 3,330.07 |

In re    **LifeLine Partners, Inc.**                                  Case No. _____
_____ ,
                                               Debtor

# SCHEDULE E - CREDITORS HOLDING UNSECURED PRIORITY CLAIMS

       A complete list of claims entitled to priority, listed separately by type of priority, is to be set forth on the sheets provided. Only holders of unsecured claims entitled to priority should be listed in this schedule. In the boxes provided on the attached sheets, state the name, mailing address, including zip code, and last four digits of the account number, if any, of all entities holding priority claims against the debtor or the property of the debtor, as of the date of the filing of the petition. Use a separate continuation sheet for each type of priority and label each with the type of priority.

       The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

       If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H-Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

       Report the total of claims listed on each sheet in the box labeled "Subtotals" on each sheet. Report the total of all claims listed on this Schedule E in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules.

       Report the total of amounts entitled to priority listed on each sheet in the box labeled "Subtotals" on each sheet. Report the total of all amounts entitled to priority listed on this Schedule E in the box labeled "Totals" on the last sheet of the completed schedule. Individual debtors with primarily consumer debts report this total also on the Statistical Summary of Certain Liabilities and Related Data.

       Report the total of amounts _not_ entitled to priority listed on each sheet in the box labeled "Subtotals" on each sheet. Report the total of all amounts not entitled to priority listed on this Schedule E in the box labeled "Totals" on the last sheet of the completed schedule. Individual debtors with primarily consumer debts report this total also on the Statistical Summary of Certain Liabilities and Related Data.

■ Check this box if debtor has no creditors holding unsecured priority claims to report on this Schedule E.

**TYPES OF PRIORITY CLAIMS** (Check the appropriate box(es) below if claims in that category are listed on the attached sheets)

☐ **Domestic support obligations**

       Claims for domestic support that are owed to or recoverable by a spouse, former spouse, or child of the debtor, or the parent, legal guardian, or responsible relative of such a child, or a governmental unit to whom such a domestic support claim has been assigned to the extent provided in 11 U.S.C. § 507(a)(1).

☐ **Extensions of credit in an involuntary case**

       Claims arising in the ordinary course of the debtor's business or financial affairs after the commencement of the case but before the earlier of the appointment of a trustee or the order for relief. 11 U.S.C. § 507(a)(3).

☐ **Wages, salaries, and commissions**

       Wages, salaries, and commissions, including vacation, severance, and sick leave pay owing to employees and commissions owing to qualifying independent sales representatives up to $11,725* per person earned within 180 days immediately preceding the filing of the original petition, or the cessation of business, whichever occurred first, to the extent provided in 11 U.S.C. § 507(a)(4).

☐ **Contributions to employee benefit plans**

       Money owed to employee benefit plans for services rendered within 180 days immediately preceding the filing of the original petition, or the cessation of business, whichever occurred first, to the extent provided in 11 U.S.C. § 507(a)(5).

☐ **Certain farmers and fishermen**

       Claims of certain farmers and fishermen, up to $5,775* per farmer or fisherman, against the debtor, as provided in 11 U.S.C. § 507(a)(6).

☐ **Deposits by individuals**

       Claims of individuals up to $2,600* for deposits for the purchase, lease, or rental of property or services for personal, family, or household use, that were not delivered or provided. 11 U.S.C. § 507(a)(7).

☐ **Taxes and certain other debts owed to governmental units**

       Taxes, customs duties, and penalties owing to federal, state, and local governmental units as set forth in 11 U.S.C. § 507(a)(8).

☐ **Commitments to maintain the capital of an insured depository institution**

       Claims based on commitments to the FDIC, RTC, Director of the Office of Thrift Supervision, Comptroller of the Currency, or Board of Governors of the Federal Reserve System, or their predecessors or successors, to maintain the capital of an insured depository institution. 11 U.S.C. § 507 (a)(9).

☐ **Claims for death or personal injury while debtor was intoxicated**

       Claims for death or personal injury resulting from the operation of a motor vehicle or vessel while the debtor was intoxicated from using alcohol, a drug, or another substance. 11 U.S.C. § 507(a)(10).

_* Amount subject to adjustment on 4/01/13, and every three years thereafter with respect to cases commenced on or after the date of adjustment._

                                        **0**     continuation sheets attached

In re  **LifeLine Partners, Inc.** _____ ,  Case No. _____
                                    Debtor

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number, of all entities holding unsecured claims without priority against the debtor or the property of the debtor, as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). Do not include claims listed in Schedules D and E. If all creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community."

If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Report the total of all claims listed on this schedule in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report this total also on the Statistical Summary of Certain Liabilities and Related Data.

☐ Check this box if debtor has no creditors holding unsecured claims to report on this Schedule F.

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | Husband, Wife, Joint, or Community | | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|---|
| | | H | W | J C | | | | | |
| Account No. **xxxx4905** <br><br> **ADT Security Services, Inc.** <br> **PO Box 371967** <br> **Pittsburgh, PA 15250-7967** | | - | | | Account | | | | 128.36 |
| Account No. **xxxx-xxxx-xxxx-7338** <br><br> **Chase Card Services** <br> **PO Box 15153** <br> **Wilmington, DE 19886-5153** | | - | | | Credit card purchases | | | | 1,300.91 |
| Account No. **xxxx-xxxx-xxxx-4746** <br><br> **Chase Card Services** <br> **PO Box 15153** <br> **Wilmington, DE 19886-5153** | | - | | | Credit card purchases | | | | 11,963.61 |
| Account No. **xxxxxx & xx2949** <br><br> **ComDoc, Inc.** <br> **PO Box 1573** <br> **Akron, OH 44309-1573** | | - | | | Account | | | | 0.00 |

___3___ continuation sheets attached

| | Subtotal (Total of this page) | 13,392.88 |
|---|---|---|

In re   **LifeLine Partners, Inc.**           ,      Case No. _____

                                              Debtor

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
| | | H W | J C | | | | | |
|---|---|---|---|---|---|---|---|---|
| Account No. **xxxx8000** | | | | Guaranteed loan | | | | |
| First National Bank of Pennsylvania Commercial Hermitage 1 Federal Plaza West Youngstown, OH 44503 | X | - | | | X | | | **Unknown** |
| Account No. **xxxx4115** | | | | Guaranteed loan | | | | |
| First National Bank of Pennsylvania Commercial Hermitage 1 Federal Plaza West Youngstown, OH 44503 | X | - | | | X | | | **75,000.00** |
| Account No. **xxxx3540** | | | | Guaranteed loan | | | | |
| First National Bank of Pennsylvania Commercial Hermitage 1 Federal Plaza West Youngstown, OH 44503 | X | - | | | X | | | **166,500.00** |
| Account No. **xxxx4110** | | | | Guaranteed loan | | | | |
| First National Bank of Pennsylvania Commercial Hermitage 1 Federal Plaza West Youngstown, OH 44503 | X | - | | | X | | | **50,000.00** |
| Account No. **xxxx3555** | | | | Guaranteed loan | | | | |
| First National Bank of Pennsylvania Commercial Hermitage 1 Federal Plaza West Youngstown, OH 44503 | X | - | | | X | | | **52,975.33** |

Sheet no. __1__ of __3__ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)     **344,475.33**

In re **LifeLine Partners, Inc.** , Case No. _____

Debtor

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|
| | | H W | J C | | | | | |
| Account No. **xxxx0920** | | | | Guaranteed loan | | | | |
| **First National Bank of Pennsylvania Commercial Hermitage 1 Federal Plaza West Youngstown, OH 44503** | X | - | | | X | | | 146,153.23 |
| Account No. | | | | Loan | | | | |
| **George Havas 1111 Mansell Youngstown, OH 44505** | | - | | | | | | 14,441.30 |
| Account No. **xx7965** | | | | Accounting Services | | | | |
| **Hill Barth & King LLC City Centre One, Suite 514 100 Federal Plaza East Youngstown, OH 44503** | | - | | | | | | 4,800.00 |
| Account No. | | | | Loan | | | | |
| **Kathleen Burgdorf 5692 Lamplighter Girard, OH 44420** | | - | | | | | | 77,000.00 |
| Account No. | | | | Guaranteed loan | | | | |
| **Mahoning Valley Industrial Loan Fund 4319 Belmont Ave. Youngstown, OH 44505** | X | - | | | X | | | 75,000.00 |

Sheet no. __2__ of __3__ sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)

317,394.53

Software Copyright (c) 1996-2011 - CCH INCORPORATED - www.bestcase.com

Best Case Bankruptcy

In re __**LifeLine Partners, Inc.**_____,   Case No. _____

                                   Debtor

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No. **x6203** <br><br>**O'Neals Tarpaulin** <br>**549 W. Indianola Ave.** <br>**Youngstown, OH 44511** | | - | Account | | | | 1,438.11 |
| Account No. **xx-0804** <br><br>**Phillips-Sekanick Architects** <br>**142 E. Market St.** <br>**Warren, OH 44481** | | - | Architect services | | | X | 17,070.90 |
| Account No. **xx-xx-xxx-xxx8961** <br><br>**PNC Bank** <br>**PO Box 450** <br>**Youngstown, OH 44501** | X | - | Loan | | | | 72,071.71 |
| Account No. **xxxx-xxxx-xxxx-5766** <br><br>**Sam's Club** <br>**PO Box 960016** <br>**Orlando, FL 32896-0016** | | - | Credit card purchases | | | | 945.99 |
| Account No. **xx-xxx7524** <br><br>**The Emerald Health Network, Inc.** <br>**PO Box 73746-N** <br>**Cleveland, OH 44193-1049** | | - | Account | | | | 345.71 |

| | |
|---|---|
| Sheet no. _**3**_ of _**3**_ sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims | Subtotal (Total of this page) **91,872.42** |
| | Total (Report on Summary of Schedules) **767,135.16** |

In re    **LifeLine Partners, Inc.**                      ,     Case No. _____

                                           Debtor

# SCHEDULE G - EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Describe all executory contracts of any nature and all unexpired leases of real or personal property. Include any timeshare interests. State nature of debtor's interest in contract, i.e., "Purchaser", "Agent", etc. State whether debtor is the lessor or lessee of a lease. Provide the names and complete mailing addresses of all other parties to each lease or contract described. If a minor child is a party to one of the leases or contracts, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

☐ Check this box if debtor has no executory contracts or unexpired leases.

| Name and Mailing Address, Including Zip Code, of Other Parties to Lease or Contract | Description of Contract or Lease and Nature of Debtor's Interest. State whether lease is for nonresidential real property. State contract number of any government contract. |
|---|---|
| **CarlHo Properties**<br>**5692 Lamplighter**<br>**Girard, OH 44420** | **Debtor is the lesee of the premises located at 1825 Tibbetts-Wick Rd., Girard, OH 44420; (a copy of the lease agreement is attached as Exhibit "D")** |
| **Churchill Square Properties**<br>**49 Roche Way**<br>**Youngstown, OH 44512** | **Debtor is the lesee of the premises located at 4531 Belmont Ave., Suite E, Youngstown, OH 44505; (a copy of the lease agreement is attached as Exhibit "E")** |
| **Cocca Development, Ltd.**<br>**100 DeBartolo Place**<br>**Suite 400**<br>**Youngstown, OH 44512** | **Debtor is the lesee of the premises located at 250 DeBartolo Place, Suite 1535, Youngstown, OH 44512; (a copy of the lease agreement is attached as Exhibit "F")** |

**0**
____ continuation sheets attached to Schedule of Executory Contracts and Unexpired Leases

# LEASE AGREEMENT



**This Lease Agreement** (the "Lease") is made and entered into effective as of the 1st day of November, 2009 by and between **Carlho Properties, LLC,** an Ohio limited liability company (herein "Lessor") and **Lifeline Partners, Inc.,** an Ohio Corporation, (herein "Lessee").

## WITNESSETH:

In consideration of the following, the parties hereto do hereby agree as follows:

1.     **Demised Premises.**   Lessor, for and in consideration of the payment of the rent and the performance by the Lessee of the covenants and agreements hereinafter set forth, does hereby demise and lease unto Lessee, and Lessee does hereby lease from Lessor, the real estate and improvements situated in the Township of Liberty, County of Trumbull and State of Ohio as further described on Exhibit "A" attached hereto and known for street numbering purposes as being 1729 Tibbetts-Wick Road, Girard, Ohio 44420 (herein the "Demised Premises"). Said Demised Premises are subject to such liens, conditions, restrictions, easements, and encumbrances as are a matter of public record as of the date hereof.

2.     **Use.**  Lessee shall use and occupy the Demised Premises for offices, the operation of a rehabilitation facility and such other purposes related thereto. Lessee further covenants that it shall use the Demised Premises in a careful, safe, sanitary, and proper manner. Lessee shall, during the Term of this Lease, at Lessee's sole cost and expense, promptly comply with all laws, ordinances, orders, rules, regulations, and requirements of all federal, state, and municipal governmental agencies; and all orders, rules, and regulations of the cognizant board of fire underwriters, or any other body hereafter exercising similar functions, which may be applicable to the use, manner of use, or occupancy of the Demised Premises. Lessee further agrees to conduct its business in the Demised Premises pursuant to the following standards:

    A.     To keep the Demised Premises and immediately adjacent areas in a safe, neat, clean, and orderly condition.

B. To pay when due, all personal property taxes assessed against all fixtures, furnishings, and equipment; all taxes arising out of the operations of Lessee's business; and shall pay for all license fees, occupational taxes, and other governmental charges assessed by reason of Lessee's use or occupancy of the Demised Premises.

C. To handle and properly dispose of all trash, rubbish, refuse, garbage, and waste, in accordance with all governmental regulations.

D. To maintain sufficient heat in the Demised Premises to protect the Demised Premises and the contents thereof from damage by cold or frost.

3. **Term.** The Term of this Lease is for a period of five (5) Lease Years, commencing on November 1, 2009 (the "Commencement Date") and expiring midnight on the 31st day of October, 2014, unless sooner terminated in accordance with the provisions hereof (herein the "Expiration Date"). A **"Lease Year"** shall be a period of twelve (12) consecutive months commencing on the Commencement Date. The phrase **"Term of this Lease"** and the word **"Term"** shall mean the **"Initial Term"** plus any **"Renewal Term."**

4. **Option to Renew.** Provided that the Lessee shall not be in default under any of the provisions hereof, the Lessor hereby grants to Lessee the right, privilege, and option to renew this Lease for three (3) additional periods of five (5) years each, from the date of the expiration of the Initial Term, or first Renewal Term. Lessee shall exercise its Option to Renew by giving written notice thereof to Lessor at least ninety (90) days prior to the expiration of the then current Term.

5. **Rent.** Lessee covenants and agrees to pay Lessor as rent for the Demised Premises, during the First Lease Year, the sum of FORTY-EIGHT THOUSAND DOLLARS ($48,000.00) payable in equal monthly installments of FOUR THOUSAND DOLLARS ($4,000.00) [handwritten: $ 4207.50] each, payable in advance on or before the first day of each month commencing on November 1, 2009. At the option of the Lessor, the rent for each year thereafter shall be increased on the anniversary of the Commencement Date in accordance with the changes in the consumer price

2

index for all urban consumers as reported by the Bureau of Labor of Statistics, United States Department of Labor using 2009 as the base year. In no event shall the minimum rental be less than FOUR THOUSAND DOLLARS ($4,000.00) per month. In the event that the consumer price index ceases to incorporate a significant number of items, or if a substantial change is made in the method of establishing the consumer price index, then the consumer price index shall be adjusted to the figure that would have resulted had no change occurred in the manner of computing the consumer price index. In the event that the consumer price index, or a successor or substitute index is not available, a reliable governmental or other non-partisan publication, in valuing the information for use in determining the consumer price index shall be used in lieu of the consumer price index.

It is the purpose and intent of Lessor and Lessee that the annual rent shall be absolutely net to Lessor, so that this Lease shall yield, net to Lessor, the annual rent specified in this Paragraph 5 in each month during the Term.

6. **Utilities.** Lessee, at its expense, shall arrange for and pay all costs and charges for gas, electricity, refuse removal, water, sewer, septic, telephone service, and such other utilities consumed in the Demised Premises during the Term of this Lease, plus any taxes assessed thereon, as the same shall become due and payable. Lessee agrees to indemnity and hold harmless Lessor from and against any and all claims arising from the installation and maintenance of such utility services and from all costs and charges for utilities consumed in, on or by the Demised Premises.

7. **Personal Property Taxes.** Lessee agrees to pay, when due, all taxes assessed against Lessee's personal property located in the Demised Premises.

8. **Real Estate Tax Expense.** Lessee shall pay and discharge, before any fine, penalty, interest or cost may be added thereto for the nonpayment thereof all taxes and

3

assessments and other governmental charges of any kind or nature whatsoever, general and special, ordinary and extraordinary, foreseen and unforeseen, which at any time during the Term of this Lease may be assessed, levied, confirmed or imposed upon, or become a lien on the Demised Premises or any part thereof or any appurtenances thereto, and any use or occupancy of the Demised Premises.

9. **Maintenance of the Demised Premises.** Lessee covenants and agrees to keep and maintain, at its own cost and expense, in good order, condition and repair the Demised Premises and every part thereof, including but not limited to the roof, exterior portions of the Demised Premises, foundations, walks, driveways, parking areas, the plumbing, sewage, utility lines, and heating, ventilating and air conditioning systems, all doors and frames, hardware, assemblies, and operators therefore; windows, window frames, window assemblies, plate glass, and light fixtures; interior walls, floors and ceilings; building appliances and fixtures. Lessee, at its expense, shall make all repairs and replacements and perform all maintenance work that is necessary in order to keep the Demised Premises in good order and repair and in a safe and dry condition.

10. **General Liability Insurance.** Lessee, at all times during the Term of this Lease, shall procure and maintain in full force and effect, general public liability insurance, insuring the Lessee against any and all claims, actions, causes of action, costs and expenses for or on account of any injury to or the death of any person or persons, or for or on account of any loss of, damage to or destruction of any property, caused by or resulting from any act or omission occurring on or about the Demised Premises or growing out of Lessee's use and occupancy of said Demised Premises with minimum limits of TWO MILLION DOLLARS ($2,000,000.00) per occurrence, and not less than FIVE HUNDRED THOUSAND DOLLARS ($500,000.00) for property damage. Such insurance shall be written with a company authorized to engage in the business of general

4

liability insurance in the State of Ohio and shall name Lessor as an additional insured thereunder. Said insurance shall provide that it may not be canceled without the Lessor being given at least thirty (30) days prior written notice by the insurance company. Lessee shall provide Lessor with current certificates of insurance and shall also provide Lessor with paid receipts or other evidence satisfactory to Lessor indicating payment of the premium for said insurance policy or policies at least thirty (30) days prior to the expiration of the policy or policies of insurance. At the request of the Lessor, Lessee shall also have named as additional insureds and\or lender loss payees on all such policies of public liability insurance all financial institutions and lenders that may have an interest in the Demised Premises.

11. **Indemnification.** Lessee covenants and agrees that it will protect and save and keep the Lessor forever harmless and indemnified against and from any penalty or damage or charges imposed for any violation of any law or ordinance, whether occasioned by the neglect of Lessee or those holding under Lessee, and that Lessee will at all times protect, indemnify and save and keep harmless the Lessor against and from all claims, losses, costs, damages or expenses arising out of or from any accident or other occurrence on or about the Demised Premises causing injury to any person or property whomsoever or whatsoever, and will protect, indemnify and save and keep harmless the Lessor from and against all claims, losses, costs, damages or expenses arising out of or from any accident or other occurrence on or about the Demised Premises causing injury to any person or property whomsoever or whatsoever, and will protect, indemnify, and save and keep harmless the Lessor against and from any and all claims and against and from any and all losses, costs, damages or expenses arising out of any failure of Lessee in any respect to comply with and perform all the requirements and provisions of this Lease. Notwithstanding the foregoing, any damages or injuries caused by the negligence or

5

willful misconduct of the Lessor, its agents, employees, and representatives, shall be the responsibility of the Lessor.

12.      **Alterations.**  Lessee covenants not to permit any alterations of or upon any part of the Demised Premises except by and with the prior written consent of the Lessor, which consent shall not be unreasonably withheld.  Prior to the commencement of any work, Lessee shall procure building permits and any approvals which may be required by any governmental authority.  All approved alterations and improvements shall be made in accordance with all applicable laws and building codes, in a good and workmanlike manner, and in quality equal to or better than the original construction of the Demised Premises.  Lessee shall promptly pay all costs attributable to any alterations and improvements and shall indemnify Lessor against claims asserted as a result thereof, and against any costs or expenses which may be incurred as a result of building code violations attributable to such work.

13.      **Insurance.**

A.      **For the Demised Premises.**  Lessee, at Lessee's sole cost and expense, shall obtain and maintain during the Term of this Lease fire and extended coverage insurance, insuring against all reasonable perils and liabilities, for one hundred percent (100%) of the replacement value of the Demised Premises and all improvements thereon.  Such insurance shall be issued by an insurance company licensed to do business in the State of Ohio.

B.      **For the Personal Property in the Demised Premises.**  Lessee, at Lessee's sole cost and expense, shall obtain and maintain during the Term of this Lease fire and extended coverage insurance, insuring against all reasonable perils and liabilities, for one hundred percent (100%) of the replacement value of Lessee's fixtures, equipment, furnishings, merchandise and other contents in the Demised

6

Premises. Such insurance shall be issued by an insurance company licensed to do business in the State of Ohio.

14. **Fire and Casualty.** If the Demised Premises are damaged or destroyed by fire or other casualty, the following provisions shall determine the effect of such damage or destruction on this Lease:

A. If the Demised Premises are so damaged and/or destroyed that substantial alteration or reconstruction is required, or in the event that any mortgagee of Lessor shall require that the insurance proceeds payable as a result of such casualty be applied to the payment of the outstanding mortgage debt, or in the event of any material uninsured loss to the Demised Premises, then Lessor may, at its option, terminate this Lease by providing written notice to Lessee within ninety (90) days after the date of such damage or destruction.

B. If Lessor does not terminate this Lease, then Lessor shall commence and proceed, with reasonable diligence, to restore the Demised Premises with a building of the same general type of construction as presently exists. Unless this Lease is terminated by Lessor as provided above, Lessee shall redecorate and re-fixture the Demised Premises in a manner and to at least a condition equal to that existing prior to such damage or destruction, and the proceeds of all insurance carried by Lessee on its property, decorations, improvements and contents in the Demised Premises shall be held in trust by Lessee for such purposes. Such fire and casualty shall not relieve Lessee of its obligations to pay rent and other charges until this Lease is terminated.

15. **Waiver of Subrogation Rights.** Neither Lessor nor Lessee shall be liable to the other for any loss or damage to the Demised Premises resulting from any of the perils insured under any and all policies of fire and extended coverage insurance maintained by Lessor and Lessee, caused by their negligence or that of any of their agents, employees, licensees, invitees or contractors, but only to the extent of the recovery, if any, under any such policy or policies of insurance; provided, however, that this waiver shall be null and void to the extent that any such insurance shall be invalidated by reason of this waiver.

16. **Condemnation or Appropriation.** If, after the execution of this Lease or any extension or renewal hereof, any portion of the Demised Premises shall be appropriated or condemned under power of eminent domain or by any competent authority, such taking or appropriation shall not render this Lease void, except that if the amount taken makes the

7

Demised Premises untenantable, then this Lease shall become void from the time when possession thereof is taken as a result of such proceedings, and the Lessee shall pay all rents and perform and observe all other covenants hereof up to the time when possession is taken.

In the event that only a portion of the Demised Premises is taken as a result of such proceedings, then Lessee, with all reasonable dispatch, shall repair the remaining portion of the Demised Premises so as to restore the same to a complete architectural unit, and rent shall abate from the date of such taking, based upon the portion of the Demised Premises not useable by the Lessee.

In no event shall the Lessee be entitled to any part of the award of compensation or damages for such taking of the Demised Premises, but the Lessor shall receive the entire amount thereof free of any claim by the Lessee. Notwithstanding the foregoing, Lessee shall be entitled to submit a claim for loss or damage to its personal property located in the Demised Premises, and for all relocation expenses.

17. **Mechanic's Lien.** Any mechanic's lien filed against the Demised Premises for work claimed to have been done or for materials claimed to have been furnished to the Lessee shall be discharged by the Lessee within twenty (20) days after filing by bonding or as provided or required by law or in any other lawful manner, and upon final determination of the validity of such lien or claim, Lessee shall forthwith pay any final judgment rendered against it, and shall have such lien released without cost to Lessor.

18. **Access to Demised Premises.** Lessor, its agents and employees, shall have access to the Demised Premises upon prior notice to the Lessee for the purpose of inspecting and examining the same, without the same being construed as an eviction of Lessee in whole or in part.

19. **Assignment and Subleasing.** Lessee shall be without right to assign this Lease or the Demised Premises or sublet the same in whole or in part without the written consent of the Lessor first having been obtained, which consent shall not be unreasonably withheld, nor shall

8

there be an assignment of this Lease by operation of law. Any assignment or subletting even with the approval of the Lessor shall not release the Lessee from liability hereunder.

20. **Default by Lessee**. In the event that Lessee:

A. **Monetary Defaults.** Fails or refuses to pay any rent or sums payable as additional rent at the time and place specified herein and such default should continue for more than ten (10) days;

B. **Other Defaults.** Fails or refuses to keep and perform any of the other Lessee agreements in this Lease and such default shall continue for more than ten (10) days after written notice thereof is sent by Lessor to Lessee (provided, however, if the cause of such default involves matters reasonably requiring more than ten (10) days to correct or cure, Lessee will be deemed in compliance with the notice so long as Lessee has commenced appropriate corrective action within said ten (10) days and is diligently prosecuting completion thereof);

C. **Failure to Take Possession.** Fails or refuses to take possession of the Demised Premises at or prior to the Commencement Date;

D. **Insolvency.** Makes an assignment for the benefit of creditors or files a petition in any state court, in bankruptcy, reorganization, composition or makes an application in any such proceedings for the appointment of a trustee or receiver for all or any portion of its property; or

E. **Execution.** Has filed against it any execution, levy, attachment or other legal process of law,

then Lessor may re-enter and take possession of the Demised Premises, remove Lessee's personal property therefrom and store the same at Lessee's expense, and relet the Demised Premises or any part thereof on such terms, conditions and rentals as Lessor may deem proper, and apply the proceeds that may be obtained from said reletting, after deduction of all reletting costs, including without limitation, charges for said removal, storage, remodeling, repairs, leasing commissions and legal fees, to the rents and sums payable as rent hereunder which may remain unpaid; or, at Lessor's option, Lessor may terminate and cancel this Lease, in which event Lessee agrees to promptly pay to Lessor all of the aforesaid reletting costs and rent and other sums remaining unpaid on the date of such termination. If this Lease is terminated by

9

Lessor or if Lessor re-enters the Demised Premises pursuant to this Section 20, Lessee shall, nevertheless, remain liable for any rent and other sums which, but for such termination or re-entry, would have become due during the remainder of the Term, and all reasonable costs, fees, and expenses incurred by Lessor in pursuit of the collection of the aforementioned and Lessor is hereby empowered by Lessee to institute a proceeding against Lessee for the entire amount of unpaid rent and other sums that are due and payable for and during the balance of the Term. All rights and remedies of Lessor specified herein are cumulative and none shall exclude any other rights or remedies allowed by law or equity.

21. **Waiver of Lessee's Default.** No waiver of any covenant or condition or of the breach of any covenant or condition of this Lease shall be taken to constitute a waiver of any subsequent breach of such covenant or condition nor to justify or authorize the non-observance on any other occasion of the same or of any other covenant or condition hereof, nor shall the acceptance of rent by Lessor at any time when Lessee is in default under any covenant or condition hereof, be construed as a waiver of such default or of Lessor's right to terminate this Lease on account of such default, nor shall any waiver or indulgence granted by Lessor to Lessee be taken as an estoppel against Lessor.

22. **Subordination and Compliance with Lender Requirements.** This Lease is and shall be subject and subordinate to any mortgage or other lien created by Lessor, whether presently existing or hereinafter arising upon the Demised Premises and to any renewals, refinancing and extension thereof. Lessor is hereby irrevocably vested with full power and authority to subordinate this Lease to any mortgage, or any other lien now existing or hereinafter placed upon the Demised Premises, and Lessee agrees upon demand to execute such further instruments subordinating this Lease or attorning to the holder of any such liens as Lessor may request. If Lessee should fail to execute any subordination or other agreement required

10

hereunder as requested, then Lessee hereby irrevocably constitutes Lessor as its Attorney-in-Fact to execute such instrument in Lessee's name, place and stead, it being agreed that such power is one coupled with an interest.

Lessee agrees that it will from time to time upon request by Lessor, execute and deliver to such persons as Lessor shall request, a statement in recordable form certifying that this Lease is unmodified and in full force and effect (or if there have been modifications, that the same is in full force and effect as so modified), stating the dates to which rent and other charges payable under this Lease have been paid, stating that the Lessor is not in default hereunder (or if Lessee alleges a default, stating the nature of such alleged default) and further stating such other matters as Lessor or his mortgagee shall reasonably require, including biographical and financial information of the Lessee.

23. **Exoneration of Individuals.** The Lessor or any successor in interest that may be an individual, joint venture, firm, or partnership, shall not be subject to personal liability on such individual nor on the members of such joint venture, firm, or partnership in respect to any of the covenants or conditions of this Lease. Lessee shall look solely to the equity of the Lessor in the Demised Premises, and the rents, issues, and profits derived therefrom for the satisfaction of the remedies of the Lessee in the event of a breach by the Lessor.

24. **Quiet Enjoyment.** Lessor covenants and warrants to Lessee that during the term of this Lease, if Lessee is not in default hereunder, Lessee's quiet and peaceable enjoyment of the Demised Premises shall not be disturbed nor interfered with.

25. **Holding Over.** If the Lessee shall remain in possession of all or any part of the Demised Premises after the expiration of the Term of this Lease, then Lessee shall be deemed a tenant of the Demised Premises from month-to-month, upon the same terms and conditions as

11

contained herein, except for the rent, which shall be in an amount equal to one hundred twenty-five percent (125%) of the rent being paid immediately prior to the expiration of the Term.

26.     **Invalidity of a Particular Provision.**  If any term or provision of this Lease shall to any extent be deemed invalid or unenforceable, the remainder of this Lease shall not be affected thereby, and each term and provision of this Lease shall be valid and shall be enforced to the fullest extent provided by law.

27.     **Governing Law.**  All matters pertaining to this Lease shall be governed by the laws of the State of Ohio.

28.     **Surrender of Demised Premises.**  Lessee covenants and agrees to deliver up and surrender to the Lessor the possession of the Demised Premises upon the expiration of this Lease, or its earlier termination as herein provided, in as good condition and repair as the same shall be at the Commencement Date, or may have been put by the Lessor during the continuance thereof, ordinary wear and tear excepted.

29.     **Waiver of Trial by Jury.**  LESSOR AND LESSEE HEREBY WAIVE TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTER-CLAIM WHICH EITHER OF THE PARTIES HERETO HAS AGAINST THE OTHER ON OR IN RESPECT TO ANY MATTER WHATSOEVER ARISING OUT OF OR IN ANY WAY CONNECTED WITH THIS LEASE, THE RELATIONSHIP OF LESSOR AND LESSEE HEREUNDER, LESSEE'S USE AND OCCUPANCY OF THE DEMISED PREMISES AND/OR ANY CLAIM OF INJURY OR DAMAGE.

11-40169-kw    Doc 1    FILED 01/21/11    ENTERED 01/21/11 16:14:54    Page 74 of 142

**IN WITNESS WHEREOF**, the parties have hereunto executed and delivered this Lease on the day and year above written.

LESSOR:

Carlho Properties, LLC
an Ohio limited liability company

By: _Kathy Burgdorf_ _____
Kathy Burgdorf, Manager

LESSEE:

Lifeline Partners, Inc.
an Ohio Corporation

By: _Kathy Burgdorf_ _____
Kathy Burgdorf, President

STATE OF OHIO    )
                   ) SS:
COUNTY OF MAHONING )

Before me, a Notary Public in and for said County and State, personally appeared the above-named **Kathy Burgdorf,** who acknowledged that she did sign the foregoing instrument as Manager of **Carlho Properties, LLC,** an Ohio limited liability company, and who further acknowledged that she is duly authorized to execute the foregoing instrument on behalf of said limited liability company, and that the same is her free act and deed.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal at Youngstown, Ohio this ____ day of April, 2010.

_____
NOTARY PUBLIC

13

STATE OF OHIO         )
                               ) SS:
COUNTY OF MAHONING )

       Before me, a Notary Public in and for said County and State, personally appeared the above-named **Kathy Burgdorf,** who acknowledged that she did sign the foregoing instrument in her capacity as President of **Lifeline Partners, Inc.,** an Ohio Corporation, and who further acknowledged that she is duly authorized to execute the foregoing instrument on behalf of said corporation, and that the same is her free act and deed.

       IN WITNESS WHEREOF, I have hereunto set my hand and official seal at Youngstown, Ohio this _____ day of April, 2010.


                                 _____
                                 NOTARY PUBLIC

*This Instrument Prepared By:*

       *Stuart A. Strasfeld, Esq.*
       *ROTH, BLAIR, ROBERTS, STRASFELD & LODGE*
       *100 Federal Plaza East, Suite 600*
       *Youngstown, OH 44503-1893*

# LEASE

**THIS LEASE AGREEMENT** is made and entered into the 3rd day of May 201 between the parties named in Section 1, which parties, in consideration of their mutual agreements herein set forth do hereby agree as herein specified.

1. **PARTIES.** The parties under this Lease are:

   **LANDLORD**: Churchill Square Properties, an Ohio General Partnership
   Herein called "Landlord"
   49 Roche Way
   Youngstown, OH 44512

   **TENANT**: Lifeline Partners, Inc.
   Herein called "Tenant"
   4531 Belmont Avenue, Suite #E
   Youngstown, OH 44505

2. **BASIC LEASE PROVISIONS.** The following provisions are basic to this Lease and are sometimes herein referred to:

   A. Shopping Center: Currently known as Churchill Square herein called "Shopping Center" located in the Township of Liberty, County of Trumbull, and State of Ohio.

   B. Premises: Storeroom #E outlined in red and/or crosshatched on attached and incorporated Exhibit A which storeroom is herein called "Premises" and contains approximately 1,000 square feet of floor area.

   C. Possession Date: June 1, 2010.

   D. Lease Term: Two (2) lease years; commencing July 1, 2010 and ending June 30, 2012.

   E. Minimum Annual Rent: $7,800.00 per Lease year, payable in advance monthly installments of $650.00 each on the first day of each month.

   F. Tenant's Business Operation: Sleep Lab.

   G. Security Deposit: $650.00.

   H. Common Area Maintenance Expenses: Intentionally Omitted.

   I. Real Estate Tax Expenses: Intentionally Omitted.

   J. Insurance Premium Expenses: Intentionally Omitted.

   K. Proportionate Share: Wherever Tenant's "proportionate share" is referred to it means the proportion that the Premises Floor area specified in sub-Section 2B shall bear to the gross leaseable square feet in the entire Shopping Center.

L. **Fractional Months/Years:** Rents, billings, expense reimbursements and any other charges under this Lease shall be, when applicable, appropriately prorated for the fractional year or month, as the case may be, in which the Term commences and ends.

3. **PREMISES.** Landlord hereby leases to Tenant and Tenant hereby rents from Landlord the Premises specified in sub-Section 2B. Said Premises extend to the exterior faces of all walls, or to the center line of those walls separating the Premises from other leased premises in the Shopping Center. Landlord reserves the right therein to install, maintain, use, repair and replace pipes, ducts, conduits and wires in locations which will not materially interfere with Tenant's use thereof. Tenant acknowledges and agrees that it has examined the Premises in its "**as is**" condition and that no representations as to the condition or repair of said Premises were made by Landlord or anyone on Landlord's behalf at any time prior to the execution of this Lease.

4. **USE OF COMMON AREA.** Landlord grants to Tenant, its business invitees and customers, together with and subject to the same rights granted from time to time to other Tenants and occupants of the Shopping Center and others, the right, as co-Tenant, to use the hereinafter defined Common Areas of the Shopping Center.

5. **POSSESSION.** Tenant shall be entitled to possession of the Premises on the date specified in sub-Section 2C.

6. **TERM.** The term of this Lease (herein called "Term") is for the period of time specified in sub-Section 2D, commencing on the date shown in sub-Section 2D or the date Tenant opens for business, whichever is sooner, and expiring on the date specified in sub-Section 2D. Any reference herein to Term expiration shall mean said date or the date of any earlier termination date of the Term, as the case may be. Tenant agrees to open for business in the Premises on or before the Term commencement date. If the Term commencement date is other that the first day of a calendar month, the first Lease year shall be the period from the Term commencement date to the end of the month in which the Term commencement date falls, plus the following 12 calendar months. Each Lease year thereafter shall be a successive period of 12 calendar months.

7. **MINIMUM ANNUAL RENT.** Tenant agrees to pay to Landlord the minimum rent per Lease year specified in sub-Section 2E payable in the advance monthly installments stated therein, starting on the Term commencement date specified in Section 6 and continuing on the 1st day of each calendar month thereafter during the Term.

8. **TENANT'S USE & BUSINESS NAME.** Tenant agrees to use the Premises solely for the operation of the business specified in sub-Section 2F under the name specified therein. Tenant shall not sell merchandise or provide services that are not normally and customarily sold or provided by stores in Tenant's business category.

9. **CONDUCT OF BUSINESS.** Tenant agrees to conduct its business in the Premises pursuant to the following standards:

A. **Continuous Operation:** To keep the Premises continuously open for business each business day and not to abandon or vacate the Premises. Tenant shall operate its business pursuant to the highest reasonable standards of its business category maintaining a substantial stock of appropriate merchandise on display with sufficient personnel to service its trade.

2

B. **Illumination**: To keep the Premises adequately illuminated and the exterior parapet and under-canopy signs illuminated from dusk to at least 10:00 p.m. of each day the Shopping Center is open for business.

C. **Shopping Center Rules and Regulations**: To abide by and observe all rules and regulations established from time to time by Landlord with respect to the operation of the Shopping Center including, without limitation, the Common Areas.

D. **Governmental Authorities and Insurance Underwriters**: To abide by and observe all rules, laws, ordinances, orders and regulations of all governmental authorities and insurance underwriters with respect to the occupation and operation of the Premises and the Common Areas.

E. **Trash, Garbage and Refuse**: To keep all trash, garbage and refuse inside the Premises in the kind of containers specified by Landlord, and to place the same outside of the Premises prepared for collection in the manner and at the times and places specified by Landlord. In the event Landlord operates or designates a collection service, Tenant shall pay its proportionate share of the cost of said service to Landlord or to whatever service provider Landlord may designate and Landlord agrees that said collection charges shall be competitive. Tenant agrees not to burn or permit any burning of said trash, garbage and refuse on the Premises or any part of the Shopping Center.

F. **Service Trucks**: To use its best efforts to cause all trucks serving the Premises to load and unload at hours other than the regular shopping hours of the Shopping Center and not to permit such trucks to service through the front entrance of the Premises except when no other entrance is available.

G. **Employee parking**: To cause its employees, officers and agents to park only in places, if any, designated by Landlord for employee parking. Landlord reserves the right to have towed any vehicle parked in violation of this clause at Tenant's expense.

H. **No Common Area Advertising**: Not to display any merchandise, solicit business or distribute advertising material beyond the Premises and not to use any part of the Common Areas for purposes other than for their intended use or obstruct any part thereof.

I. **No Exterior Advertising**: Not to display any banners, pennants, search lights, window signs, balloons, or similar temporary advertising media on the exterior of the Premises or in the Common Areas.

J. **No Waste**: Not to commit waste in the Premises or Common Areas and to keep the interior of the Premises and exterior adjacent sidewalks in a safe, neat, clean and orderly condition.

K. **Prohibited Uses**: In addition to other prohibited uses specified in this Lease, Tenant shall not use the Premises or permit the same to be used in any manner in violation of law; that would constitute a nuisance; for lodging purposes; that may injure the reputation of the Shopping Center or annoy, inconvenience or damage its patrons or other Tenants; that would constitute an extra-hazardous use or violate any insurance policy of Tenant, Landlord or any other Tenant in the Shopping Center or increase the cost thereof above its normal cost.

3

L. **Landlord's Contracts**: Not to take any action that would knowingly violate Landlord's contracts, if any, affecting the Shopping Center or cause any work stoppage, picketing or cause any manner of interference with Landlord or other Tenants, occupants, customers or any person lawfully in and upon the Shopping Center.

M. **Community Standards**: Tenant acknowledges that it is Landlord's intent to operate the Shopping Center in a manner consistent with the highest standards of decency and morals prevailing in the community which it serves. Toward that end, Tenant agrees that it will not sell, distribute, display or offer for sale any item which, in Landlord's good faith judgment, is inconsistent with the quality of operation of the Shopping Center or may tend to injure or detract from the moral character or image of the Shopping Center within such community. Without limiting the generality of the foregoing, Tenant will not sell, distribute, display or offer for sale any roach clip, water pipe, bong, toke, coke spoon, cigarette papers, hypodermic of syringe or other paraphernalia commonly used in the use of ingestion of illicit drugs, or any pornographic, lewd, suggestive, or "adult" newspapers, books, magazines, pictures, representations or merchandises of any kind.

10. **UTILITIES**. Commencing on the Term commencement date or the date Landlord delivers possession of the Premises to Tenant, whichever is sooner, and continuing thereafter throughout the Term, Tenant agrees, at Tenant's expense, to have the utility meters installed and registered in Tenant's name and to pay for all utility services rendered or furnished to the Premises including, without limitation, any water, gas, electricity, sewer, fire protection, and/or other utilities, together with all taxes or other charges levied on such utilities based on utility consumption and otherwise. If any such utilities are not separately metered or assessed and are used in common with other Tenants, Tenant will pay to Landlord an apportionment of such charges for utilities used in common based on the gross area leased to each Tenant using such common facilities. If Landlord shall supply or have supplied any such services, Tenant will purchase same from Landlord at charges not in excess of the charges for such services that may be established by the appropriate governmental regulating body. Landlord shall bill Tenant for any such charges for services supplied by or re-billed by Landlord including a 10% service charge. In no event shall Landlord be liable for the quality, quantity, failure or interruption of such services to the Premises.

11. **ALTERATIONS**. Tenant shall have the right to make non-structural interior alterations or improvements to the Premises deemed appropriate in connection with the requirements of its business, without the necessity of obtaining Landlord's consent, provided, however, that any such alterations or improvements shall not reduce or impair the value of the Premises. Tenant shall not make any structural or exterior alterations of any nature.

12. **TENANT'S WORK**. All Tenant work, including without limitation, alterations, installations and other improvements, undertaken in the Premises by Tenant shall consist of new material installed in a workmanlike manner in compliance with all applicable laws and regulations and shall be performed only by contractors or subcontractors who have complied with the Tenant insurance requirements specified elsewhere in this Lease. All such work including, without limitation, floor covering, lighting, ventilating-heating-air conditioning equipment, wall coverings and store fronts shall, upon termination of this Lease automatically attach to the freehold and become and remain Landlord's property; provided, however, if prior to said Lease termination, or within 60 days thereafter, Landlord notifies Tenant to remove any such work as

4

may be designated in said notice, Tenant shall remove the same and repair any damage to the Premises or Shopping Center occasioned by such removal within 15 days of such notice and in default thereof, Landlord may effect such removal and repair and Tenant shall reimburse Landlord Landlord's costs for same upon Landlord billing Tenant for same.

13. **FIXTURES**. All fixtures, including without limitation, any equipment installed by Tenant in the Premises, shall be new or completely reconditioned and shall, along with Tenant's merchandise remain Tenant's personal property. Tenant may, at the expiration of the Term, remove its said personal property that is removable without injury to or defacement of the Premises provided all rents and other charges are paid in full and Tenant is not otherwise in default under this Lease and further provided that any damage to the Premises or the Shopping Center resulting from such removal shall be simultaneously repaired at Tenant's expense.

14. **SIGNS**. Subject to Landlord's consent as to size, color, type, location and specifications, Tenant shall install and illuminate its standard sign on the upper front parapet of the Premises. If there is an exterior canopy adjacent to the front of the Premises, Tenant agrees to provide and install there under a sign designed, fabricated and installed pursuant to Landlord's specifications. Tenant agrees that it will not erect any other exterior signs or other items without first obtaining Landlord's written approval. Tenant agrees to install all of its aforesaid signs in conformance with applicable government regulations and to keep the same in good state of repair and save Landlord harmless from any damages stemming from the installation, maintenance, existence or removal of the same and shall repair any damage which may be caused by said installation, existence, maintenance or removal. Upon vacating the Premises, Tenant agrees to remove all signs and simultaneously repair any damage to the Premises or Shopping Center caused by such removal.

15. **MECHANICS' LIENS**. The aforesaid Tenant work, fixtures and signs shall be at Tenant's sole risk and expense and Tenant shall promptly pay all laborers, contractors, subcontractors and material men performing the same and furnishing material therefore. Tenant agrees to indemnify and save harmless Landlord from all expenses, liens, claims or damages to either persons or property, including, without limitation, the Premises, stemming in any manner from such work, fixturing and signage. If any lien be filed by virtue of Tenant's work, fixturing and signage, Tenant shall cause the same to be discharged of record by payment, bond, order of court, or otherwise as required by law within 10 days after notice by Landlord. Landlord may, at Landlord's option, cause such discharge and Tenant shall reimburse Landlord all its costs and expenses expended thereof upon Landlord billing Tenant for same. Nothing in this Lease shall be construed as in any way constituting a consent or request by Landlord, expressed or implied, by inference or otherwise, to any contractor, subcontractor, laborer, or material man for the performance of any labor or the furnishing of any materials for any specific or general improvement, alteration, or repair of or to the Premises or to any buildings or improvement thereon, or to any part thereof.

16. **TENANT'S PROPERTY IN THE PREMISES**. Tenant agrees that all of its personal property in the Premises shall be at Tenant's sole risk and/or those claiming under Tenant. Landlord shall not be responsible to Tenant or those claiming under Tenant for any loss that may be occasioned by the acts or omissions of persons occupying any space adjacent to or adjoining Tenant's Premises or liable to Tenant or those claiming under Tenant for any loss resulting to Tenant or any of Tenant's property caused in any manner whatsoever.

5

17. **MAINTENANCE OF PREMISES BY LANDLORD**. Landlord agrees to keep and maintain in good order and repair, at its own cost, the roof and other exterior portions of the Premises and to make any necessary structural repairs of the Premises. Landlord shall not be responsible for wear and tear or damage caused by any act or negligence of Tenant, its employees, agents, invitees, licensees or contractors.

18. **MAINTENANCE OF PREMISES BY TENANT**. Tenant agrees, at Tenant's expense, to keep and maintain in good order and repair, including necessary replacements, all portions of the Premises not specifically designated above as Landlord's obligation, including without limitation, the exterior and interior portions of all doors, door hardware and operations, windows, window hardware, plate glass, show cases surrounding the Premises, all plumbing and sewage facilities within the Premises, fixtures, heating, ventilating, air conditioning and electrical equipment and interior walls, floors, ceiling and all interior building appliances and similar equipment. Tenant agrees that during the Term Tenant shall keep in full force, at Tenant's expense, a standard maintenance contract on said heating; ventilating and air conditioning equipment with a reputable contractor and upon notice shall promptly deliver a copy of said contract to Landlord.

19. **COMPLIANCE WITH LAW**. Tenant shall during the Term, at its sole cost and expense, make any changes or alterations to the Premises that may be necessary to promptly comply with all present and future laws, ordinances, orders, rules, regulations and requirements of all governmental agencies, and all orders, rules and regulations of the appropriate board of fire underwriters or any other body hereafter exercising similar functions, which may be applicable to the Premises or to the use, occupation, thereof, whether or not the same shall necessitate structural repairs or alterations or interfere with the use or occupancy of the Premises. Tenant shall likewise observe and comply with the requirements of all policies of liability, fire and other insurance at any time in force with respect to the Premises. The provisions and conditions elsewhere in this Lease applicable to work performed by Tenant shall similarly apply to work required to be done under this Section.

20. **COMMON AREAS**. The Common Areas shall be defined as including, without limitation, any of the following that may be part of the Shopping Center: parking areas, driveways, service courts, access drives and roads, sidewalks, signs, open and enclosed courts and malls, landscaped areas, fire corridors, meeting areas, public restrooms and similar improvements. Landlord may from time to time open, close, climatize or de-climatize any mall areas, change the layout, size, location, elevation, nature and/or use of any Common Areas, and may construct or erect buildings or other structures therein or thereon and move or remove the same as Landlord deems appropriate. Landlord agrees not to substantially reduce the number of parking spaces below the applicable requirements of the governmental authorities having jurisdiction of the Shopping Center or to unreasonably interfere with the entrance to the Premises.

21. **COMMON AREA MAINTENANCE**. Landlord shall, except for any Lease provision to the contrary, operate, maintain, manage, equip, light, clean, repair and, at Landlord's option, provide security personnel and/or equipment for said Common Areas and heat and cool any mall or other areas now or hereafter enclosed as Landlord shall from time to time determine. Landlord may perform any other maintenance, repairs, replacements or improvements that Landlord may hereafter desire or deem necessary and appropriate. All of the foregoing items are herein collectively called "Common Area Maintenance".

6

11-40169-kw    Doc 1    FILED 01/21/11    ENTERED 01/21/11 16:14:54    Page 82 of 142

22. **COMMON AREA MAINTENANCE EXPENSES.** Intentionally Omitted.

23. **COMMON AREA MAINTENANCE EXPENSE RECORDS.** Intentionally Omitted.

24. **TENANT'S TAXES.** From the date Landlord delivers possession of the Premises to Tenant and continuing thereafter throughout the Term, Tenant agrees to pay, when due, all taxes assessed against Tenant's personal property and business. Tenant shall pay for all license fees, occupational taxes and other governmental charges assessed by reason of Tenant's business and use or occupancy of the Premises, including without limitation, any rental or occupancy taxes and any other taxes arising out of the operation of Tenant's business or Tenant's use or occupancy of the Premises.

25. **SHOPPING CENTER REAL ESTATE TAX EXPENSES.** Intentionally Omitted.

26. **SUBSTITUTE OR ADDITIONAL TAXES.** Should any governmental taxing authority acting under any present or future law, ordinance or regulation, levy, assess or impose a tax, excise and/or assessment, other than an income or franchise tax, upon or against the rentals payable by Tenant to Landlord, either by way of substitution for or in addition to any existing tax on land and buildings or otherwise, or any other substitute tax, the proceeds of which are used to fund the same governmental functions as were funded by ad valorem taxes, Tenant shall be responsible for and shall pay such tax, excise and/or assessment, or shall reimburse Landlord for the amount thereof, as the case may be, as additional rent, 30 days before the date that any penalty or interest would be added thereto for nonpayment or, at the option of Landlord, the same shall be payable in the manner provided for herein. Substitute taxes as referred to in this Section shall include, without limitation, any surtax on parking spaces.

27. **TENANT'S INSURANCE.** Commencing on the Term commencement date or the date Landlord delivers possession of the Premises to Tenant and continuing thereafter throughout the Term, Tenant agrees to provide comprehensive general, motor vehicle and products liability insurance relating to the Premises insuring against liability for injury or death of any person or persons or damages to property with policy limits of not less than $1,000,000.00 combined single limit for injury to or death of any number of persons or for damages to property or others arising out of any one occurrence and adequate fire, extended coverage and all risk insurance on Tenant's personal property. Tenant agrees to pay upon billing to Tenant by Landlord any special hazard premium charges, including rent insurance related thereto stemming from Tenant's extra-hazardous use of the Premises as determined by the insurance company, its authorized agent or the Fire Insurance Rating Organization having jurisdiction over the Shopping Center and any such determination shall be deemed to be conclusive.

28. **INSURANCE POLICIES.** Tenant agrees to deliver to Landlord before Tenant undertakes any work in the Premises and thereafter at least 15 days prior to the expiration of such policy, either a duplicate original or a certified true copy of all policies procured by Tenant in compliance with its obligations hereunder. All of the aforesaid insurance shall be written by responsible insurance companies approved by Landlord authorized to do business in the state where the Premises are located and shall name Landlord and Tenant as insured as their interests may appear and shall contain endorsements that such insurance may not be canceled or amended with respect to Landlord (or its designee/s), except upon 15 days notice to Landlord (and such designee/s) by the insurance company.

7

29. **SHOPPING CENTER INSURANCE**.  Landlord may maintain comprehensive general liability insurance relating to the Shopping Center and its Common Areas on an occurrence basis in the minimum amount of $1,000,000 and fire, extended coverage and all risk insurance to the extent of the then replacement value of the Shopping Center buildings and other improvements with the option of taking advantage of co-insurance to the extent of not less than 80% thereof and such other or additional insurance that Landlord or its mortgagees may deem appropriate.

30. **SHOPPING CENTER INSURANCE EXPENSES**. Intentionally Omitted.

31. **WAIVER OF SUBROGATION**.  Landlord and Tenant each waive any right of recovery which either may have against the other, whether caused by negligence, international misconduct or otherwise, for any damage to their property or business caused by perils covered by fire and extended coverage, building contents and business interruption insurance, for which either may be reimbursed as a result of insurance coverage affecting any loss suffered by it; provided, however, that the foregoing shall apply only to the extent of any recovery made by either party under any insurance policy issued to it, and further provided that the foregoing shall not invalidate any insurance policy of either party, it being stipulated that said waiver shall not apply in any case in which the application thereof would result in the invalidation of any such insurance policy.

32. **INDEMNITY**.  Tenant agrees to indemnify and save harmless Landlord from any loss in connection with any injury, death or damage caused to any person or property arising out of Tenant's use or occupancy of the Premises or any other part of the Shopping Center.  The fact that insurances are therein required shall not diminish Landlord's claim against Tenant for total indemnify against any such loss.

33. **FIRE OR OTHER CASUALTY**.  Should the Premises or any part thereof be damaged or destroyed by fire or other casualty covered by insurance policies applicable to the Premises, Landlord shall, except as otherwise provided herein, and to the extent it recovers proceeds from such insurance, restore the same with reasonable diligence.  Landlord's agreement to restore is subject to the rights of any mortgagee who may have a prior right to such insurance proceeds and shall be limited to the condition originally provided by Landlord at the time of Term commencement.  Landlord shall not be obligated to restore any property belonging to Tenant or any improvements to the Premises furnished by Tenant.  Unless this Lease is terminated by Landlord as hereinafter provided, Tenant shall repair, re-decorate, re-fixture the Premises and restock the contents thereof in a manner and to at least a condition equal to that existing prior to such damage or destruction, and the proceeds of all insurance carried by Tenant on its property in the Premises shall be held in trust by Tenant for such purposes.  Notwithstanding anything to the contrary contained in this Section or elsewhere in this Lease, Landlord, at its option, may terminate this Lease on 30 days notice to Tenant, given within 120 days after the occurrence of any damage or destruction if:  given within 120 days after the occurrence of any damage or destruction if:  (a)  the Premises be damaged or destroyed as a result of a risk which is not covered by Landlord's insurance;  (b)  the Premises be damaged and the cost to repair the same shall exceed 25% of the then replacement cost of the Premises;  (c)  the Premises be damaged during the last 5 years of the Term;  (d)  the building of which the Premises is a part shall be damaged to the extent of 25% or more of the then replacement cost thereof (whether the Premises be damaged or not);  (e)  if any or all of the Shopping Center Buildings or Common Areas are damaged (whether or not the Premises are damaged) to such extent that, in the sole judgment of Landlord, the Shopping Center cannot be operated as an integral unit.  None of the

8

rentals payable by neither Tenant, nor any of Tenant's other obligations under any Lease provision shall be affected by any damage to or destruction of the Premises by any cause whatsoever.

34. **CONDEMNATION**. Should the Shopping Center or the Premises or any part of either be taken by eminent domain or condemnation or by agreement between Landlord and those authorized to exercise said rights (all such procedure being herein collectively called "condemnation") and the part remaining, if any, after such condemnation is, in Landlord's opinion:

A. Unsuitable Remainder: Not reasonably suitable for the business specified in sub-Section 2-F, this Lease shall terminate upon possession of the Premises by the condemnation authority and rent and any other monies shall be accounted for between the Parties as to the date of said possession:

B. Suitable Remainder: Reasonably suitable for said business, then Landlord, at its own expense shall, upon receipt of the condemnation award, restore the remaining portion of the Premises and the minimum annual rent and overage base shall be proportionately adjusted if the area of the Premises is changed. Said restoration shall be: (1) subject to the rights of any mortgagees who may have a prior right to such award; (2) limited to the condition originally provided by Landlord at the time of Term commencement; and (3) limited in cost to the net proceeds of the condemnation award received and retained by Landlord for the Premises; or

C. Remaining Lease Years: Reasonably suited for said business but such event occurs during the last remaining Lease year of the Term, Landlord may at Landlord's sole option elect to follow the provisions of either sub-Section A or B above.

All compensation paid for any condemnation shall belong to and be the property of Landlord without participation by Tenant or any deduction there from for any present or future estate of Tenant. Tenant is not prohibited from claiming such award as may be allowed for loss of its business or personal property, provided that such claim does not diminish or adversely affect Landlord's award or that of any mortgagees or underlying ground Lessor.

35. **SUBORDINATION**. Tenant agrees, upon Landlord's request, to subordinate this Lease, in written form directed by Landlord and any mortgagee, to the lien of any mortgage, mortgages, replacements or extensions thereof, or any other method of financing or refinancing now or hereafter in force against the land and/or buildings of which the Premises are a part or against any buildings hereafter placed upon said land, and to all advances made or hereafter to be made upon the security thereof.

36. **ESTOPPEL CERTIFICATES**. Tenant agrees, upon Landlord's request, to execute, acknowledge and deliver to Landlord a written statement in form directed by Landlord, certifying that this Lease is unmodified and in full force and effect (or, if there have been modifications, that this Lease is in full force and effect as modified and stating the modification), the dates to which all rents hereunder have been paid in advance, if any, and that there are then existing no set-offs or defenses against the enforcement of the agreements of this Lease on the part of Tenant to be performed (or, if any specifying same) it being intended that any such statement delivered as aforesaid may be relied upon by any prospective purchaser, mortgagee or financier of the Shopping Center or any part thereof. If Tenant does not, within 10 days of Landlord's request as

9

aforesaid, execute and deliver such instruments, then Tenant hereby irrevocably appoints Landlord as attorney-in-fact for Tenant with full power and authority to execute and deliver the same in the name of Tenant.

37. **NOTICE TO MORTGAGEES**. If the mortgagee of any mortgage covering the Premises shall have given prior notice to Tenant that it is the mortgagee of said mortgage and such notice includes the address to which notices to such mortgagees are to be sent, then Tenant agrees to give to the said mortgagee notice simultaneously with any notice given to Landlord to correct any default of Landlord and agrees that said mortgagee shall have the right, within 60 days after receipt of said notice, to commence correction of such default and diligently prosecute completion thereof before Tenant may take any action under this Lease by reason of such default.

38. **FINANCIAL STATEMENT**. Should Landlord or any such mortgagee request a copy of Tenant's current financial statement, Tenant agrees to furnish a certified copy of same to Landlord within fifteen (15) days of such request.

39. **LANDLORD'S LIABILITY**. If Landlord, or any successor in interest, shall be a non-incorporated entity, there shall be no personal liability on any individual or member of such non-incorporated entity in respect to any of the agreements of this Lease. Tenant shall look solely to the equity of Landlord in the Shopping Center for the satisfaction of the remedies of Tenant in the event of a breach by Landlord. Tenant shall, in the event of the same, transfer or assignment of Landlord's interest in the Shopping Center, or in the event of any proceedings brought for the foreclosure of any mortgage covering the Shopping Center, at torn to recognize such purchaser or mortgage as Landlord under this Lease, and in any of such events, Landlord named herein shall not thereafter be liable as a party under this Lease.

40. **SECURITY DEPOSIT**. Tenant has deposited with Landlord the security deposit specified in sub-Section 2G, which deposit shall be retained by Landlord, interest free, as security for the performance by Tenant of its agreements under this Lease. Tenant shall not transfer or encumber said deposit and any such act shall not be binding on Landlord. If Tenant defaults under this Lease, Landlord may, without prejudice to other Landlord remedies, apply as much of said deposit as may be necessary to compensate Landlord toward payment of rent or other loss or damage to Landlord stemming from such default and Tenant shall immediately upon notice from Landlord restore said deposit to its original sum. Said deposit, less any amount expended as aforesaid, shall be returned to Tenant at the end of the Term. Tenant agrees that the holder of any mortgage covering the Premises shall not, under any circumstances, be liable for such deposit. In the event of a sale, transfer and/or assignment of the Shopping Center, Landlord shall deliver said deposit to the purchaser, transferee and/or assignee, and thereupon Landlord shall be discharged from any further liability with respect to the deposit and the purchaser, transferee and/or assignee shall retain said deposit as Landlord under this Section.

41. **LATE PAYMENT**. All billings referred to in this Lease shall be due to the billing party within 10 days of such billing. Should Tenant fail to pay any rents, charges or billings when due, then interest shall accrue from and after the due date at the rate of 15% per annum together with a late charge after the due date at the rate of 15% per annum together with a late charge of $25.00 to cover Landlord's extra expense involved in collecting such delinquency. All sums in addition to minimum rent payable to Landlord under any provisions of this Lease shall be deemed payable as additional rent, and upon failure of Tenant to pay any such sum, Landlord shall be entitled to

10

exercise any and all rights and remedies contained herein or at law for the failure to pay minimum rent.

42. **TENANT'S DEFAULT**. Tenant agrees that if Tenant:

A. Monetary Defaults: Fails or refuses to pay any rent or sums payable as additional rent at the time and place specified herein and such default should continue for more than 5 days; or

B. Other Defaults: Fails or refuses to keep and perform any of the other Tenant agreements in this Lease and such default shall continue more than 10 days after notice thereof by Landlord to Tenant (provided, however, if the cause of such default involves matters reasonably requiring more than 10 days to correct or cure, Tenant will be deemed in compliance with the notice so long as Tenant has commenced appropriate corrective action within said 10 days and is diligently prosecuting completion thereof); or

C. Habitual Defaults: Shall repeatedly be late in the payment of rent or sums payable as rent or shall repeatedly default in the keeping of any other Tenant's agreements herein contained to be kept by Tenant (provided notice of such non-payment or other defaults shall have been given to Tenant as herein provided, but irrespective of whether or not Tenant shall have timely cured any such non-payment or other defaults of which notice was given):

then Landlord may re-enter and take possession of the Premises, remove Tenant's personal property there from and store the same at Tenant's expense, and re-let the Premises or any part thereof on such terms, conditions and rentals as Landlord may deem proper, and apply the proceeds that may be obtained from said re-letting, after deduction of all re-letting costs, including without limitation, charges for said removal, storage, remodeling, repairs, leasing commissions and legal fees, to the rents and sums payable as rent hereunder which may remain unpaid; or, at Landlord's option, Landlord may terminate and cancel this Lease, in which event Tenant agrees to promptly pay to Landlord all of the aforesaid re-letting costs and rent and other sums remaining unpaid on the date of such termination. If this Lease is terminated by Landlord or if Landlord re-enters the Premises pursuant to this Section, Tenant shall nevertheless , remain liable for any rent and other sums which, but for such termination or re-entry, would have become due during the remainder of the Term, and all reasonable costs, fees, and expenses incurred by Landlord in pursuit of the collection of the aforementioned and Landlord is hereby empowered by Tenant to institute a proceeding against Tenant for the entire amount of unpaid rent and other sums that is due and payable over the balance of the Term. All rights and remedies of Landlord specified herein are cumulative and none shall exclude any other rights or remedies allowed by law or equity.

43. **LANDLORD MAY PERFORM TENANT AGREEMENTS**. Landlord shall have the right at any time after 10 days notice to Tenant (or without notice in case of emergency or in case any fine penalty, interest or cost may otherwise be imposed or incurred), to make any payment or perform any act required of Tenant under any provisions of this Lease and in exercising such right, to incur reasonable and customary costs and expenses, including reasonable attorney fees. Nothing herein shall imply any obligation on the part of Landlord to make any payment or perform any act required of Tenant, and the exercise of the right so to do shall not constitute a release of any obligation or a waiver of any default. Tenant shall reimburse Landlord all its costs and expenses expended herein upon Landlord billing Tenant therefore.

11

**44. BANKRUPTCY OR INSOLVENCY.** This is a lease of real property in a Shopping Center within the meaning of sub-Section 365 (b) (3) of the Bankruptcy Code, 11 U.S.C., Section 101 et.seq ("Bankruptcy Code"). Tenant agrees that if, at any time, Tenant is adjudged Bankrupt or insolvent under the laws of the United States or any state thereof, or makes a general assignment for the benefit of creditors, or if a receiver of Tenant's property in the Premises is appointed and shall not be discharged within 15 days of such appointment, then Landlord may, at its option, declare this Lease terminated and shall forthwith be entitled to immediate possession of the Premises except that if any such proceedings are pursuant to the United States Bankruptcy Code, then Landlord shall be entitled to all the rights and remedies accorded Landlords, including without limitation, those set forth in Section 365 of said Code.

**45. LANDLORD DEFAULT.** Tenant agrees that if Landlord fails to perform any Landlord agreements hereunder, Landlord shall have the right, within 30 days after notice thereof by Tenant to Landlord to cure such default - provide, however, if the cause of such default involving matters reasonably requiring more than 30 days to cure, Landlord will be deemed in compliance with said notice so long as Landlord has commenced appropriate curative action within the 30 days and is diligently prosecuting completion thereof before Tenant may take any action under this Lease by reason of such default.

**46. WAIVER.** No waiver of any agreement of this Lease or of the breach thereof shall be taken to constitute a waiver of any subsequent breach of such agreement, nor to justify or authorize the non-observance on any other occasion of the same or any other agreement hereof; nor shall the acceptance of rent or other sums by Landlord at any time when Tenant is in default be construed as a waiver of such default or of Landlord's right to terminate this Lease on account of such default; nor shall any waiver or indulgence granted by Landlord to Tenant be taken as an stopple against Landlord – it being expressly understood that if at any time Tenant shall be in default hereunder, an acceptance by Landlord of rent or other sums during the continuance of such default or the failure on the part of Landlord to promptly avail itself of such other rights or remedies as Landlord may have, shall not be construed as a waiver of such default, but Landlord may at any time thereafter, if such default continues, terminate this Lease on account of such default in the manner here provided.

**47. ATTORNEY'S FEES.** In the event court action relating to this Lease is brought by either party against the other, the prevailing party shall be entitled to recover from the non-prevailing party reasonable attorneys' fees and costs incurred in such action, the amount thereof to be fixed by the court.

**48. CONSUMER PRICE INDEX.** "Consumer Price Index" as used in this Lease shall mean the Consumer Price Index, All Urban Consumers (U.S. City Average) as compiled by the Bureau of Labor Statistics, United States Department of Labor, which became effective January 1978. If such Price Index should in the future be compiled on a different basis, appropriate adjustment will be made for purposes of computations. If the United States Department of Labor compiles and publishes such Consumer Price Index, any comparable Index published by any other branch or department of the Federal Government shall be used for the purpose of computing the adjustments herein provided for, and if no such Index, is compiled and published on any branch or department of the Federal Government, the statistics reflecting cost of living changes, as compiled by any institution, organization or individual, generally recognized as an authority by financial and insurance institutions shall be used as a basis for such adjustments.

CPI Increase Formula, as used in this Lease, shall refer to the following determination: using the Price Index applicable on the first day of the month in which this Lease commences as the denominator and the Index number for the first month of each lease year or other period being adjusted as the numerator, multiply said resulting fraction times the payment being adjusted.

49. **NO ASSIGNMENT OR SUBLETTING**.  Any reference in this Lease to sub-Tenants, licensees, heirs, executors, administrators, successors, assigns and the like notwithstanding, Tenant agrees not to assign this Lease or to sublet the whole or any part of the Premises, or to permit any other party to occupy same or any part thereof without prior consent of Landlord. Any assignment or sub-letting, even with Landlord's consent shall not relieve Tenant from liability for payment of rent or from any Tenant agreements under this Lease.  The acceptance of rent from any other person shall not be deemed to be a waiver of any of the agreements of this Lease or to be consent to the assignment for the benefit of creditors or by operation of law and shall not be effective to transfer any rights to any assignee without prior consent of Landlord.  If Tenant is a non-publicity traded corporation and at any time during the Term any part or all of the corporate shares of Tenant shall be transferred by sale, assignment, inheritance, operation of law or other disposition so as to result in a change in the present effective voting control of Tenant by the person/s owning a majority of said corporate shares on the date of this Lease, Tenant shall promptly notify Landlord of such change, and Landlord, at its option, may terminate this Lease at any time after said change by giving Tenant 30 days notice of such termination.

50. **QUIET POSSESSION**.  Landlord agrees that if Tenant shall perform all of Tenant's agreements herein specified, Tenant shall, subject to the terms and conditions of this Lease, have the peaceable and quiet possession of the Premises without any manner of hindrance from Landlord.

51. **ACCESS TO PREMISES**.  Tenant agrees that Landlord and its agents may inspect the Premises at any reasonable time and that Landlord may make such repairs or improvements to the Premises or any part of the Shopping Center that Landlord may deem desirable which Tenant has not agreed herein to do or has failed to do or as may be of an emergency nature.  Tenant further agrees that during 180 days preceding termination of the Term, Landlord or its agents shall have the right to show the Premises to potential Tenants, and to place various notices on the Premises offering the Premises to such Tenants.

52. **NO OPTION**.  Submission of this Lease for examination does not constitute a reservation of or option for the Premises and this Lease becomes effective only upon execution and delivery hereof by Landlord to Tenant.  In the event Landlord executes this Lease prior to Tenant, Tenant agrees that if Tenant does not execute the same and deliver it to Landlord within 10 days of said Landlord execution, this Lease shall be null and void.

53. **SURRENDER OF PREMISES**.  Tenant agrees to deliver up and surrender to Landlord possession of the Premises upon Lease expiration, in as good condition and repair as the same shall be at Term commencement or may have been put by Landlord during the Term—ordinary wear and tear expected.  Nothing herein shall be construed as relieving Tenant of any of its maintenance, repair or replacement obligations under this Lease.

54. **HOLDING OVER**.  If Tenant shall hold over or otherwise remain in possession of all or any part of the Premises after Term expiration or fail to remove its personal property, then Tenant shall be deemed a Tenant of the Premises from month to month, notwithstanding any law to the

11-40169-kw    Doc 1    FILED 01/21/11    ENTERED 01/21/11 16:14:54    Page 89 of 142

contrary, subject to all of the terms and provisions hereof, except only as to the Term which will have terminated and the minimum rent in effect at the time of such termination which minimum rent shall be doubled.

55. **NOTICE.** Any notice that either party may desire or be required to give under this Lease shall be effective only if in writing and delivered personally upon the other party or sent by express 24-hour guaranteed courier service or by registered or certified mail of the United States Postal Service, return receipt requested, addressed to the other party at its address as specified in Section 1 (or to such other address or person as either party may by notice to the other specify). Unless otherwise specified, notices shall be deemed given when received or refused. Communications, billings and payments shall be similarly addressed.

56. **REASONABLE CONSENT.** Whenever this Lease specifies that either party has the right of consent or either party shall desire the consent of the other on a matter concerning this Lease, said consent shall be effective only if in writing and signed by the consenting party and shall not be unreasonably withheld or delayed.

57. **RELATIONSHIP OF PARTIES.** Nothing in this Lease shall be deemed or construed so as to create the relationship of principal and agent, partnership, joint venture or of any association between the parties, it being agreed that neither the computation of rent nor any other Lease provision nor any act of the parties shall be deemed to create any relationship between the parties other than that of Landlord and Tenant.

58. **DEFINITION OF PARTIES.** The words "Landlord" and "Tenant" shall mean each party named as the Landlord or Tenant in Section 1 and if there shall be more than one, any notice required or permitted by this Lease may be given by or to any one thereof, and shall have the same force and effect as if given by or to all thereof. The use of the neuter singular pronoun to refer to either party shall be deemed a proper reference even though such party may be an individual, partnership, corporation, firm, trust or a group of two or more of any of the same. The necessary grammatical changes required to make the provisions of this Lease apply in the plural tense where there is more than one as aforesaid and to either individuals, partnerships, corporations, firms, trustees, males or females, shall in all instances be assumed as though in each case fully expressed.

59. **LEGAL INTERPRETATION.** This Lease shall be construed in accordance with the applicable laws of the State where the Premises are located. In interpreting this Lease, there shall be no inference, by operation or law or otherwise, that any provision of this Lease shall be construed against either party. In the event any provision of this Lease conflicts with any applicable law, such conflict shall not affect other provisions of this Lease which can be given effect without such conflicting provision. If any provision of this Lease shall be subject to two constructions, one of which would render such provision valid, then such provision shall be given that construction which would render it valid. The section numbers and captions are inserted only as a matter of convenience and in no way define or limit the scope or intent of such sections.

60. **FORCE MAJEURE.** If either party shall be delayed in the performance of any act required by this Lease by reason of strikes, restrictive laws, riot, act of God or other similar reasons not the fault of the nonperforming party, then the performance time for such act shall be extended for a period equivalent to the period of such delay. The provisions of this Section shall not operate

11-40169-kw    Doc 1    FILED 01/21/11    ENTERED 01/21/11 16:14:54    Page 90 of 142

to excuse Tenant from prompt payment of rent or other sums hereunder or from properly securing the Premises from damage.

61. **LEASE DATE.** If this Lease is not dated, Tenant hereby authorizes Landlord to date the same as of the date of either Landlords or Tenants execution thereof.

62. **ENTIRE AGREEMENT.** This Lease and any incorporated attachments contain all the agreements between the parties and cannot be modified in any manner other than by agreement signed by the parties. Each agreement, condition, term and provision of this Lease shall be construed to be a promise, covenant and condition.

63. **OPTION TO RENEW.** Intentionally Omitted.

64. **PROVISIONS BINDING.** The agreement herein shall be binding upon and inure to the benefit of the heirs, executors, administrators, successors and assigns of the parties.

**IN WITNESS WHEREOF** the Landlord and Tenant have executed this Lease effective as of the date first above shown, each acknowledging the receipt of an executed counterpart hereof.


Witness                                    **LANDLORD**: Churchill Square Properties
                                           An Ohio General Partnership


                                           By: _____
_____
As to Landlord                             James Grantz, Managing Member
                                           Main Parkway, Ltd



                                           By: _____
_____
As to Landlord                             Fredric Kannensohn, General Partner



                                           **TENANT**: Lifeline Partners, Inc.

                                           By: _____
_____
As to Tenant                               Kathy Burgdorf, President


15

# GUARANTEE OF LEASE

IN CONSIDERATION of the execution of the within Lease to the within named Tenant, Lifeline Partners, Inc., the receipt of which is hereby acknowledged, the undersigned does hereby covenant and agree to and with said Landlord, its successors and assigns, that if at any time default shall be made by said Tenant, its successors or assigns, in the payment of rent or other charges, or in the performance of the covenants and conditions of the within Lease during the term granted therein, on the part of said Tenant to be performed, the undersigned does hereby promise and agree to pay unto the within named Landlord, its successors and assigns, such sum or sums of money as will be sufficient to make up such deficiency of rental or other charges, and all damages that may accrue by reason of the violation of non-performance of any of the covenants and conditions of this Lease, without requiring demand of payment or notice of any such default.

This Guaranty is absolute and unconditional and shall be a continuing one, without in any way being affected by the Bankruptcy or insolvency of Tenant, its successors or assigns, or by the disaffirmance or abandonment by a Trustee or receiver of Tenant, its successors or assigns. Demand and notice of non-payment or non-performance, diligence in collection and notice of acceptance of this Guaranty are hereby expressly waived.

There shall be no duty on the part of the Landlord under said Lease or its successors or assigns, to mitigate damages; and this unconditional and absolute Guarantee shall not be affected by the failure of Landlord to take action pursuant to said Lease, or any action taken, or by any extension, indulgences or modifications of the Lease, or defaults by Landlord in enforcing any of the provisions thereof.

The undersigned does further covenant and agree to and with Landlord and its successors and assigns that the undersigned may be joined in any action against said Tenant or its successors and assigns in connection with said Lease, and that recovery may be had against the undersigned in such action or in any independent action or proceeding against it, without first exhausting any remedy or claim against Tenant.

Guarantor

_____

Witness                                    Kathy Burgdorf

State of                )
                      ) ss
County of            )

Personally appeared before me, the undersigned, a Notary Public in and for said County and State, the above named who acknowledged that she did sign the foregoing instrument and the same is her free act and deed.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal at _____, this _____ day of _____, 2010.

_____
Notary

17



# LEASE AGREEMENT

Dated August 10, 2006
("Lease Date")

Cocca Development, Ltd., a limited partnership organized under Ohio law, for the **RENT** and for the agreements made and obligations undertaken in this Lease Agreement, grants a leasehold estate in the **PREMISES** to Lifeline Partners, Inc., an Ohio corporation (the "Initial Tenant"), for the **TERM**, to have and to hold the Premises unto Tenant, its successors and assigns, upon the following agreements, conditions and limitations which Tenant agrees to pay, perform and satisfy.

## 1. LANDLORD AND TENANT

"Landlord" refers initially to Cocca Development, Ltd, with an initial notice of address of 100 DeBartolo Place, Suite 400, Youngstown, Ohio 44512, and to each subsequent holder from time to time of its estate in the Premises with reference only to the period it is held by each. "Tenant" refers, throughout the Term, to the Initial Tenant, even if the Initial Tenant subleases the Premises or assigns or otherwise transfers its leasehold estate. Notices to the Tenant shall be properly given if sent only to the Premises, only to 5692 Lamplighter Drive, Girard, Ohio ~~or only to 2268 E. Arms Drive, Hubbard, Ohio 44525.~~

## 2. PREMISES

2.1    <u>Premises, Building and Common Areas</u>.  The "Premises" leased to Tenant is the portion, known as Suite 1535 and consisting of approximately 4,880 square feet as shown on the drawing attached as Exhibit "A", incorporated by reference, of the "Building" known as Southwoods Medical Center, 250 DeBartolo Place, Boardman Township, Ohio.  Tenant has the non-exclusive right to use Common Areas of the Building.  "Common Areas" means all sidewalks, stairs, parking areas, driveways, landscaped areas, truck serviceways, loading docks, ramps, hallways, stairways, elevators, public bathrooms, common entrances, lobbies and all other areas, facilities, equipment, signs and services made available from time to time by Landlord and Tenant for the common use and benefit of Landlord, Tenant, other tenants and occupants of the Building.

2.2    <u>Possession; Quiet Enjoyment</u>.  Tenant shall have possession on the Delivery Date (as defined in Section 2.4).  Landlord warrants that Tenant will have quiet and peaceable enjoyment of the Premises free from disturbance by Landlord or from any valid claim through or superior to Landlord's title.

2.3    <u>"As-Is"</u>.  Tenant's execution of this Lease is conclusive evidence that except for Landlord's obligations to perform Landlord's Work pursuant to Section 2.4 of this Lease, Tenant accepts the Premises "as is".  Tenant acknowledges and agrees that neither Landlord nor any agent of Landlord has made any representation or promise with respect to the Premises except for the agreement to perform Landlord's Work and Tenant has acquired no right or interest by implication.  Tenant acknowledges and agrees that it has made what it considers to be a sufficient inspection of the Premises and that it has not relied on Landlord's silence as to any matter as implying that any condition, patent or latent, does or does not exist.  Unless and only to the extent that Tenant notifies Landlord on or before the sixtieth day after the Delivery Date (as defined in Section 2.4) of any breach of Section 2.4 or any failure of or defect in Landlord's Work, Tenant shall conclusively be deemed to have accepted Landlord's Work and the Premises in their then existing condition, as is, with all faults.

Southwoods Medical Lifeline June 30b, 2006

2.4 <u>Landlord's Work</u>. Landlord agrees to perform Landlord's Work. "Landlord's Work" means all of the work described in Exhibit B, attached and incorporated by this reference. Tenant acknowledges and agrees that Landlord has no other obligation to perform any work or service to render the Premises ready for occupancy and use by Tenant. Landlord covenants to perform Landlord's Work at its sole cost and expense. Landlord covenants to perform Landlord's Work in a good and workmanlike manner in conformity with all applicable building and fire codes. Landlord covenants to obtain all necessary permits, licenses or other authorizations required to perform Landlord's Work. The "Delivery Date" shall be the earlier of the date Landlord's Work is substantially complete or the date Tenant commences Tenant's Work or conducts business at the Premises, whichever occurs first.

2.5 <u>Tenant's Work.</u> Before occupying the Premises, Tenant shall perform all work, other than Landlord's Work, required to render the Premises ready for occupancy and use by Tenant ("Tenant's Work") but only in accordance with plans and specifications to be prepared by Tenant at Tenant's expense and approved by Landlord, which approval Landlord may withhold, condition or qualify for any reason in its sole judgment. Tenant agrees to perform Tenant's Work at its sole cost and expense and in accordance with all of the requirements contained in Section 9. Tenant covenants to perform Tenant's Work at its sole cost and expense, free of liens, and in a good and workmanlike manner in conformity with all Law.

## 3. TERM

3.1     <u>Term</u>.  The "Term" of this Lease begins on the Delivery Date (as defined in Section 2.4) and ends on February 29, 2012.

3.2     <u>End of Term; Failure to Vacate</u>.  Tenant agrees to surrender the Premises at the expiration of the Term in the same good, clean condition as it is required to be upon completion of Tenant's Work, due regard being made for ordinary wear and tear so long as all necessary repairs are made.  If Tenant, its assignee, subtenant or other occupant claiming under this Lease or through Tenant continues to occupy the Premises after the last day of the Term, whether or not it tenders rent, Tenant will be in Default and Landlord may evict Tenant and exercise other remedies without notice or judicial process as provided in Section 14.  If Tenant tenders rent after the end of the term, Landlord may hold it as security for its damages resulting from Tenant's wrongful occupancy of Premises and Tenant will not become a tenant for month-to-month or otherwise.  Landlord's damages will include (a) 150% of the last due monthly installment of Fixed Rent for each month Tenant remains in possession, as the measure of damages for the rental value of the Premises; (b) liability for all other obligations under this Lease; and (c) any other damages Landlord may sustain.  If Tenant has not vacated the Premises by the first of a month, Tenant will be liable for damages as provided for the entire month.  Landlord may also chose to accept the tender as rent, in which case Tenant will become a tenant from month-to-month at a Fixed Rent equal to 150% of the monthly installment of rent and on all of the other the terms and conditions in effect during the last month of the Term, notwithstanding Landlord's acceptance of any lesser amount tendered by Tenant, unless Landlord and Tenant otherwise agree in writing.  Tenant may not assert that Landlord's holding of the tender constitutes an acceptance of rent for a month-to-month term unless Landlord notifies Tenant in writing.

3.3     <u>Extension of Term</u>. The Term of the Lease can be extended once for 5 additional years (an "Extended Term" ) if Tenant notifies Landlord in writing between six and nine months before the end of the Term, time being of the essence, so long as Tenant is still in possession of the Premises.  Landlord can reject Tenant's extensions of the Term, however, if Tenant has been in default at any time during the last nine months of the Term. If the Term is extended, the word "Term" means the original Term and the

-2 −

11-40169-kw   Doc 1    FILED 01/21/11    ENTERED 01/21/11 16:14:54    Page 94 of 142

extension period.

# 4. RENT

4.1    "Fixed Rent". Tenant agrees to pay monthly installments of Fixed Rent, without setoff or credit, during the Term, beginning on the "Rent Commencement Date". The "Rent Commencement Date" means the Delivery Date as defined in Section 2.4. "Fixed Rent" means $6,212.50 per month, except that during the portion of the Term, if any, occurring before March 1, 2007, "Fixed Rent" will mean $4,090.58 per month. During the Extended Term, if any, "Fixed Rent" will mean $5,286.67 multiplied by the CPI Adjustment. "The "CPI Adjustment" is the CPI three months before the end of the original term divided by the CPI three months before the Rent Commencement Date occurred. "CPI" is the US Department of Labor Consumer Price Index, All Urban Consumers, US City Average (1982-84=100) or the most similar index then published with any adjustments to make the index for the two dates comparable. If the Rent Commencement Date is not the first calendar day of a month, then Tenant shall pay on the Rent Commencement Date one-thirtieth of an installment of Fixed Rent multiplied by the number of days remaining in the month.

4.2    Payments, Late Charges and Partial Payments.  Payments are due without demand in advance on or before the first day of each calendar month and are to be delivered to Landlord's notice address (initially, as stated in Section 1.1), or at another place designated by Landlord. If any installment of Fixed Rent or any other payment Tenant is required to make to Landlord is overdue or not paid in full, Tenant agrees to pay a late charge of five percent (5%) of the sum overdue each month to reimburse Landlord for the expense incident to handling such delinquent payment. If, more than once in any six-month period, Tenant's payment of any installment of Fixed Rent or any other payment under this Lease is made more than five (5) days after it is due, Tenant shall be in Default as provided by Section 14, whether or not Landlord subsequently accepts the payment. Landlord's acceptance of less than the amount due is not an accord and satisfaction notwithstanding any offer or statement accompanying the payment and Tenant shall remain liable for the full amount due.

# 5. EXPENSES

Tenant agrees to pay any and all expenses of trash and waste removal, janitorial services, and performing all of its other obligations under this Lease. Tenant agrees to provide Landlord, within fifteen days of its request, documentation of the payment of any such expense.

# 6. USE AND OPERATION OF PREMISES

Tenant agrees to use the Premises for the practice of physical therapy and rehabilitation and for *sleep related services* ⟨β⟩ no other purpose. Tenant agrees to prevent any occupant or other person at the Premises to make any other use of the Premises.

# 7. USE AND OPERATION OF THE BUILDING AND COMMON AREAS

7.1    Common Area Rules.  Tenant agrees to comply with all rules and regulations concerning the use of Common Areas that Landlord may impose upon all tenants and occupants of the Building.

7.2    Changes to Building.  Notwithstanding anything to the contrary contained in this Lease or any floor plan attached to this Lease, Tenant agrees that Landlord, without Tenant's consent, may at

-3 –

11-40169-kw    Doc 1    FILED 01/21/11    ENTERED 01/21/11 16:14:54    Page 95 of 142

any time alter or add to the Building, change the size, configuration, tenant mix of the Building and modify any other aspect of the Building. Landlord will not be liable to Tenant for the effect of any construction activity so long as access to the Premises is unimpaired.

## 8. COMPLIANCE WITH LAWS AND OTHER REQUIREMENTS

8.1    Laws and Requirements.  Tenant agrees to comply promptly, at its sole cost and expense, with all laws and requirements or rules of any insurance policy or carrier or any regulatory, accrediting, underwriting or rating organization or similar body and to prevent any other occupant or person at the Premises from violating any law or requirement. Tenant agrees that in performing any work required by this Section 8, Tenant will comply with all of the requirements contained in Section 9. If Tenant fails to perform work required by this Section 8.1, Landlord may choose self-help remedies as provided by Section 14 but will never be obligated to do so.

8.2    Hazardous Materials.  Tenant agrees that it will not store, generate or dispose of any Hazardous Material and will prevent any occupant or other person at the Premises from doing so. "Hazardous Materials" means oil other petroleum products and any material regulated by any governmental authorities or defined as a "hazardous substance", "hazardous material", "toxic substance", "contaminate", "pollutant", "solid waste", "hazardous waste" or any similar term under any law. Tenant agrees that it will not discharge, leak or emit any material into the atmosphere, ground, sewer system, or any body of water in violation of any law and will prevent any occupant or other person at the Premises from doing so.

8.3    Indemnity.  Tenant agrees to defend, indemnify, and hold harmless Landlord from and against any and all claims, demands, suits, proceedings, causes of action, penalties, fines, liabilities, settlements, damages, costs or expenses arising from Tenant's breach of its obligations pursuant to this Section 8, or the acts of any occupant or other person at the Premises, or acts of its or their agents, employees, contractors, clients, customers or invitees. On Landlord's demand, Tenant agrees to perform all work necessary to cure any breach of this Section 8 in compliance with the requirements contained in Section 9 but Landlord may elect, but in no event shall Landlord be required, to perform the work, in which case Tenant agrees to reimburse Landlord for all costs and expenses incurred within ten (10) days of demand with interest at eighteen percent (18%). The provisions of this Section 8 shall be in addition to any other obligations and liabilities Tenant may have to Landlord at law or equity and shall survive the termination of this Lease.

## 9. ALTERATIONS AND OTHER WORK IN THE PREMISES

9.1    Alterations.  Tenant agrees that it will not make any alterations to the Premises without Landlord's consent, which Landlord may withhold, condition or deny for any reason in Landlord's sole judgment. Tenant shall submit plans and specifications of proposed alterations to Landlord for written approval. Landlord may withhold, condition or qualify its consent for any reason. If Landlord consents to Tenant's performing structural alterations, the structural alterations shall be done according to the requirements contained in this Section 9.

9.2    Requirements.  Tenant agrees that all construction, alteration, installation, maintenance, repair, replacement and other work performed by Tenant at the Premises will be performed in compliance with the requirements of this Section 9. Tenant agrees to pay in full for all work before any obligation becomes past due. Before starting any work, Tenant agrees to furnish Landlord evidence of the availability of sufficient funds to perform the work adequately segregated for that purpose only. Tenant

-4 –

agrees to obtain all necessary permits, licenses and authorizations for work and comply with all laws and requirements according to Section 8. Tenant agrees to perform all work in a good and workmanlike manner according to standards and methods appropriate for property and equipment of similar construction and class as the original Premises upon completion of Landlord's Work, if any, and Tenant's Work, if any. Tenant agrees to perform all work so as to avoid disturbing other occupants of the Building.

If Tenant begins, but does not complete, alterations or other work, Landlord may complete the Work and Tenant agrees to reimburse Landlord for all costs and expenses incurred within ten (10) days of demand with interest at eighteen percent (18%). Tenant agrees that Landlord may remove any improvements not made in compliance with the requirements of this Section 9 in which case Tenant agrees to reimburse Landlord for all costs and expenses incurred within ten (10) days of demand with interest at eighteen percent (18%).

     9.3.   <u>Mechanics Liens and other Claims</u>. Tenant agrees to indemnify, defend and hold Landlord harmless against all claims, actions, damage, liability, cost and expense relating to its work in the Premises, including, among other claims, mechanic's lien claims and the violation of any law. If the Premises, or Tenant's leasehold interest shall becomes subject to any mechanic's or other lien, Tenant agrees, notwithstanding any dispute or defense it may assert to the claim secured by the lien , to discharge the lien by payment or bond at its sole cost and expense within ten (10) days after receiving notice of the lien, and to provide Landlord documentation of the lien's discharge. Landlord may discharge the lien in which case Tenant agrees to reimburse Landlord for all costs and expenses incurred, including reasonable attorney's fees, within ten (10) days of demand with interest at eighteen percent (18%) Tenant agrees to indemnify, defend and hold Landlord harmless against all claims, actions, damage, liability, cost and expense in connection with bodily injury, death and property damage which occurs while Tenant performs work in the Premises. Tenant agrees that Tenant or its contractors carry (a) standard all-risk builder's risk insurance with extended coverage, including coverage against collapse, written on a completed value basis, for an amount equal to the full insurable value of the Building and Tenant's personal property and (b) contractor's liability insurance with limits of liability of $1,000,000 or more.

     9.4   <u>End of Term.</u>  Improvements at the Premises at the end of the Term will be Landlord's property but if Landlord demands that Tenant remove any improvement and notifies Tenant that Landlord refuses to accept ownership of the improvements, the improvements shall remain Tenant's property and Tenant will not be considered to have vacated the Premises for purposes of Section 3.2.

## 10.  EQUIPMENT, SIGNS AND OTHER PERSONAL PROPERTY

     10.1   <u>Equipment and Other Personal Property</u>. Tenant, at its own cost and expense, may install equipment commonly used in the ordinary course of Tenant's line of business in the Premises except that Landlord's approval, which shall not be unreasonably withheld, shall be required prior to the installation of any equipment that would become fixed to the Premises. Tenant agrees to perform any installation of equipment in compliance with the requirements contained in Section 9. Tenant agrees that Landlord may remove any improvements not made in compliance with the requirements of Section 9 in which case Tenant agrees to reimburse Landlord for all costs and expenses incurred within ten (10) days of demand with eighteen percent (18%) interest. All of Tenant's property kept in the Premises is kept at Tenant's risk. Tenant agrees to insure its equipment, sign and other personal property against damage with coverages, limits and other conditions customary to Tenant's line of business. Tenant releases Landlord from all claims arising out of damage to Tenant's equipment, inventory and other personal property, including subrogation claims by Tenant's insurance carrier, and agrees to indemnify Landlord against any lien arising from any tax, assessment or charge against Tenant's property. Without limiting the effect of Section 10.3, Landlord subordinates any lien it may have in Tenant's personal property to secure payment

-5 –

11-40169-kw   Doc 1   FILED 01/21/11   ENTERED 01/21/11 16:14:54   Page 97 of 142

of rent and payment and performance of all other obligations under this Lease.

10.2  Interior Sign.  Tenant may place, at Tenant's expense, an interior sign identifying Tenant's business in accordance with all laws and with Landlord's approval of its appearance, design and installation.  Tenant agrees, at Tenant's expense, to maintain, repair and replace Tenant's sign.  Tenant agrees that in performing any work contemplated by this Section, Tenant will comply with all of the requirements contained in Section 9.

10.3  Removal.  Tenant agrees to remove Tenant's equipment and personal property on or before the last day of the Term expires or the earlier of the dates, if any, that Landlord reenters the Premises or terminates this Lease pursuant to the rights reserved in Section 14 or otherwise by law.  If Tenant does not remove all of its equipment and personal property on or before the date required by the foregoing provisions of this Section 10.3, Tenant will not be considered to have vacated and Section 3.2 will apply.  Tenant agrees to repair any damage caused by removal of its equipment and personal property.  Equipment and personal property at the Premises at the end of the Term (or any month-to-month tenancies pursuant to Section 3.2) shall be the property of Landlord but if Landlord demands that Tenant remove any improvement and notifies Tenant that Landlord refuses to accept ownership of the improvements, the improvements shall remain Tenant's property.  Landlord, without notice or judicial process, may remove and store or dispose of any property left at the Premises on or after the date it is required by this Section to be removed and Tenant agrees to reimburse Landlord within ten (10) days of Landlord's demand for all costs and expenses incurred with interest at eighteen percent (18%).  Neither Tenant nor any person with a security interest in any of Tenant's personal property will have any claim against Landlord for direct, consequential or punitive damages because of the removal, storage or disposal of Tenant's personal property.

## 11.  MAINTENANCE, REPAIRS AND REPLACEMENTS

11.1  Roof, Structural and Certain Systems.  Landlord covenants to maintain, repair and replace, if necessary, the roof and structural components of the building at the Premises.

11.2  Maintenance, Repairs and Replacement.  Landlord shall not be required to furnish any services or facilities or to maintain the Premises, to repair the Premises or to replace the components of the Premises except as specifically provided by Section 11.1.  Tenant hereby assumes the full and sole responsibility for the condition, operation, repair replacement, maintenance and management of the Premises except as specifically provided by Section 11.1.  Tenant agrees to maintain the Premises, to repair the Premises and to replace the components of the Premises except as otherwise provided by Section 11.1 during the Term at Tenant's expense, so that the Premises shall continue in the same good repair and operating condition as upon it is required to be upon completion of Tenant's Work, if any and Landlord's Work, if any, due regard being made for ordinary wear and tear and obsolescence, provided that all necessary maintenance, repairs and replacements are made.  Tenant agrees to maintain a maintenance contract covering the heating ventilation and air conditioning system providing for quarterly servicing of all such equipment.  Tenant covenants that in performing any work contemplated by this Section, Tenant will comply with all of the requirements contained in Section 9.3 (Requirements for All Work).

11.3  Self-Help; Inspection.  If Tenant does not maintain, repair or make replacements to the Premises as required by this Lease, within a reasonable time (or immediately in the case of an emergency), Landlord may perform such maintenance, repairs, replacement or restoration without liability to Tenant for any loss or damage that may occur to Tenant's merchandise, fixtures or other

-6 –

property or to Tenant's business. Tenant shall reimburse Landlord for all payments made and all costs and expenses incurred in connection with the maintenance, repairs, replacement or restoration within ten (10) days of demand, with eighteen percent (18%) interest. Landlord may enter the Premises at all reasonable times during usual business hours (or at any time in case of emergency) to inspect the condition of the Premises, to exercise its rights under this Section 11.3 and to store necessary materials, tools, and equipment.

## 12. PROPERTY DAMAGE AND TAKINGS; INSURANCE AND RESTORATION

### 12.1 Insurance.

12.1.1 Property Damage (Casualty) Insurance. Landlord shall obtain insurance against property damage from fire and other perils as determined by Landlord.

12.1.2 Mutual Release and Waiver of Subrogation. Tenant releases Landlord, its owners and management, and all of their employees, agents, contractors, customers, licensees and business invitees from all liability for loss, damage and expense and other damages arising from any fire or other peril causing property damage. Landlord releases Tenant, its owners, management, assignees and subtenants, and all of their employees, agents, contractors, customers, licensees and business invitees from all liability for property damage, loss, expense and other damages arising from any fire or other peril causing property damage. The property damage insurance policies shall contain the insurer's waiver any right of subrogation that might otherwise exist in or accrue to any person because of any property damage.

### 12.2 Property Damage or Taking.

12.2.1 Termination and Abatement Limited. Tenant agrees that this Lease will not terminate this Lease because of property damage or a taking except pursuant to a specific option contained in this Section 12.2 and that the Fixed Rents, and all other payments due and to perform all of Tenant's obligations to perform and observe all of its obligations under this Lease will not abate unless the Premises become unsuitable, and then only to the extent provided by this Section 12.2.

12.2.2 Options to Terminate. Landlord has no obligation to repair or restore the Premises. If any property damage or taking occurs, Landlord has the option to terminate this Lease by notifying Tenant in writing in which case the Term shall terminate on the date the property damage occurred or the condemning authority took possession. If the entire Premises is taken or a taking makes the Premises unsuitable for Tenant's business, Landlord and Tenant each shall have the option to terminate this Lease by notifying the other in writing within thirty days of the Taking in which event the Term shall terminate on the date of the delivery of the notice. Tenant's termination will not be effective, however, if Landlord makes the Premises suitable such as by adding to or altering the Premises or making additional parking area available. If the Lease is terminated, all insurance proceeds or the "award" paid by the condemning authority will be Landlord's property; Tenant releases any claim to the proceeds and award. Tenant agrees to vacate the Premises within thirty (30) days of the date that notice of the termination is given in as good and clean condition as practical and to pay Fixed Rent, and all payments required by this Lease that accrue on or before the date Tenant the Premises becomes unsuitable, if does; otherwise from the date of Landlord's notice of termination.

### 12.3 Restoration. If this Lease is not terminated pursuant to this Section 12.2, Landlord agrees to restore the Premises as much as is practical, and the insurance proceeds or condemnation award

will be paid directly to Landlord and applied to the cost of repair and restoration. "Practical" means that there are sufficient funds from the proceeds or award to perform the repair or restoration and there is sufficient property available for the improvements to be restored. During the period of restoration, if the entire Premises is unsuitable, no Fixed Rent will be due until the entire Premises becomes suitable. If part of the Premises is unsuitable, the Fixed Rent will be reduced in proportion to the reduction in suitable leaseable area. If the proceeds or award exceed the cost of repair and reconstruction, the excess shall be Landlord's property to which Tenant releases any claim. If the Premises is smaller than at the completion of Tenant's Work, Fixed Rent shall be reduced in proportion to reduction in leaseable area.

## 13. CLAIMS, INDEMNITY AND LIABILITY INSURANCE

13.1    <u>Indemnity</u>.  Tenant agrees to indemnify, defend and save harmless Landlord, its tenants and other occupants of the Building, and their ownership, management, employees, agents, contractors, customers and clients against any claim and all liabilities, obligations, damages, penalties, claims, costs, charges and expenses, including reasonable architects' and reasonable attorneys' fees arising from an occurrence at the Premises after the Lease Date and or any occurrence covered by Section 9.3 (Mechanic's Liens and Other Claims) regardless of the person or persons who may be or who are alleged to be at fault.

13.2    <u>Liability Insurance</u>.  Tenant agrees to obtain, and pay all premiums for, a liability insurance policy covering all of its liabilities under this Lease from the Lease Date until the end of the Term. "Liability insurance" means occurrence basis commercial general liability insurance, with limits of at least $1,000,000 per occurrence for bodily injury, including death and personal injury, and $500,000 per occurrence for property damage; products and completed operations liability coverage; employees, worker's compensation and automobiles coverage; any such greater limits and additional coverages as Landlord or its mortgagee may require.  Tenant agrees that the liability insurance policy will name Landlord and Landlord's mortgagee as additional insureds; will insure Tenant's contractual assumption liabilities and indemnities contained in this Lease; will provide that the policy may not be canceled amended or materially altered (including by reduction in the scope or limits of coverage) without thirty (30) days notice to Landlord and Landlord's mortgagee; and will be carried by an insurer acceptable to Landlord and Landlord's mortgagee. Within ten (10) days of the Lease Date, and thirty (30) days prior to the expiration of any policy, Tenant shall provide evidence acceptable to Landlord or its mortgagee of the liability insurance required by this Lease, including all of the required additional insured, contractual assumption and notice provisions.

13.3    <u>Landlord's Indemnity</u>.  Landlord agrees to indemnify, defend and save harmless Tenant, its assignees and subtenants, and their respective ownership, management, employees, agents, contractors, licensees and business invitees against any claim and all liabilities, obligations, damages, penalties, costs, charges and expenses, including reasonable architects' and attorneys' fees, arising from an occurrence upon or within the Common Areas regardless of the person or persons who may be or who are alleged to be at fault except for any occurrence covered by Section 9.3.

13.4    <u>Landlord's Liability Insurance.</u>  Landlord agrees to obtain liability insurance covering all of its liabilities under this Section 13 of this Lease from the Lease Date and until the end of the Term.

## 14.  DEFAULT

14.1    <u>Default</u>.  Tenant will be in default if it does not (a) pay all installments of Fixed

-8 –

11-40169-kw    Doc 1    FILED 01/21/11    ENTERED 01/21/11 16:14:54    Page 100 of 142

Rent or any other payment under this Lease when due; (b) perform all obligations under this Lease other than the payment of money within ten (10) days of Landlord's demand or notice of non-performance unless the obligation cannot with Tenant's best efforts be performed within ten (10) days; (c) commence within thirty (30) days and diligently and continuously pursue the completion of all other obligations; (d) conduct its business in a commercially reasonable manner or any one or more of such circumstances. Tenant will also be in default (e) under the circumstances described in Sections 3.2 and 4.2; (f) if Tenant assigns this Lease or sublets the Premises in violation of Section 16; (g) if waste occurs or the Premises becomes a nuisance or is unoccupied, (h) if Tenant files a bankruptcy petition or in any one or more of such circumstances.

14.2     Landlord's Re-entry. If Tenant is in Default, Landlord may re-enter the Premises and evict Tenant either (a) by peaceful "self-help repossession", without notice or judicial process, any may deny Tenant access to the Premises and remove Tenant's personal property and store or dispose of it at Tenant's expense; or (b) by obtaining a court order, without notice other than notice, if any, required by statute. Landlord shall not be liable for damages arising from any peaceful action it takes pursuant to this Section. Upon reentry, Tenant's right to possess the Premises will forever cease but this Lease not will terminate; Tenant's liability for Fixed Rent and the payment and performance of all of the obligations of the tenant under this Lease shall continue notwithstanding any eviction, repossession or surrender. Tenant shall quit and surrender the Premises as required by Section 3.2.

14.3     Option to Terminate. If Tenant is in Default, Landlord has the option to terminate the Lease by written notice to Tenant, effective upon delivery of the notice. Termination of this Lease is not required as a condition to any other remedy including reentry, dispossession or eviction. Upon termination of this Lease, Landlord may re-enter the Premises as provided by 14.2 and Tenant shall surrender the Premises as provided by Section 3.2. Termination of this Lease does not terminate Tenant's liability for Fixed Rent and the payment and performance of all of the obligations of the tenant under this Lease.

14.4     Deficiency and Other Damages. Whether or not Tenant occupies the Premises and whether or not Landlord has terminated the Lease, Tenant shall remain liable for Fixed Rent and the payment and performance of all of the obligations of the tenant under this Lease until the end of the Term (or, if Landlord terminates the Lease, until the last day the Term would have ended had the Lease not been terminated. If Landlord re-enters the Premises, Landlord has the power and right to relet all or any part of the Premises for all or any part of the remainder of the Term for any rent and terms offered and to alter, decorate or otherwise improve the Premises to suit a new tenant. Tenant's liability to Landlord shall not be reduced because Landlord does not relet the Premises so long as Landlord's efforts to relet or collect are comparable to efforts to lease similar properties it or its affiliates own. Tenant shall also be liable for the cost of removing and storing or disposing of Tenant's property; brokers' commissions for reletting all or part of the Premises; and other expenses paid because of Tenant's breach, enforcing its remedies or mitigating its damages.

14.5     "Self-Help". If Tenant is in default, if there is an emergency, or if a fine, penalty, or extra cost might be incurred, Landlord may make any payment or perform any obligation of Tenant under this Lease. Landlord will never have an obligation to perform an obligation of Tenant and doing so will not release Tenant of any obligation or waive any Default. Tenant agrees to reimburse Landlord, within ten (10) days of demand, for all costs and expenses incurred with interest at eighteen percent (18%).

14.6     Attorney's Fees. If Landlord seeks to enforce this Lease and is awarded a

-9 –

Southwoods Medical Lifeline June 30b, 2006

judgment or other relief, Tenant agrees to reimburse Landlord for attorney's fees and litigation expenses.

14.7    Additional Remedies.    Landlord also has all other remedies available by law or in equity for breach of contract or default of a lease even if not listed in this Article 14. Landlord will never be prevented from exercising a remedy because it previously has or has not exercised remedies for the same or another default or because of delays or the order or manner of exercising the remedy. No default is considered waived by Landlord's action or inaction but only by a specific written waiver.

## 15. LIMITS ON LANDLORD'S LIABILITY

Landlord is not in default of this Lease unless it does not (a) perform an obligation under this Lease within thirty (30) days of Tenant's notice of non-performance unless the obligation cannot with Landlord's best efforts be performed within thirty (30) days; (b) commence within thirty (30) days and diligently and continuously pursue the completion of any other obligation. Notwithstanding anything to the contrary contained in this Lease, Landlords, mortgagees, grantees in lieu of foreclosure or purchasers at foreclosure sale, their respective successors, assigns, owners and management shall have absolutely no personal or entity liability for any obligation under this Lease. A judgment against a Landlord for damages for breach of this Lease may only be satisfied by securing and foreclosing a judgment lien against the Building and no person shall have recourse against any other asset. A purchaser at any foreclosure sale or grantee- in-lieu of foreclosure and their successors and assigns, will take title free from liens or obligations due at the time of the sale or grant. No liability accruing after a Landlord's conveyance of the Premises shall be enforceable against the transferor Landlord. The limits of liability and satisfaction contained in this Section 15 are absolute and without exception.

## 16. ASSIGNMENT AND SUBLETTING

Tenant agrees that it will not assign this Lease or sublet the Premises without Landlord's consent, which Landlord may deny, condition or qualify for any reason or no reason. An assignment or subletting in breach of the previous sentence is voidable at Landlord's election. If Tenant assigns this Lease with Landlord's consent, or if Landlord does not avoid an assignment or sublease, Tenant, Guarantor (if any) and each assignee or sublessee shall be jointly and severally liable to pay all of the Fixed Rent and to pay and perform all of the other obligations of the tenant under this Lease. Landlord may enforce directly against the assignee or sublessee its liability according to the previous sentence. An assignment or sublease is voidable at Landlord's election if the assignee or sublessee does not execute documents satisfactory to Landlord confirming the provisions of this Section 16.

## 17. BROKERS' COMMISSIONS

Tenant represents and warrants to Landlord that no brokerage commissions or finder's fees are due because of the execution of this Lease. Tenant agrees to indemnify, defend and hold harmless Landlord against liabilities for claims asserted for commissions or fees pursuant to a contract with Tenant. If any claim is asserted against Landlord for a commission or fee Landlord may pay the amount claimed and Tenant agrees to reimburse Landlord for the amount paid with ten (10) days of demand with interest at the rate of eighteen percent (18%).

## 18. SECURITY DEPOSIT

Tenant agrees to pay Landlord, upon signing this Lease, $6,212.50 to hold as security deposit to

-10 –

11-40169-kw    Doc 1    FILED 01/21/11    ENTERED 01/21/11 16:14:54    Page 102 of 142

assure payment of the Fixed Rent and all other payments and other obligations due under this Lease. (If no amount is filled-in, the security deposit shall be equal to the first full monthly installment of Fixed Rent under this Lease). Landlord has the option to terminate this Lease (a) until the security deposit is paid in full, and, (b) if Landlord applies the security deposit to any delinquent payment, until Tenant restores the security deposit to the original amount. If Tenant is in Default, Landlord may, but shall never be required to, apply the security deposit against any delinquent amount without releasing from payment of the balance. If at the end of the Term Tenant is not in Default and has vacated the Premises, Landlord agrees to repay the security deposit to Tenant without interest.

**19.** Intentionally omitted.

-11 –

11-40169-kw   Doc 1   FILED 01/21/11   ENTERED 01/21/11 16:14:54   Page 103 of 142

## 20. GENERAL

20.1     Notices.  Notices and other communications concerning this Lease or the Premises must be in writing, delivered by any means of mail or delivery that provides written record of delivery and attempted delivery.  Notices must be addressed to the address stated in Section 1 or to another address given to the other party by written notice.  Notice is considered delivered when it actually is received; if refused or if certified mail is not retrieved on day following first attempted delivery, however, notice is considered delivered on the day delivery is first attempted.  Notices required to be given within a period that ends on a Saturday or a day regular U.S. Mail is not delivered will be considered to have been delivered within that period if it is delivered the first day thereafter that regular U.S. Mail is delivered.

20.2     Financial Statements.  Tenant agrees deliver to Landlord, upon execution of this Lease and thereafter on an annual basis as soon as they are available, current, audited financial statements of Tenant and the Guarantor, if any.  Tenant, agrees to deliver, within ten (10) days after Landlord's request, its most recently prepared financial statement.  Tenant agrees to pay one-thirtieth of a monthly installment of Fixed Rent for each day it fails to deliver timely a statement as required by this Section.

20.3     Attornment, Subordination and Estoppel.  Tenant agrees to attorn to any successor to landlord's interest in the Premises or this Lease including mortgagees, foreclosure purchasers, grantees-in-lieu of foreclosure and their successors and assigns, and to recognize the successor as the Landlord under this Lease.  Tenant subordinates this Lease to any mortgage of Landlord's interest in the Premises and agrees that the holder of the mortgage will not be liable for any obligation of Landlord under this Lease except for the obligation not to disturb Tenant's possession of the Premises unless entitled to do so by a provision of this Lease.  Tenant, agrees to deliver to any person, within ten (10) days after Landlord's request, a written certificate on any matter concerning the Lease or the Premises or a document confirming the subordination of this Lease.  Tenant agrees to pay one-thirtieth of a monthly installment of Fixed Rent for each day it fails to deliver timely a document required by this Section.

20.4     Amendment.   No amendment, waiver termination or other change affecting this Lease is enforceable unless contained in a writing signed by the party against whom enforcement is sought.

20.5     Severability.  If a provision of this Lease is held invalid, this Lease will remain in effect and will be interpreted to achieve as validly as possible the result of the provision as written.

20.6     Cross-references.  If a cross-reference includes both a section number and a caption that are inconsistent, then the cross-reference will be interpreted as referring to the section with the same caption or subject matter.

20.7     Drafts; Execution and Delivery.  Landlord's delivery of an unexecuted lease agreement does not constitute an offer to lease or bind Landlord in any way.  This Lease Agreement is effective only upon execution by all of the parties.  Landlord and Tenant may execute separate counterparts of this Lease, upon reciprocal delivery of which this Lease shall be deemed fully executed and delivered.  The recording of this Lease or a Memorandum of this Lease by Tenant without Landlord's consent shall be a Default.

[The remainder of this page is left blank intentionally]

Southwoods Medical Lifeline June 30b, 2006

The persons signing this Lease on behalf of Tenant represent and warrant that they are authorized to do so and that no other person's authority or execution of this Lease is necessary in order to bind Tenant.

Executed on the Lease Date before:

Cocca Development, Ltd.:

By: Penn-Ohio Mortgage Co., its General Partner

By: _____
Anthony L. Cocca, its President

Lifeline Partners, Inc.

By: _____
Kathleen Burgdorf, its CEO

Southwoods Medical Lifeline June 30b, 2006

STATE OF OHIO                    )
                                 )SS:
COUNTY OF MAHONING               )

    Acknowledged before me by Anthony L. Cocca, President of Penn-Ohio Mortgage Co., General Partner of Cocca Development, Ltd., a limited partnership, on behalf of the limited partnership.

Date: ~~July~~ *August* 10, 2006

                    Notary Public

SCOTT LEWIS, Notary Public
State of Ohio
My Commission Expires June 25, 2007


STATE OF OHIO                    )
                                 )SS:
COUNTY OF MAHONING               )

    Acknowledged before me by Kathleen Burgdorf, CEO of Lifeline Partners, Inc., on behalf of the corporation.

Date: ~~July~~ *August* 10, 2006

                    Notary Public

STANLEY H. NUDELL, Notary Public
STATE OF OHIO
My Commission Expires May 16, 2009

– 14 –

In re **LifeLine Partners, Inc.** , Case No. _____
                                    Debtor

# SCHEDULE H - CODEBTORS

Provide the information requested concerning any person or entity, other than a spouse in a joint case, that is also liable on any debts listed by debtor in the schedules of creditors. Include all guarantors and co-signers. If the debtor resides or resided in a community property state, commonwealth, or territory (including Alaska, Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, or Wisconsin) within the eight year period immediately preceding the commencement of the case, identify the name of the debtor's spouse and of any former spouse who resides or resided with the debtor in the community property state, commonwealth, or territory. Include all names used by the nondebtor spouse during the eight years immediately preceding the commencement of this case. If a minor child is a codebtor or a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

☐ Check this box if debtor has no codebtors.

| NAME AND ADDRESS OF CODEBTOR | NAME AND ADDRESS OF CREDITOR |
|---|---|
| **Bruce Burgdorf**<br>**5692 Lamplighter**<br>**Girard, OH 44420** | **PNC Bank**<br>**PO Box 450**<br>**Youngstown, OH 44501** |
| **Bruce Burgdorf**<br>**5692 Lamplighter**<br>**Girard, OH 44420** | **First National Bank of Pennsylvania**<br>**Commercial Hermitage**<br>**1 Federal Plaza West**<br>**Youngstown, OH 44503** |
| **Bruce Burgdorf**<br>**5692 Lamplighter**<br>**Girard, OH 44420** | **Mahoning Valley Industrial**<br>**Loan Fund**<br>**4319 Belmont Ave.**<br>**Youngstown, OH 44505** |
| **Bruce Burgdorf**<br>**5692 Lamplighter**<br>**Girard, OH 44420** | **First National Bank of Pennsylvania**<br>**Commercial Hermitage**<br>**1 Federal Plaza West**<br>**Youngstown, OH 44503** |
| **Carlho Properties, LLC**<br>**5692 Lamplighter**<br>**Girard, OH 44420** | **PNC Bank**<br>**PO Box 450**<br>**Youngstown, OH 44501** |
| **Carlho Properties, LLC**<br>**5692 Lamplighter**<br>**Girard, OH 44420** | **First National Bank of Pennsylvania**<br>**Commercial Hermitage**<br>**1 Federal Plaza West**<br>**Youngstown, OH 44503** |
| **Carlho Properties, LLC**<br>**5692 Lamplighter**<br>**Girard, OH 44420** | **Mahoning Valley Industrial**<br>**Loan Fund**<br>**4319 Belmont Ave.**<br>**Youngstown, OH 44505** |
| **Carlho Properties, LLC**<br>**5692 Lamplighter**<br>**Girard, OH 44420** | **First National Bank of Pennsylvania**<br>**Commercial Hermitage**<br>**1 Federal Plaza West**<br>**Youngstown, OH 44503** |
| **Kathleen Burgdorf**<br>**5692 Lamplighter**<br>**Girard, OH 44420** | **PNC Bank**<br>**PO Box 450**<br>**Youngstown, OH 44501** |
| **Kathleen Burgdorf**<br>**5692 Lamplighter**<br>**Girard, OH 44420** | **First National Bank of Pennsylvania**<br>**Commercial Hermitage**<br>**1 Federal Plaza West**<br>**Youngstown, OH 44503** |

**2**
_____ continuation sheets attached to Schedule of Codebtors

In re __LifeLine Partners, Inc._____,    Case No. _____

                                    Debtor

# SCHEDULE H - CODEBTORS
### (Continuation Sheet)

| NAME AND ADDRESS OF CODEBTOR | NAME AND ADDRESS OF CREDITOR |
|---|---|
| **Kathleen Burgdorf**<br>**5692 Lamplighter**<br>**Girard, OH 44420** | **First National Bank of Pennsylvania**<br>**Commercial Hermitage**<br>**1 Federal Plaza West**<br>**Youngstown, OH 44503** |
| **Kathleen Burgdorf**<br>**5692 Lamplighter**<br>**Girard, OH 44420** | **Mahoning Valley Industrial**<br>**Loan Fund**<br>**4319 Belmont Ave.**<br>**Youngstown, OH 44505** |
| **Kathleen Burgdorf**<br>**5692 Lamplighter**<br>**Girard, OH 44420** | **First National Bank of Pennsylvania**<br>**Commercial Hermitage**<br>**1 Federal Plaza West**<br>**Youngstown, OH 44503** |
| **LifeLine Partners of Canton, Inc.**<br>**6520 Whipple Ave.**<br>**North Canton, OH 44720** | **First National Bank of Pennsylvania**<br>**Commercial Hermitage**<br>**1 Federal Plaza West**<br>**Youngstown, OH 44503** |
| **LifeLine Partners of Canton, Inc.**<br>**6520 Whipple Ave.**<br>**North Canton, OH 44720** | **First National Bank of Pennsylvania**<br>**Commercial Hermitage**<br>**1 Federal Plaza West**<br>**Youngstown, OH 44503** |
| **LifeLine Partners of Canton, Inc.**<br>**6520 Whipple Ave.**<br>**North Canton, OH 44720** | **First National Bank of Pennsylvania**<br>**Commercial Hermitage**<br>**1 Federal Plaza West**<br>**Youngstown, OH 44503** |
| **LifeLine Partners of Canton, Inc.**<br>**6520 Whipple Ave.**<br>**North Canton, OH 44720** | **First National Bank of Pennsylvania**<br>**Commercial Hermitage**<br>**1 Federal Plaza West**<br>**Youngstown, OH 44503** |
| **LifeLine Partners Sleep &**<br>**Diagnostic, Inc.**<br>**6520 Whipple Ave.**<br>**North Canton, OH 44720** | **First National Bank of Pennsylvania**<br>**Commercial Hermitage**<br>**1 Federal Plaza West**<br>**Youngstown, OH 44503** |
| **LifeLine Partners Sleep &**<br>**Diagnostic, Inc.**<br>**6520 Whipple Ave.**<br>**North Canton, OH 44720** | **First National Bank of Pennsylvania**<br>**Commercial Hermitage**<br>**1 Federal Plaza West**<br>**Youngstown, OH 44503** |
| **LifeLine Partners Sleep &**<br>**Diagnostic, Inc.**<br>**6520 Whipple Ave.**<br>**North Canton, OH 44720** | **First National Bank of Pennsylvania**<br>**Commercial Hermitage**<br>**1 Federal Plaza West**<br>**Youngstown, OH 44503** |

Sheet __1__ of __2__ continuation sheets attached to the Schedule of Codebtors

In re    **LifeLine Partners, Inc.** _____,    Case No. _____
                                          Debtor

# SCHEDULE H - CODEBTORS
(Continuation Sheet)

| NAME AND ADDRESS OF CODEBTOR | NAME AND ADDRESS OF CREDITOR |
| --- | --- |
| **LifeLine Partners Sleep & Diagnostic, Inc.**<br>**6520 Whipple Ave.**<br>**North Canton, OH 44720** | **First National Bank of Pennsylvania**<br>**Commercial Hermitage**<br>**1 Federal Plaza West**<br>**Youngstown, OH 44503** |

Sheet __2__ of __2__ continuation sheets attached to the Schedule of Codebtors

# United States Bankruptcy Court

## Northern District of Ohio

In re __LifeLine Partners, Inc.__       Case No. _____

Debtor(s)       Chapter   __11__

# DECLARATION CONCERNING DEBTOR'S SCHEDULES

### DECLARATION UNDER PENALTY OF PERJURY ON BEHALF OF CORPORATION OR PARTNERSHIP

      I, the President of the corporation named as debtor in this case, declare under penalty of perjury that I have read the foregoing summary and schedules, consisting of __69__ sheets, and that they are true and correct to the best of my knowledge, information, and belief.

Date __January 21, 2011__       Signature   __/s/ Kathleen Burgdorf__

                                       __Kathleen Burgdorf__
                                       __President__

*Penalty for making a false statement or concealing property:* Fine of up to $500,000 or imprisonment for up to 5 years or both. 18 U.S.C. §§ 152 and 3571.

# United States Bankruptcy Court
## Northern District of Ohio

In re   **LifeLine Partners, Inc.** _____     Case No. _____

                                      Debtor(s)          Chapter    **11**

# STATEMENT OF FINANCIAL AFFAIRS

This statement is to be completed by every debtor. Spouses filing a joint petition may file a single statement on which the information for both spouses is combined. If the case is filed under chapter 12 or chapter 13, a married debtor must furnish information for both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed. An individual debtor engaged in business as a sole proprietor, partner, family farmer, or self-employed professional, should provide the information requested on this statement concerning all such activities as well as the individual's personal affairs. To indicate payments, transfers and the like to minor children, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. § 112; Fed. R. Bankr. P. 1007(m).

Questions 1 - 18 are to be completed by all debtors. Debtors that are or have been in business, as defined below, also must complete Questions 19 - 25. **If the answer to an applicable question is "None," mark the box labeled "None."** If additional space is needed for the answer to any question, use and attach a separate sheet properly identified with the case name, case number (if known), and the number of the question.

## *DEFINITIONS*

*"In business."* A debtor is "in business" for the purpose of this form if the debtor is a corporation or partnership. An individual debtor is "in business" for the purpose of this form if the debtor is or has been, within six years immediately preceding the filing of this bankruptcy case, any of the following: an officer, director, managing executive, or owner of 5 percent or more of the voting or equity securities of a corporation; a partner, other than a limited partner, of a partnership; a sole proprietor or self-employed full-time or part-time. An individual debtor also may be "in business" for the purpose of this form if the debtor engages in a trade, business, or other activity, other than as an employee, to supplement income from the debtor's primary employment.

*"Insider."* The term "insider" includes but is not limited to: relatives of the debtor; general partners of the debtor and their relatives; corporations of which the debtor is an officer, director, or person in control; officers, directors, and any owner of 5 percent or more of the voting or equity securities of a corporate debtor and their relatives; affiliates of the debtor and insiders of such affiliates; any managing agent of the debtor. 11 U.S.C. § 101.

---

### 1. Income from employment or operation of business

None
☐

State the gross amount of income the debtor has received from employment, trade, or profession, or from operation of the debtor's business, including part-time activities either as an employee or in independent trade or business, from the beginning of this calendar year to the date this case was commenced. State also the gross amounts received during the **two years** immediately preceding this calendar year. (A debtor that maintains, or has maintained, financial records on the basis of a fiscal rather than a calendar year may report fiscal year income. Identify the beginning and ending dates of the debtor's fiscal year.) If a joint petition is filed, state income for each spouse separately. (Married debtors filing under chapter 12 or chapter 13 must state income of both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| AMOUNT | SOURCE |
|---|---|
| **$1,473,379.98** | **EST 2010 gross revenue** |
| **$1,959,495.00** | **2009 gross revenue** |
| **$1,767,665.00** | **2008 gross revenue** |

---

### 2. Income other than from employment or operation of business

None
■

State the amount of income received by the debtor other than from employment, trade, profession, or operation of the debtor's business during the **two years** immediately preceding the commencement of this case. Give particulars. If a joint petition is filed, state income for each spouse separately. (Married debtors filing under chapter 12 or chapter 13 must state income for each spouse whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

             AMOUNT             SOURCE

### 3. Payments to creditors

**None** ■

*Complete a. or b., as appropriate, and c.*

a. *Individual or joint debtor(s) with primarily consumer debts.* List all payments on loans, installment purchases of goods or services, and other debts to any creditor made within **90 days** immediately preceding the commencement of this case unless the aggregate value of all property that constitutes or is affected by such transfer is less than $600. Indicate with an (*) any payments that were made to a creditor on account of a domestic support obligation or as part of an alternative repayment schedule under a plan by an approved nonprofit budgeting and credit counseling agency. (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATES OF PAYMENTS | AMOUNT PAID | AMOUNT STILL OWING |
|---|---|---|---|

**None** ☐

b. *Debtor whose debts are not primarily consumer debts:* List each payment or other transfer to any creditor made within **90 days** immediately preceding the commencement of the case unless the aggregate value of all property that constitutes or is affected by such transfer is less than $5,850*. If the debtor is an individual, indicate with an asterisk (*) any payments that were made to a creditor on account of a domestic support obligation or as part of an alternative repayment schedule under a plan by an approved nonprofit budgeting and credit counseling agency. (Married debtors filing under chapter 12 or chapter 13 must include payments and other transfers by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATES OF PAYMENTS/ TRANSFERS | AMOUNT PAID OR VALUE OF TRANSFERS | AMOUNT STILL OWING |
|---|---|---|---|
| **See the attached register (Exhibit "G")** | | **$0.00** | **$0.00** |

**None** ☐

c. *All debtors:* List all payments made within **one year** immediately preceding the commencement of this case to or for the benefit of creditors who are or were insiders. (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR AND RELATIONSHIP TO DEBTOR | DATE OF PAYMENT | AMOUNT PAID | AMOUNT STILL OWING |
|---|---|---|---|
| **See the attached registers (Exhibit "H")** | | **$0.00** | **$0.00** |

### 4. Suits and administrative proceedings, executions, garnishments and attachments

**None** ■

a. List all suits and administrative proceedings to which the debtor is or was a party within **one year** immediately preceding the filing of this bankruptcy case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| CAPTION OF SUIT AND CASE NUMBER | NATURE OF PROCEEDING | COURT OR AGENCY AND LOCATION | STATUS OR DISPOSITION |
|---|---|---|---|

**None** ■

b. Describe all property that has been attached, garnished or seized under any legal or equitable process within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF PERSON FOR WHOSE BENEFIT PROPERTY WAS SEIZED | DATE OF SEIZURE | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|

---

* Amount subject to adjustment on 4/01/13, and every three years thereafter with respect to cases commenced on or after the date of adjustment.

**5. Repossessions, foreclosures and returns**

None ■

List all property that has been repossessed by a creditor, sold at a foreclosure sale, transferred through a deed in lieu of foreclosure or returned to the seller, within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR OR SELLER | DATE OF REPOSSESSION, FORECLOSURE SALE, TRANSFER OR RETURN | DESCRIPTION AND VALUE OF PROPERTY |
| --- | --- | --- |

**6. Assignments and receiverships**

None ■

a. Describe any assignment of property for the benefit of creditors made within **120 days** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include any assignment by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF ASSIGNEE | DATE OF ASSIGNMENT | TERMS OF ASSIGNMENT OR SETTLEMENT |
| --- | --- | --- |

None ■

b. List all property which has been in the hands of a custodian, receiver, or court-appointed official within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CUSTODIAN | NAME AND LOCATION OF COURT CASE TITLE & NUMBER | DATE OF ORDER | DESCRIPTION AND VALUE OF PROPERTY |
| --- | --- | --- | --- |

**7. Gifts**

None ■

List all gifts or charitable contributions made within **one year** immediately preceding the commencement of this case except ordinary and usual gifts to family members aggregating less than $200 in value per individual family member and charitable contributions aggregating less than $100 per recipient. (Married debtors filing under chapter 12 or chapter 13 must include gifts or contributions by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF PERSON OR ORGANIZATION | RELATIONSHIP TO DEBTOR, IF ANY | DATE OF GIFT | DESCRIPTION AND VALUE OF GIFT |
| --- | --- | --- | --- |

**8. Losses**

None ■

List all losses from fire, theft, other casualty or gambling within **one year** immediately preceding the commencement of this case **or since the commencement of this case.** (Married debtors filing under chapter 12 or chapter 13 must include losses by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| DESCRIPTION AND VALUE OF PROPERTY | DESCRIPTION OF CIRCUMSTANCES AND, IF LOSS WAS COVERED IN WHOLE OR IN PART BY INSURANCE, GIVE PARTICULARS | DATE OF LOSS |
| --- | --- | --- |

**9. Payments related to debt counseling or bankruptcy**

None ☐

List all payments made or property transferred by or on behalf of the debtor to any persons, including attorneys, for consultation concerning debt consolidation, relief under the bankruptcy law or preparation of the petition in bankruptcy within **one year** immediately preceding the commencement of this case.

| NAME AND ADDRESS OF PAYEE | DATE OF PAYMENT, NAME OF PAYOR IF OTHER THAN DEBTOR | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY |
| --- | --- | --- |
| **Suhar & Macejko, LLC** **29 E. Front St., 2nd Floor** **P.O. Box 1497** **Youngstown, OH 44501-1497** | **01/05/2011** | **$20,000.00 (inclusive of $1,039.00 filing fee)** |

**10. Other transfers**

None ■
a.  List all other property, other than property transferred in the ordinary course of the business or financial affairs of the debtor, transferred either absolutely or as security within **two years** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include transfers by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF TRANSFEREE, RELATIONSHIP TO DEBTOR | DATE | DESCRIBE PROPERTY TRANSFERRED AND VALUE RECEIVED |
|---|---|---|

None ■
b.  List all property transferred by the debtor within **ten years** immediately preceding the commencement of this case to a self-settled trust or similar device of which the debtor is a beneficiary.

| NAME OF TRUST OR OTHER DEVICE | DATE(S) OF TRANSFER(S) | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY OR DEBTOR'S INTEREST IN PROPERTY |
|---|---|---|

**11. Closed financial accounts**

None ■
List all financial accounts and instruments held in the name of the debtor or for the benefit of the debtor which were closed, sold, or otherwise transferred within **one year** immediately preceding the commencement of this case. Include checking, savings, or other financial accounts, certificates of deposit, or other instruments; shares and share accounts held in banks, credit unions, pension funds, cooperatives, associations, brokerage houses and other financial institutions. (Married debtors filing under chapter 12 or chapter 13 must include information concerning accounts or instruments held by or for either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF INSTITUTION | TYPE OF ACCOUNT, LAST FOUR DIGITS OF ACCOUNT NUMBER, AND AMOUNT OF FINAL BALANCE | AMOUNT AND DATE OF SALE OR CLOSING |
|---|---|---|

**12. Safe deposit boxes**

None ■
List each safe deposit or other box or depository in which the debtor has or had securities, cash, or other valuables within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include boxes or depositories of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF BANK OR OTHER DEPOSITORY | NAMES AND ADDRESSES OF THOSE WITH ACCESS TO BOX OR DEPOSITORY | DESCRIPTION OF CONTENTS | DATE OF TRANSFER OR SURRENDER, IF ANY |
|---|---|---|---|

**13. Setoffs**

None ■
List all setoffs made by any creditor, including a bank, against a debt or deposit of the debtor within **90 days** preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATE OF SETOFF | AMOUNT OF SETOFF |
|---|---|---|

**14. Property held for another person**

None ■
List all property owned by another person that the debtor holds or controls.

| NAME AND ADDRESS OF OWNER | DESCRIPTION AND VALUE OF PROPERTY | LOCATION OF PROPERTY |
|---|---|---|

**15. Prior address of debtor**

None
■

If the debtor has moved within **three years** immediately preceding the commencement of this case, list all premises which the debtor occupied during that period and vacated prior to the commencement of this case. If a joint petition is filed, report also any separate address of either spouse.

| ADDRESS | NAME USED | DATES OF OCCUPANCY |
|---|---|---|

**16. Spouses and Former Spouses**

None
■

If the debtor resides or resided in a community property state, commonwealth, or territory (including Alaska, Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, or Wisconsin) within **eight years** immediately preceding the commencement of the case, identify the name of the debtor's spouse and of any former spouse who resides or resided with the debtor in the community property state.

NAME

**17. Environmental Information.**

For the purpose of this question, the following definitions apply:

"Environmental Law" means any federal, state, or local statute or regulation regulating pollution, contamination, releases of hazardous or toxic substances, wastes or material into the air, land, soil, surface water, groundwater, or other medium, including, but not limited to, statutes or regulations regulating the cleanup of these substances, wastes, or material.

"Site" means any location, facility, or property as defined under any Environmental Law, whether or not presently or formerly owned or operated by the debtor, including, but not limited to, disposal sites.

"Hazardous Material" means anything defined as a hazardous waste, hazardous substance, toxic substance, hazardous material, pollutant, or contaminant or similar term under an Environmental Law

None
■

a. List the name and address of every site for which the debtor has received notice in writing by a governmental unit that it may be liable or potentially liable under or in violation of an Environmental Law. Indicate the governmental unit, the date of the notice, and, if known, the Environmental Law:

| SITE NAME AND ADDRESS | NAME AND ADDRESS OF GOVERNMENTAL UNIT | DATE OF NOTICE | ENVIRONMENTAL LAW |
|---|---|---|---|

None
■

b. List the name and address of every site for which the debtor provided notice to a governmental unit of a release of Hazardous Material. Indicate the governmental unit to which the notice was sent and the date of the notice.

| SITE NAME AND ADDRESS | NAME AND ADDRESS OF GOVERNMENTAL UNIT | DATE OF NOTICE | ENVIRONMENTAL LAW |
|---|---|---|---|

None
■

c. List all judicial or administrative proceedings, including settlements or orders, under any Environmental Law with respect to which the debtor is or was a party. Indicate the name and address of the governmental unit that is or was a party to the proceeding, and the docket number.

| NAME AND ADDRESS OF GOVERNMENTAL UNIT | DOCKET NUMBER | STATUS OR DISPOSITION |
|---|---|---|

#### 18 . Nature, location and name of business

None ■

a. *If the debtor is an individual*, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was an officer, director, partner, or managing executive of a corporation, partner in a partnership, sole proprietor, or was self-employed in a trade, profession, or other activity either full- or part-time within **six years** immediately preceding the commencement of this case, or in which the debtor owned 5 percent or more of the voting or equity securities within **six years** immediately preceding the commencement of this case.

*If the debtor is a partnership*, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity securities, within **six years** immediately preceding the commencement of this case.

*If the debtor is a corporation*, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity securities within **six years** immediately preceding the commencement of this case.

| NAME | LAST FOUR DIGITS OF SOCIAL-SECURITY OR OTHER INDIVIDUAL TAXPAYER-I.D. NO. (ITIN)/ COMPLETE EIN | ADDRESS | NATURE OF BUSINESS | BEGINNING AND ENDING DATES |
| --- | --- | --- | --- | --- |

None ■

b. Identify any business listed in response to subdivision a., above, that is "single asset real estate" as defined in 11 U.S.C. § 101.

| NAME | ADDRESS |
| --- | --- |

The following questions are to be completed by every debtor that is a corporation or partnership and by any individual debtor who is or has been, within **six years** immediately preceding the commencement of this case, any of the following: an officer, director, managing executive, or owner of more than 5 percent of the voting or equity securities of a corporation; a partner, other than a limited partner, of a partnership, a sole proprietor, or self-employed in a trade, profession, or other activity, either full- or part-time.

*(An individual or joint debtor should complete this portion of the statement **only** if the debtor is or has been in business, as defined above, within six years immediately preceding the commencement of this case. A debtor who has not been in business within those six years should go directly to the signature page.)*

#### 19. Books, records and financial statements

None ☐

a. List all bookkeepers and accountants who within **two years** immediately preceding the filing of this bankruptcy case kept or supervised the keeping of books of account and records of the debtor.

| NAME AND ADDRESS | DATES SERVICES RENDERED |
| --- | --- |
| **Steve Shelton, CPA, Inc.**<br>**540 Parmalee Ave.**<br>**#420**<br>**Youngstown, OH 44510** | **05/2010 - present** |
| **Hill Barth & King LLC**<br>**City Centre One, Suite 514**<br>**100 Federal Plaza East**<br>**Youngstown, OH 44503** | **2006 - 2010** |

None ■

b. List all firms or individuals who within the **two years** immediately preceding the filing of this bankruptcy case have audited the books of account and records, or prepared a financial statement of the debtor.

| NAME | ADDRESS | DATES SERVICES RENDERED |
| --- | --- | --- |

None ■

c. List all firms or individuals who at the time of the commencement of this case were in possession of the books of account and records of the debtor. If any of the books of account and records are not available, explain.

| NAME | ADDRESS |
| --- | --- |

None ■    d. List all financial institutions, creditors and other parties, including mercantile and trade agencies, to whom a financial statement was issued by the debtor within **two years** immediately preceding the commencement of this case.

NAME AND ADDRESS            DATE ISSUED

---

### 20. Inventories

None ■    a. List the dates of the last two inventories taken of your property, the name of the person who supervised the taking of each inventory, and the dollar amount and basis of each inventory.

DATE OF INVENTORY          INVENTORY SUPERVISOR         DOLLAR AMOUNT OF INVENTORY
(Specify cost, market or other basis)

None ■    b. List the name and address of the person having possession of the records of each of the two inventories reported in a., above.

DATE OF INVENTORY          NAME AND ADDRESSES OF CUSTODIAN OF INVENTORY
RECORDS

---

### 21 . Current Partners, Officers, Directors and Shareholders

None ■    a. If the debtor is a partnership, list the nature and percentage of partnership interest of each member of the partnership.

NAME AND ADDRESS          NATURE OF INTEREST         PERCENTAGE OF INTEREST

None ■    b. If the debtor is a corporation, list all officers and directors of the corporation, and each stockholder who directly or indirectly owns, controls, or holds 5 percent or more of the voting or equity securities of the corporation.

NAME AND ADDRESS          TITLE         NATURE AND PERCENTAGE
OF STOCK OWNERSHIP

---

### 22 . Former partners, officers, directors and shareholders

None ■    a. If the debtor is a partnership, list each member who withdrew from the partnership within **one year** immediately preceding the commencement of this case.

NAME          ADDRESS         DATE OF WITHDRAWAL

None ■    b. If the debtor is a corporation, list all officers, or directors whose relationship with the corporation terminated within **one year** immediately preceding the commencement of this case.

NAME AND ADDRESS          TITLE         DATE OF TERMINATION

---

### 23 . Withdrawals from a partnership or distributions by a corporation

None ■    If the debtor is a partnership or corporation, list all withdrawals or distributions credited or given to an insider, including compensation in any form, bonuses, loans, stock redemptions, options exercised and any other perquisite during **one year** immediately preceding the commencement of this case.

NAME & ADDRESS
OF RECIPIENT,
RELATIONSHIP TO DEBTOR          DATE AND PURPOSE
OF WITHDRAWAL         AMOUNT OF MONEY
OR DESCRIPTION AND
VALUE OF PROPERTY

---

### 24. Tax Consolidation Group.

None ■    If the debtor is a corporation, list the name and federal taxpayer identification number of the parent corporation of any consolidated group for tax purposes of which the debtor has been a member at any time within **six years** immediately preceding the commencement of the case.

NAME OF PARENT CORPORATION          TAXPAYER IDENTIFICATION NUMBER (EIN)

---

**25. Pension Funds.**

If the debtor is not an individual, list the name and federal taxpayer-identification number of any pension fund to which the debtor, as an employer, has been responsible for contributing at any time within **six years** immediately preceding the commencement of the case.

NAME OF PENSION FUND                                          TAXPAYER IDENTIFICATION NUMBER (EIN)

### DECLARATION UNDER PENALTY OF PERJURY ON BEHALF OF CORPORATION OR PARTNERSHIP

I declare under penalty of perjury that I have read the answers contained in the foregoing statement of financial affairs and any attachments thereto and that they are true and correct to the best of my knowledge, information and belief.

Date **January 21, 2011**                    Signature   **/s/ Kathleen Burgdorf**
                                                                             **Kathleen Burgdorf**
                                                                             **President**

[An individual signing on behalf of a partnership or corporation must indicate position or relationship to debtor.]

*Penalty for making a false statement: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571*

Software Copyright (c) 1996-2010 CCH INCORPORATED - www.bestcase.com                                          Best Case Bankruptcy



# LIFELINE PARTNERS, INC.
## Account Register
### For the Period From Oct 1, 2010 to Jan 31, 2011
### 1075 - Checking-Chase

Filter Criteria includes: Report order is by Date.

| Date | Trans No | Type | Trans Desc | Deposit Amt | Withdrawal Amt | Balance |
|------|----------|------|------------|-------------|----------------|---------|
| | | | Beginning Balance | | | |
| 12/31/10 | transfer Chase | Other | Transfer to new checkin | 27,000.00 | | 27,000.00 |
| 1/3/11 | | Deposit | Fees | 4,854.27 | | 31,854.27 |
| 1/3/11 | | Deposit | Fees | 2,530.78 | | 34,385.05 |
| 1/3/11 | | Deposit | Fees | 1,634.59 | | 36,019.64 |
| 1/3/11 | | Deposit | Misc | 266.68 | | 36,286.32 |
| 1/4/11 | | Deposit | Fees | 4,688.11 | | 40,974.43 |
| 1/5/11 | | Deposit | Reimbursement Canton | 20,000.00 | | 60,974.43 |
| 1/5/11 | 5773 | Withdraw | LifeLine Partners | | -3,599.77 | 64,574.20 |
| 1/5/11 | 999993 | Withdraw | Suhar & Macejko LLC | | 20,000.00 | 44,574.20 |
| 1/6/11 | | Deposit | Fees | 361.45 | | 44,935.65 |
| 1/6/11 | | Deposit | Fees | 616.76 | | 45,552.41 |
| 1/6/11 | | Deposit | Fees | 5,002.85 | | 50,555.26 |
| 1/6/11 | | Withdraw | Ohio Department of Tax | | 2,136.70 | 48,418.56 |
| 1/6/11 | | Withdraw | McDonald City Tax | | 341.41 | 48,077.15 |
| 1/6/11 | | Withdraw | Hubbard City Tax | | 132.74 | 47,944.41 |
| 1/6/11 | | Withdraw | RITA | | 309.18 | 47,635.23 |
| 1/6/11 | | Withdraw | Ohio Department of Job | | 146.90 | 47,488.33 |
| 1/6/11 | | Withdraw | EFTPS | | 50.58 | 47,437.75 |
| 1/6/11 | 999994 | Withdraw | First National Bank | | 3,884.00 | 43,553.75 |
| 1/6/11 | 999995 | Withdraw | First National Bank | | 357.75 | 43,196.00 |
| 1/6/11 | 999996 | Withdraw | FNB | | 893.15 | 42,302.85 |
| 1/6/11 | 999997 | Withdraw | First National Bank | | 267.10 | 42,035.75 |
| 1/11/11 | | Deposit | Fees | 2,602.93 | | 44,638.68 |
| 1/11/11 | | Deposit | Fees | 4,755.16 | | 49,393.84 |
| 1/11/11 | | Deposit | Fees | 3,138.01 | | 52,531.85 |
| 1/11/11 | | Deposit | Fees | 1,079.50 | | 53,611.35 |
| 1/11/11 | 1004 | Withdraw | Ronald L. Roman | | 800.00 | 52,811.35 |
| 1/11/11 | 1005 | Withdraw | WPS Tricare for Life | | 161.16 | 52,650.19 |
| 1/11/11 | 1006 | Withdraw | LifeLine Partners | | 16,249.16 | 36,401.03 |
| 1/11/11 | 1007 | Withdraw | LifeLine Partners | | 858.66 | 35,542.37 |
| 1/11/11 | 1008 | Withdraw | WPS Tricare for Life | | 16.90 | 35,525.47 |
| 1/12/11 | | Withdraw | Chase Card Services | | 107.00 | 35,418.47 |
| 1/12/11 | | Withdraw | Chase Card Services | | 400.00 | 35,018.47 |
| 1/12/11 | | Withdraw | Time Warner Cable | | 67.07 | 34,951.40 |
| 1/12/11 | | Withdraw | Time Warner | | 194.94 | 34,756.46 |
| 1/12/11 | | Withdraw | One Communications | | 155.13 | 34,601.33 |
| 1/12/11 | | Withdraw | One Communications | | 608.69 | 33,992.64 |
| 1/12/11 | | Withdraw | Ohio Edison | | 548.88 | 33,443.76 |
| 1/12/11 | | Withdraw | Ohio Edison-Belmont | | 28.47 | 33,415.29 |
| 1/12/11 | 1009 | Withdraw | Anthem BCBS | | 5,854.00 | 27,561.29 |
| 1/12/11 | 1010 | Withdraw | AT&T | | 841.94 | 26,719.35 |
| 1/12/11 | 1011 | Withdraw | Chase Auto Finance | | 192.44 | 26,526.91 |
| 1/12/11 | 1012 | Withdraw | Churchill Square Propert | | 650.00 | 25,876.91 |
| 1/12/11 | 1013 | Withdraw | Cocca Development | | 6,212.50 | 19,664.41 |
| 1/12/11 | 1014 | Withdraw | Dominion East Ohio | | 117.90 | 19,546.51 |
| 1/12/11 | 1015 | Withdraw | Dominion East Ohio | | 83.62 | 19,462.89 |
| 1/12/11 | 1016 | Withdraw | Chase Card Services | | 400.00 | 19,062.89 |
| 1/12/11 | 1016V | Withdraw | Chase Card Services | | -400.00 | 19,462.89 |
| 1/12/11 | 1017 | Withdraw | PNC Bank | | 795.49 | 18,667.40 |
| 1/12/11 | | Withdraw | EFTPS | | 6,825.79 | 11,841.61 |
| 1/14/11 | 1001 | Withdraw | Cash | | 180.00 | 11,661.61 |
| 1/14/11 | 1002 | Withdraw | Charles Sammarone, Jr. | | 400.00 | 11,261.61 |
| 1/14/11 | 1003 | Withdraw | Dr. Rich Lavi | | 50.00 | 11,211.61 |
| 1/17/11 | 1018 | Withdraw | LifeLine Partners Sleep | | 560.60 | 10,651.01 |
| 1/17/11 | 1019 | Withdraw | Tri-Anim | | 330.41 | 10,320.60 |
| 1/17/11 | nov-jan | Withdraw | Armstrong | | 379.98 | 9,940.62 |
| 1/18/11 | | Deposit | Fees | 3,815.34 | | 13,755.96 |
| 1/18/11 | | Deposit | Fees | 3,619.23 | | 17,375.19 |
| 1/18/11 | | Deposit | Fees | 1,475.15 | | 18,850.34 |
| 1/18/11 | | Withdraw | John Hancock | | 3,943.96 | 14,906.38 |
| 1/18/11 | 1003V | Withdraw | Dr. Rich Lavi | | -50.00 | 14,956.38 |
| 1/18/11 | 5774 | Withdraw | LifeLine Partners | | -6,121.69 | 21,078.07 |

# LIFELINE PARTNERS, INC.
## Account Register
### For the Period From Oct 1, 2010 to Jan 31, 2011
#### 1075 - Checking-Chase

Filter Criteria includes: Report order is by Date.

| Date | Trans No | Type | Trans Desc | Deposit Amt | Withdrawal Amt | Balance |
|------|----------|------|-----------|-------------|----------------|---------|
| 1/20/11 | 1020 | Withdraw | Cash | | 8,116.59 | 12,961.48 |
| 1/20/11 | 1021 | Withdraw | Cash | | 814.34 | 12,147.14 |
| | | | Total | 87,440.81 | 75,293.67 | |

# LIFELINE PARTNERS, INC.
## Account Register
## For the Period From Oct 1, 2010 to Jan 31, 2011
## 1100 - Savings

Filter Criteria includes: Report order is by Date.

| Date | Trans No | Type | Trans Desc | Deposit Amt | Withdrawal Amt | Balance |
|------|----------|------|------------|-------------|----------------|---------|
|          |          |       | Beginning Balance |        |           | 26,180.12 |
| 12/31/10 | 12/31/10 | Other | Interest Income | 19.58 |          | 26,199.70 |
| 12/31/10 | transfer | Other | transfer |        | 26,000.00 | 199.70 |
|          |          |       | Total | 19.58 | 26,000.00 |        |

11-40169-kw    Doc 1    FILED 01/21/11    ENTERED 01/21/11 16:14:54    Page 121 of 142

# LIFELINE PARTNERS, INC.
## Account Register
### For the Period From Oct 1, 2010 to Jan 31, 2011
#### 1050 - Checking-FNB

Filter Criteria includes: Report order is by Date.

| Date | Trans No | Type | Trans Desc | Deposit Amt | Withdrawal Amt | Balance |
|------|----------|------|-----------|-------------|----------------|---------|
| 10/1/10 | | | Beginning Balance | | | 44,717.39 |
| 10/1/10 | | Deposit | Fees | 3,741.62 | | 48,459.01 |
| 10/1/10 | | Deposit | Fees | 60.00 | | 48,519.01 |
| 10/1/10 | | Deposit | Fees | 184.20 | | 48,703.21 |
| 10/1/10 | | Withdraw | CarlHo Properties, LLC | | 4,000.00 | 44,703.21 |
| 10/1/10 | | Withdraw | First National Bank | | 346.21 | 44,357.00 |
| 10/1/10 | | Withdraw | FNB | | 893.15 | 43,463.85 |
| 10/1/10 | | Withdraw | First National Bank | | 267.10 | 43,196.75 |
| 10/1/10 | | Withdraw | First National Bank | | 3,884.00 | 39,312.75 |
| 10/4/10 | | Deposit | Fees | 5,479.80 | | 44,792.55 |
| 10/4/10 | | Deposit | Fees | 6,854.40 | | 51,646.95 |
| 10/4/10 | | Deposit | Fees | 110.00 | | 51,756.95 |
| 10/4/10 | | Withdraw | Postalia | | 100.00 | 51,656.95 |
| 10/4/10 | 10/04/10 svc | Other | bankcard merch fees | | 72.55 | 51,584.40 |
| 10/4/10 | 5641 | Withdraw | Cash | | 386.00 | 51,198.40 |
| 10/5/10 | | Deposit | Fees | 9,468.95 | | 60,667.35 |
| 10/5/10 | | Deposit | Fees | 40.00 | | 60,707.35 |
| 10/5/10 | | Deposit | Fees | 184.20 | | 60,891.55 |
| 10/5/10 | 5639 | Withdraw | Austintown Fitch Cheerle | | 50.00 | 60,841.55 |
| 10/5/10 | 5640 | Withdraw | Teasurer of State | | 50.00 | 60,791.55 |
| 10/6/10 | | Deposit | Misc | 107.94 | | 60,899.49 |
| 10/6/10 | | Deposit | Misc | 266.68 | | 61,166.17 |
| 10/6/10 | | Deposit | Misc | 40.00 | | 61,206.17 |
| 10/6/10 | | Deposit | Fees | 386.00 | | 61,592.17 |
| 10/6/10 | 5645 | Withdraw | Cash | | 50.00 | 61,542.17 |
| 10/7/10 | | Deposit | Fees | 50.00 | | 61,592.17 |
| 10/7/10 | | Deposit | Fees | 767.13 | | 62,359.30 |
| 10/7/10 | | Deposit | Fees | 3,169.77 | | 65,529.07 |
| 10/7/10 | | Withdraw | Chase Card Services | | 1,717.68 | 63,811.39 |
| 10/7/10 | | Withdraw | Ohio Edison | | 1,026.16 | 62,785.23 |
| 10/7/10 | | Withdraw | Ohio Edison-Belmont | | 105.95 | 62,679.28 |
| 10/7/10 | | Withdraw | Time Warner | | 194.96 | 62,484.32 |
| 10/7/10 | 5646 | Withdraw | DeVilbiss Healthcare | | 3,417.48 | 59,066.84 |
| 10/7/10 | 5654 | Withdraw | Anthem BCBS | | 6,782.26 | 52,284.58 |
| 10/7/10 | 5655 | Withdraw | AT&T | | 854.01 | 51,430.57 |
| 10/7/10 | 5656 | Withdraw | Community Home Medic | | 1,006.62 | 50,423.95 |
| 10/7/10 | 5658 | Withdraw | Francotyp-Postalia, Inc. | | 86.11 | 50,337.84 |
| 10/7/10 | 5659 | Withdraw | George Havas | | 877.43 | 49,460.41 |
| 10/7/10 | 5660 | Withdraw | Chase Card Services | | 11,708.28 | 37,752.13 |
| 10/7/10 | 5661 | Withdraw | Henry Schein Medical Sy | | 3,247.97 | 34,504.16 |
| 10/7/10 | 5662 | Withdraw | MVAP | | 47.05 | 34,457.11 |
| 10/7/10 | 5663 | Withdraw | One Communications | | 906.29 | 33,550.82 |
| 10/7/10 | 5664 | Withdraw | Phillips-Sekanick Archite | | 100.00 | 33,450.82 |
| 10/7/10 | 5665 | Withdraw | PNC Bank | | 795.49 | 32,655.33 |
| 10/7/10 | 5666 | Withdraw | Rhino Pest Control | | 144.13 | 32,511.20 |
| 10/7/10 | 5667 | Withdraw | Roth Bros. Inc. | | 185.00 | 32,326.20 |
| 10/7/10 | 5668 | Withdraw | Sams Club Discover | | 992.90 | 31,333.30 |
| 10/7/10 | 5669 | Withdraw | Tri-Anim | | 244.65 | 31,088.65 |
| 10/8/10 | | Deposit | Reimbursement Sleep | 23,044.00 | | 54,132.65 |
| 10/8/10 | | Deposit | Fees | 1,895.55 | | 56,028.20 |
| 10/8/10 | | Withdraw | EFTPS | | 11,593.56 | 44,434.64 |
| 10/8/10 | | Withdraw | FNB-HSA | | 678.66 | 43,755.98 |
| 10/8/10 | | Withdraw | John Hancock | | 3,722.65 | 40,033.33 |
| 10/8/10 | | Withdraw | Armstrong | | 124.66 | 39,908.67 |
| 10/8/10 | | Withdraw | Ohio Dept of Taxation | | 25.00 | 39,883.67 |
| 10/8/10 | 5642 | Withdraw | Christopher A. Bendel | | 456.00 | 39,427.67 |
| 10/8/10 | 5643 | Withdraw | Cash | | 150.00 | 39,277.67 |
| 10/8/10 | 5644 | Withdraw | Charles Sammarone | | 400.00 | 38,877.67 |
| 10/8/10 | DD100810-1 | Withdraw | Robert Aughenbaugh | | 120.00 | 38,757.67 |
| 10/8/10 | DD100810-10 | Withdraw | James Walters | | 150.00 | 38,607.67 |
| 10/8/10 | DD100810-11 | Withdraw | Donald Wasilewski | | 120.00 | 38,487.67 |
| 10/8/10 | DD100810-2 | Withdraw | Fernando G. Chaves, M | | 230.77 | 38,256.90 |
| 10/8/10 | DD100810-3 | Withdraw | Dr. Nicholas P. DePizzo, | | 230.77 | 38,026.13 |

# LIFELINE PARTNERS, INC.
## Account Register
### For the Period From Oct 1, 2010 to Jan 31, 2011
#### 1050 - Checking-FNB

Filter Criteria includes: Report order is by Date.

| Date | Trans No | Type | Trans Desc | Deposit Amt | Withdrawal Amt | Balance |
|------|----------|------|------------|-------------|----------------|---------|
| 10/8/10 | DD100810-4 | Withdraw | Eastern Ohio Pulmonary | | 650.00 | 37,376.13 |
| 10/8/10 | DD100810-5 | Withdraw | Lawrence Greene | | 200.00 | 37,176.13 |
| 10/8/10 | DD100810-6 | Withdraw | Fran Havas | | 400.00 | 36,776.13 |
| 10/8/10 | DD100810-7 | Withdraw | McGarry,Keith | | 120.00 | 36,656.13 |
| 10/8/10 | DD100810-8 | Withdraw | Edward E. Palumbo Jr | | 458.00 | 36,198.13 |
| 10/8/10 | DD100810-9 | Withdraw | Robert O. Reinhart | | 90.00 | 36,108.13 |
| 10/8/10 | DD10082010-1 | Withdraw | Lynette J. Antonell | | 1,095.32 | 35,012.81 |
| 10/8/10 | DD10082010-10 | Withdraw | Valerie L. Domitrovich | | 1,782.87 | 33,229.94 |
| 10/8/10 | DD10082010-11 | Withdraw | Nancy A. Greene | | 423.45 | 32,806.49 |
| 10/8/10 | DD10082010-12 | Withdraw | George Havas | | 1,047.75 | 31,758.74 |
| 10/8/10 | DD10082010-13 | Withdraw | Robert N. Havrilla, Jr | | 980.17 | 30,778.57 |
| 10/8/10 | DD10082010-15 | Withdraw | Lynn M. Hehr | | 386.04 | 30,392.53 |
| 10/8/10 | DD10082010-16 | Withdraw | Pamela A. Kenneally | | 855.24 | 29,537.29 |
| 10/8/10 | DD10082010-17 | Withdraw | Lisa A. Klempay | | 1,296.69 | 28,240.60 |
| 10/8/10 | DD10082010-18 | Withdraw | Dominic P. Koulianos | | 1,998.32 | 26,242.28 |
| 10/8/10 | DD10082010-2 | Withdraw | Heather L. Brown | | 1,027.91 | 25,214.37 |
| 10/8/10 | DD10082010-20 | Withdraw | Deborah A. Kupas | | 902.97 | 24,311.40 |
| 10/8/10 | DD10082010-21 | Withdraw | Justine C. Latiano | | 1,043.18 | 23,268.22 |
| 10/8/10 | DD10082010-22 | Withdraw | Scott E. Malachin | | 950.14 | 22,318.08 |
| 10/8/10 | DD10082010-23 | Withdraw | Linda A. McGarry | | 1,029.76 | 21,288.32 |
| 10/8/10 | DD10082010-24 | Withdraw | Wendy S. Mooney | | 1,502.68 | 19,785.64 |
| 10/8/10 | DD10082010-26 | Withdraw | Edwin Morales | | 666.70 | 19,118.94 |
| 10/8/10 | DD10082010-27 | Withdraw | Louis J. Nudo | | 952.06 | 18,166.88 |
| 10/8/10 | DD10082010-29 | Withdraw | Dominic M. Repasky | | 172.11 | 17,994.77 |
| 10/8/10 | DD10082010-3 | Withdraw | Bruce A. Burgdorf | | 1,509.37 | 16,485.40 |
| 10/8/10 | DD10082010-30 | Withdraw | Michael D. Repasky | | 147.54 | 16,337.86 |
| 10/8/10 | DD10082010-31 | Withdraw | Kathleen M. Rocco | | 700.43 | 15,637.43 |
| 10/8/10 | DD10082010-32 | Withdraw | Mary Beth Stride | | 643.52 | 14,993.91 |
| 10/8/10 | DD10082010-33 | Withdraw | Dianna M. Weaver | | 585.94 | 14,407.97 |
| 10/8/10 | DD10082010-34 | Withdraw | Kathleen Burgdorf | | 3,328.53 | 11,079.44 |
| 10/8/10 | DD10082010-35 | Withdraw | Louis J. Nudo | | 1,791.19 | 9,288.25 |
| 10/8/10 | DD10082010-4 | Withdraw | Kathleen Burgdorf | | 1,374.62 | 7,913.63 |
| 10/8/10 | DD10082010-5 | Withdraw | Deborah R. Christmas | | 1,049.73 | 6,863.90 |
| 10/8/10 | DD10082010-6 | Withdraw | Robert M. Clark | | 1,230.64 | 5,633.26 |
| 10/8/10 | DD10082010-7 | Withdraw | Gayle M. Davis | | 1,690.48 | 3,942.78 |
| 10/8/10 | DD10082010-9 | Withdraw | Mary M. Diana | | 571.93 | 3,370.85 |
| 10/11/10 | 5642V | Withdraw | Christopher A. Bendel | | -456.00 | 3,826.85 |
| 10/11/10 | 5672 | Withdraw | Christopher A. Bendel | | 417.00 | 3,409.85 |
| 10/11/10 | DD101110 | Withdraw | Donald Wasilewski | | 30.00 | 3,379.85 |
| 10/12/10 | | Deposit | Misc | 35.00 | | 3,414.85 |
| 10/12/10 | | Deposit | Fees | 5,127.99 | | 8,542.84 |
| 10/12/10 | | Deposit | Fees | 277.00 | | 8,819.84 |
| 10/12/10 | | Withdraw | Postalia | | 100.00 | 8,719.84 |
| 10/13/10 | | Deposit | Fees | 10,439.57 | | 19,159.41 |
| 10/13/10 | | Deposit | Fees | 92.46 | | 19,251.87 |
| 10/13/10 | | Deposit | Fees | 3,060.14 | | 22,312.01 |
| 10/13/10 | | Deposit | Fees | 3,432.87 | | 25,744.88 |
| 10/13/10 | | Withdraw | Ohio Department of Tax | | 2,350.27 | 23,394.61 |
| 10/13/10 | | Withdraw | RITA | | 243.98 | 23,150.63 |
| 10/13/10 | | Withdraw | Postalia | | 200.00 | 22,950.63 |
| 10/13/10 | | Withdraw | DeVilbiss Healthcare | | 275.00 | 22,675.63 |
| 10/14/10 | | Deposit | Fees | 69.30 | | 22,744.93 |
| 10/14/10 | | Deposit | Fees | 3,798.26 | | 26,543.19 |
| 10/14/10 | | Deposit | Fees | 35.00 | | 26,578.19 |
| 10/14/10 | | Deposit | Fees | 368.40 | | 26,946.59 |
| 10/15/10 | | Withdraw | Postalia | | 100.00 | 26,846.59 |
| 10/15/10 | 5673 | Withdraw | Cash | | 211.00 | 26,635.59 |
| 10/18/10 | | Deposit | Fees | 3,172.93 | | 29,808.52 |
| 10/18/10 | | Deposit | Fees | 95.00 | | 29,903.52 |
| 10/18/10 | 5674 | Withdraw | Treasurer, State of Ohio | | 300.00 | 29,603.52 |
| 10/18/10 | 5678 | Withdraw | The Emerald Health Net | | 844.91 | 28,758.61 |
| 10/19/10 | | Deposit | Fees | 8,631.10 | | 37,389.71 |
| 10/19/10 | | Deposit | Fees | 3,749.87 | | 41,139.58 |

# LIFELINE PARTNERS, INC.
## Account Register
### For the Period From Oct 1, 2010 to Jan 31, 2011
### 1050 - Checking-FNB

Filter Criteria includes: Report order is by Date.

| Date | Trans No | Type | Trans Desc | Deposit Amt | Withdrawal Amt | Balance |
|------|----------|------|-----------|------------|---------------|---------|
| 10/19/10 | | Withdraw | John Hancock | | 280.99 | 40,858.59 |
| 10/20/10 | | Deposit | Fees | 9,837.52 | | 50,696.11 |
| 10/21/10 | | Deposit | Fees | 245.00 | | 50,941.11 |
| 10/21/10 | | Deposit | Fees | 10.00 | | 50,951.11 |
| 10/21/10 | | Deposit | Fees | 1,849.31 | | 52,800.42 |
| 10/21/10 | | Deposit | Fees | 1,801.67 | | 54,602.09 |
| 10/21/10 | | Deposit | Fees | 20.00 | | 54,622.09 |
| 10/21/10 | 5679 | Withdraw | Signworks | | 308.85 | 54,313.24 |
| 10/22/10 | | Deposit | Fees | 2,225.79 | | 56,539.03 |
| 10/22/10 | | Deposit | Fees | 49.00 | | 56,588.03 |
| 10/22/10 | | Withdraw | EFTPS | | 10,390.93 | 46,197.10 |
| 10/22/10 | | Withdraw | John Hancock | | 3,686.80 | 42,510.30 |
| 10/22/10 | | Withdraw | FNB-HSA | | 528.66 | 41,981.64 |
| 10/22/10 | 10/22/10 | Other | returned deposit | | 32.00 | 41,949.64 |
| 10/22/10 | 5675 | Withdraw | Christopher A. Bendel | | 228.00 | 41,721.64 |
| 10/22/10 | 5676 | Withdraw | Cash | | 240.00 | 41,481.64 |
| 10/22/10 | 5677 | Withdraw | Charles Sammarone, Jr. | | 400.00 | 41,081.64 |
| 10/22/10 | DD102210-1 | Withdraw | Robert Aughenbaugh | | 150.00 | 40,931.64 |
| 10/22/10 | DD102210-10 | Withdraw | Donald Wasilewski | | 210.00 | 40,721.64 |
| 10/22/10 | DD102210-2 | Withdraw | Fernando G. Chaves, M | | 230.77 | 40,490.87 |
| 10/22/10 | DD102210-3 | Withdraw | Dr. Nicholas P. DePizzo, | | 230.77 | 40,260.10 |
| 10/22/10 | DD102210-4 | Withdraw | Eastern Ohio Pulmonary | | 650.00 | 39,610.10 |
| 10/22/10 | DD102210-5 | Withdraw | Lawrence Greene | | 200.00 | 39,410.10 |
| 10/22/10 | DD102210-6 | Withdraw | Fran Havas | | 400.00 | 39,010.10 |
| 10/22/10 | DD102210-7 | Withdraw | McGarry,Keith | | 90.00 | 38,920.10 |
| 10/22/10 | DD102210-8 | Withdraw | Edward E. Palumbo Jr | | 494.00 | 38,426.10 |
| 10/22/10 | DD102210-9 | Withdraw | Robert O. Reinhart | | 150.00 | 38,276.10 |
| 10/22/10 | DD10222010-1 | Withdraw | Lynette J. Antonell | | 982.65 | 37,293.45 |
| 10/22/10 | DD10222010-10 | Withdraw | Mary M. Diana | | 576.39 | 36,717.06 |
| 10/22/10 | DD10222010-11 | Withdraw | Valerie L. Domitrovich | | 1,782.87 | 34,934.19 |
| 10/22/10 | DD10222010-12 | Withdraw | Nancy A. Greene | | 423.45 | 34,510.74 |
| 10/22/10 | DD10222010-13 | Withdraw | George Havas | | 1,047.75 | 33,462.99 |
| 10/22/10 | DD10222010-14 | Withdraw | Robert N. Havrilla, Jr | | 910.59 | 32,552.40 |
| 10/22/10 | DD10222010-16 | Withdraw | Pamela A. Kenneally | | 872.41 | 31,679.99 |
| 10/22/10 | DD10222010-17 | Withdraw | Lisa A. Klempay | | 1,296.69 | 30,383.30 |
| 10/22/10 | DD10222010-18 | Withdraw | Dominic P. Koulianos | | 1,998.32 | 28,384.98 |
| 10/22/10 | DD10222010-2 | Withdraw | Heather L. Brown | | 1,030.88 | 27,354.10 |
| 10/22/10 | DD10222010-20 | Withdraw | Deborah A. Kupas | | 944.12 | 26,409.98 |
| 10/22/10 | DD10222010-21 | Withdraw | Justine C. Latiano | | 1,043.18 | 25,366.80 |
| 10/22/10 | DD10222010-22 | Withdraw | Scott E. Malachin | | 925.14 | 24,441.66 |
| 10/22/10 | DD10222010-23 | Withdraw | Linda A. McGarry | | 1,029.76 | 23,411.90 |
| 10/22/10 | DD10222010-24 | Withdraw | Wendy S. Mooney | | 1,502.68 | 21,909.22 |
| 10/22/10 | DD10222010-26 | Withdraw | Edwin Morales | | 638.86 | 21,270.36 |
| 10/22/10 | DD10222010-28 | Withdraw | Louis J. Nudo | | 952.06 | 20,318.30 |
| 10/22/10 | DD10222010-3 | Withdraw | Bruce A. Burgdorf | | 1,509.37 | 18,808.93 |
| 10/22/10 | DD10222010-30 | Withdraw | Dominic M. Repasky | | 151.49 | 18,657.44 |
| 10/22/10 | DD10222010-31 | Withdraw | Michael D. Repasky | | 294.26 | 18,363.18 |
| 10/22/10 | DD10222010-32 | Withdraw | Kathleen M. Rocco | | 726.70 | 17,636.48 |
| 10/22/10 | DD10222010-33 | Withdraw | Mary Beth Stride | | 631.65 | 17,004.83 |
| 10/22/10 | DD10222010-34 | Withdraw | Dianna M. Weaver | | 570.75 | 16,434.08 |
| 10/22/10 | DD10222010-35 | Withdraw | Kathleen Burgdorf | | 3,328.53 | 13,105.55 |
| 10/22/10 | DD10222010-4 | Withdraw | Kathleen Burgdorf | | 1,374.62 | 11,730.93 |
| 10/22/10 | DD10222010-5 | Withdraw | Deborah R. Christmas | | 454.84 | 11,276.09 |
| 10/22/10 | DD10222010-7 | Withdraw | Robert M. Clark | | 1,187.27 | 10,088.82 |
| 10/22/10 | DD10222010-8 | Withdraw | Gayle M. Davis | | 1,690.48 | 8,398.34 |
| 10/23/10 | | Withdraw | GMAC | | 499.40 | 7,898.94 |
| 10/25/10 | | Deposit | Fees | 7,644.90 | | 15,543.84 |
| 10/26/10 | | Deposit | Fees | 2,757.19 | | 18,301.03 |
| 10/26/10 | | Deposit | Fees | 4,449.11 | | 22,750.14 |
| 10/26/10 | | Deposit | Fees | 45.00 | | 22,795.14 |
| 10/26/10 | 5680 | Withdraw | Cash | | 245.00 | 22,550.14 |
| 10/27/10 | | Deposit | Fees | 8,608.08 | | 31,158.22 |
| 10/27/10 | | Deposit | Fees | 344.89 | | 31,503.11 |

# LIFELINE PARTNERS, INC.
## Account Register
## For the Period From Oct 1, 2010 to Jan 31, 2011
## 1050 - Checking-FNB

Filter Criteria includes: Report order is by Date.

| Date | Trans No | Type | Trans Desc | Deposit Amt | Withdrawal Amt | Balance |
|------|----------|------|------------|-------------|----------------|---------|
| 10/27/10 | | Deposit | Misc | 35.00 | | 31,538.11 |
| 10/28/10 | | Deposit | Reimbursement Sleep | 13,772.00 | | 45,310.11 |
| 10/28/10 | | Deposit | Fees | 4,710.20 | | 50,020.31 |
| 10/28/10 | | Withdraw | Armstrong | | 127.66 | 49,892.65 |
| 10/28/10 | | Withdraw | Chase Card Services | | 845.91 | 49,046.74 |
| 10/28/10 | 5681 | Withdraw | Anthem BCBS | | 5,659.18 | 43,387.56 |
| 10/28/10 | 5682 | Withdraw | Capital One Bk(USA), N | | 31.23 | 43,356.33 |
| 10/28/10 | 5683 | Withdraw | Capital One Bank (USA), | | 156.87 | 43,199.46 |
| 10/28/10 | 5684 | Withdraw | CarlHo Properties, LLC | | 1,305.27 | 41,894.19 |
| 10/28/10 | 5685 | Withdraw | Chase Auto Finance | | 192.44 | 41,701.75 |
| 10/28/10 | 5686 | Withdraw | Cocca Development | | 6,523.13 | 35,178.62 |
| 10/28/10 | 5687 | Withdraw | ComDoc, Inc. | | 249.70 | 34,928.92 |
| 10/28/10 | 5688 | Withdraw | Community Home Medic | | 102.48 | 34,826.44 |
| 10/28/10 | 5689 | Withdraw | Dominion East Ohio | | 24.44 | 34,802.00 |
| 10/28/10 | 5690 | Withdraw | Dominion East Ohio | | 17.45 | 34,784.55 |
| 10/28/10 | 5691 | Withdraw | Ivans | | 177.33 | 34,607.22 |
| 10/28/10 | 5692 | Withdraw | Liberty Church of God of | | 50.00 | 34,557.22 |
| 10/28/10 | 5693 | Withdraw | Patricia Sofranko | | 15.00 | 34,542.22 |
| 10/28/10 | 5694 | Withdraw | Town and Country | | 50.00 | 34,492.22 |
| 10/28/10 | 5695 | Withdraw | Zurich North America | | 190.46 | 34,301.76 |
| 10/29/10 | | Withdraw | Hubbard City Tax | | 140.64 | 34,161.12 |
| 10/29/10 | | Withdraw | McDonald City Tax | | 362.46 | 33,798.66 |
| 10/29/10 | | Withdraw | ETides | | 462.41 | 33,336.25 |
| 10/29/10 | | Withdraw | Ohio Department of Job | | 307.47 | 33,028.78 |
| 10/29/10 | | Withdraw | EFTPS | | 104.85 | 32,923.93 |
| 10/29/10 | | Withdraw | Ohio Dept of Taxation | | 1,067.00 | 31,856.93 |
| 10/29/10 | | Withdraw | Allied Waste Services #2 | | 89.75 | 31,767.18 |
| 10/29/10 | 10/29/10 svc | Other | analysis charge | | 132.42 | 31,634.76 |
| 11/1/10 | | Deposit | Fees | 10,268.30 | | 41,903.06 |
| 11/1/10 | | Deposit | Fees | 1,018.67 | | 42,921.73 |
| 11/1/10 | | Deposit | Misc | 266.68 | | 43,188.41 |
| 11/1/10 | | Deposit | Fees | 50.00 | | 43,238.41 |
| 11/1/10 | | Deposit | Fees | 2,302.56 | | 45,540.97 |
| 11/1/10 | | Withdraw | CarlHo Properties, LLC | | 4,000.00 | 41,540.97 |
| 11/1/10 | | Withdraw | First National Bank | | 357.75 | 41,183.22 |
| 11/1/10 | | Withdraw | First National Bank | | 267.10 | 40,916.12 |
| 11/1/10 | | Withdraw | First National Bank | | 3,884.00 | 37,032.12 |
| 11/1/10 | | Withdraw | FNB | | 893.15 | 36,138.97 |
| 11/2/10 | | Deposit | Fees | 858.86 | | 36,997.83 |
| 11/2/10 | | Deposit | Fees | 297.00 | | 37,294.83 |
| 11/2/10 | | Deposit | Fees | 3,872.80 | | 41,167.63 |
| 11/2/10 | 11/02 svc | Other | bankcard merch fees | | 66.37 | 41,101.26 |
| 11/3/10 | | Deposit | Fees | 10,315.38 | | 51,416.64 |
| 11/3/10 | | Deposit | Fees | 117.00 | | 51,533.64 |
| 11/4/10 | | Deposit | Reimbursement Canton | 6,391.66 | | 57,925.30 |
| 11/4/10 | | Deposit | Reimbursement Sleep | 7,151.00 | | 65,076.30 |
| 11/4/10 | | Deposit | Fees | 1,274.00 | | 66,350.30 |
| 11/4/10 | | Withdraw | Postalia | | 100.00 | 66,250.30 |
| 11/4/10 | 5699 | Withdraw | ABC fire extinguisher | | 129.47 | 66,120.83 |
| 11/4/10 | 5700 | Withdraw | ADT Security Services In | | 130.29 | 65,990.54 |
| 11/4/10 | 5701 | Withdraw | AT&T | | 826.02 | 65,164.52 |
| 11/4/10 | 5702 | Withdraw | Avalon Golf and Country | | 61.14 | 65,103.38 |
| 11/4/10 | 5703 | Withdraw | Cocca Development | | 6,212.50 | 58,890.88 |
| 11/4/10 | 5704 | Withdraw | ComDoc, Inc. | | 249.70 | 58,641.18 |
| 11/4/10 | 5705 | Withdraw | Community Home Medic | | 1,134.18 | 57,507.00 |
| 11/4/10 | 5707 | Withdraw | Ivans | | 97.45 | 57,409.55 |
| 11/4/10 | 5708 | Withdraw | Chase Card Services | | 4,376.94 | 53,032.61 |
| 11/4/10 | 5709 | Withdraw | Henry Schein Medical Sy | | 149.45 | 52,883.16 |
| 11/4/10 | 5710 | Withdraw | One Communications | | 158.47 | 52,724.69 |
| 11/4/10 | 5711 | Withdraw | One Communications | | 691.87 | 52,032.82 |
| 11/4/10 | 5712 | Withdraw | Sams Club Discover | | 1,407.50 | 50,625.32 |
| 11/4/10 | 5713 | Withdraw | Summit Fitness Fix | | 84.33 | 50,540.99 |
| 11/4/10 | 5714 | Withdraw | Town and Country | | 224.78 | 50,316.21 |

# LIFELINE PARTNERS, INC.
## Account Register
### For the Period From Oct 1, 2010 to Jan 31, 2011
### 1050 - Checking-FNB

Filter Criteria includes: Report order is by Date.

| Date | Trans No | Type | Trans Desc | Deposit Amt | Withdrawal Amt | Balance |
|------|----------|------|-----------|-------------|----------------|---------|
| 11/4/10 | 5715 | Withdraw | Tri-Anim | | 234.27 | 50,081.94 |
| 11/5/10 | | Deposit | Fees | 121.96 | | 50,203.90 |
| 11/5/10 | | Withdraw | EFTPS | | 11,057.08 | 39,146.82 |
| 11/5/10 | | Withdraw | FNB-HSA | | 628.66 | 38,518.16 |
| 11/5/10 | | Withdraw | John Hancock | | 3,669.21 | 34,848.95 |
| 11/5/10 | 5696 | Withdraw | Christopher A. Bendel | | 304.00 | 34,544.95 |
| 11/5/10 | 5697 | Withdraw | Cash | | 150.00 | 34,394.95 |
| 11/5/10 | 5698 | Withdraw | Charles Sammarone, Jr. | | 400.00 | 33,994.95 |
| 11/5/10 | DD110510-1 | Withdraw | Robert Aughenbaugh | | 180.00 | 33,814.95 |
| 11/5/10 | DD110510-10 | Withdraw | James Walters | | 180.00 | 33,634.95 |
| 11/5/10 | DD110510-11 | Withdraw | Donald Wasilewski | | 180.00 | 33,454.95 |
| 11/5/10 | DD110510-2 | Withdraw | Fernando G. Chaves, M | | 230.77 | 33,224.18 |
| 11/5/10 | DD110510-3 | Withdraw | Dr. Nicholas P. DePizzo, | | 230.77 | 32,993.41 |
| 11/5/10 | DD110510-4 | Withdraw | Eastern Ohio Pulmonary | | 650.00 | 32,343.41 |
| 11/5/10 | DD110510-5 | Withdraw | Lawrence Greene | | 250.00 | 32,093.41 |
| 11/5/10 | DD110510-6 | Withdraw | Fran Havas | | 400.00 | 31,693.41 |
| 11/5/10 | DD110510-7 | Withdraw | McGarry,Keith | | 60.00 | 31,633.41 |
| 11/5/10 | DD110510-8 | Withdraw | Edward E. Palumbo Jr | | 452.00 | 31,181.41 |
| 11/5/10 | DD110510-9 | Withdraw | Robert O. Reinhart | | 120.00 | 31,061.41 |
| 11/5/10 | DD11052010-1 | Withdraw | Lynette J. Antonell | | 681.61 | 30,379.80 |
| 11/5/10 | DD11052010-10 | Withdraw | Mary M. Diana | | 578.63 | 29,801.17 |
| 11/5/10 | DD11052010-11 | Withdraw | Valerie L. Domitrovich | | 1,782.87 | 28,018.30 |
| 11/5/10 | DD11052010-12 | Withdraw | Nancy A. Greene | | 323.42 | 27,694.88 |
| 11/5/10 | DD11052010-13 | Withdraw | George Havas | | 1,047.75 | 26,647.13 |
| 11/5/10 | DD11052010-14 | Withdraw | Robert N. Havrilla, Jr | | 910.59 | 25,736.54 |
| 11/5/10 | DD11052010-16 | Withdraw | Lynn M. Hehr | | 408.49 | 25,328.05 |
| 11/5/10 | DD11052010-17 | Withdraw | Pamela A. Kenneally | | 557.49 | 24,770.56 |
| 11/5/10 | DD11052010-18 | Withdraw | Lisa A. Klempay | | 1,220.85 | 23,549.71 |
| 11/5/10 | DD11052010-19 | Withdraw | Dominic P. Koulianos | | 1,998.32 | 21,551.39 |
| 11/5/10 | DD11052010-2 | Withdraw | Heather L. Brown | | 1,033.84 | 20,517.55 |
| 11/5/10 | DD11052010-21 | Withdraw | Deborah A. Kupas | | 1,082.81 | 19,434.74 |
| 11/5/10 | DD11052010-22 | Withdraw | Justine C. Latiano | | 1,043.18 | 18,391.56 |
| 11/5/10 | DD11052010-23 | Withdraw | Scott E. Malachin | | 922.01 | 17,469.55 |
| 11/5/10 | DD11052010-24 | Withdraw | Linda A. McGarry | | 1,038.87 | 16,430.68 |
| 11/5/10 | DD11052010-25 | Withdraw | Wendy S. Mooney | | 1,451.09 | 14,979.59 |
| 11/5/10 | DD11052010-27 | Withdraw | Edwin Morales | | 659.06 | 14,320.53 |
| 11/5/10 | DD11052010-29 | Withdraw | Louis J. Nudo | | 952.06 | 13,368.47 |
| 11/5/10 | DD11052010-3 | Withdraw | Bruce A. Burgdorf | | 1,509.37 | 11,859.10 |
| 11/5/10 | DD11052010-31 | Withdraw | Dominic M. Repasky | | 103.33 | 11,755.77 |
| 11/5/10 | DD11052010-32 | Withdraw | Michael D. Repasky | | 147.54 | 11,608.23 |
| 11/5/10 | DD11052010-33 | Withdraw | Kathleen M. Rocco | | 744.25 | 10,863.98 |
| 11/5/10 | DD11052010-34 | Withdraw | Mary Beth Stride | | 596.84 | 10,267.14 |
| 11/5/10 | DD11052010-35 | Withdraw | Dianna M. Weaver | | 555.57 | 9,711.57 |
| 11/5/10 | DD11052010-36 | Withdraw | Carly A. Burgdorf | | 27.51 | 9,684.06 |
| 11/5/10 | DD11052010-37 | Withdraw | Kathleen Burgdorf | | 3,328.53 | 6,355.53 |
| 11/5/10 | DD11052010-38 | Withdraw | Erika R. Klempay | | 11.01 | 6,344.52 |
| 11/5/10 | DD11052010-39 | Withdraw | Louis J. Nudo | | 1,652.84 | 4,691.68 |
| 11/5/10 | DD11052010-4 | Withdraw | Kathleen Burgdorf | | 1,374.62 | 3,317.06 |
| 11/5/10 | DD11052010-5 | Withdraw | Deborah R. Christmas | | 812.90 | 2,504.16 |
| 11/5/10 | DD11052010-7 | Withdraw | Robert M. Clark | | 1,201.38 | 1,302.78 |
| 11/5/10 | DD11052010-8 | Withdraw | Gayle M. Davis | | 1,690.48 | -387.70 |
| 11/8/10 | | Deposit | Fees | 4,316.10 | | 3,928.40 |
| 11/8/10 | | Deposit | Fees | 4,643.42 | | 8,571.82 |
| 11/8/10 | | Deposit | Fees | 41.34 | | 8,613.16 |
| 11/9/10 | | Withdraw | Harland Check | | 68.71 | 8,544.45 |
| 11/9/10 | | Withdraw | Ohio Edison-Belmont | | 116.66 | 8,427.79 |
| 11/10/10 | | Deposit | Fees | 4,901.01 | | 13,328.80 |
| 11/10/10 | | Deposit | Misc | 107.94 | | 13,436.74 |
| 11/10/10 | | Deposit | Fees | 8,368.31 | | 21,805.05 |
| 11/10/10 | | Deposit | Fees | 65.00 | | 21,870.05 |
| 11/11/10 | | Withdraw | Ohio Department of Tax | | 2,406.03 | 19,464.02 |
| 11/11/10 | | Withdraw | RITA | | 240.82 | 19,223.20 |
| 11/11/10 | | Withdraw | Time Warner | | 215.49 | 19,007.71 |

# LIFELINE PARTNERS, INC.
## Account Register
### For the Period From Oct 1, 2010 to Jan 31, 2011
#### 1050 - Checking-FNB

Filter Criteria includes: Report order is by Date.

| Date | Trans No | Type | Trans Desc | Deposit Amt | Withdrawal Amt | Balance |
|------|----------|------|-----------|-------------|----------------|---------|
| 11/11/10 | 5716 | Withdraw | Churchill Square Propert | | 650.00 | 18,357.71 |
| 11/11/10 | 5717 | Withdraw | Cash | | 297.00 | 18,060.71 |
| 11/12/10 | | Deposit | Fees | 1,135.73 | | 19,196.44 |
| 11/12/10 | | Deposit | Fees | 698.00 | | 19,894.44 |
| 11/15/10 | | Deposit | Fees | 1,645.41 | | 21,539.85 |
| 11/15/10 | | Deposit | Fees | 4,311.62 | | 25,851.47 |
| 11/15/10 | | Deposit | Fees | 34.00 | | 25,885.47 |
| 11/15/10 | | Deposit | Fees | 45.00 | | 25,930.47 |
| 11/15/10 | | Withdraw | Postalia | | 100.00 | 25,830.47 |
| 11/15/10 | 5718 | Withdraw | Cash | | 698.00 | 25,132.47 |
| 11/16/10 | | Deposit | Fees | 9,371.62 | | 34,504.09 |
| 11/17/10 | | Deposit | Fees | 5,239.97 | | 39,744.06 |
| 11/17/10 | | Deposit | Reimbursement Canton | 6,697.00 | | 46,441.06 |
| 11/17/10 | | Deposit | Reimbursement Sleep | 7,022.00 | | 53,463.06 |
| 11/17/10 | | Deposit | Fees | 45.00 | | 53,508.06 |
| 11/17/10 | | Withdraw | Ohio Edison | | 546.50 | 52,961.56 |
| 11/17/10 | | Withdraw | Allied Waste Services #2 | | 91.25 | 52,870.31 |
| 11/17/10 | 5719 | Withdraw | Cash | | 3,500.00 | 49,370.31 |
| 11/17/10 | 5720 | Withdraw | Beard Pension Services | | 1,185.00 | 48,185.31 |
| 11/17/10 | 5721 | Withdraw | City of Girard Utility Bills | | 27.96 | 48,157.35 |
| 11/17/10 | 5722 | Withdraw | City of Girard Utility Bills | | 74.56 | 48,082.79 |
| 11/17/10 | 5723 | Withdraw | Community Home Medic | | 960.72 | 47,122.07 |
| 11/17/10 | 5725 | Withdraw | Dominion East Ohio | | 68.68 | 47,053.39 |
| 11/17/10 | 5726 | Withdraw | George Havas | | 877.43 | 46,175.96 |
| 11/17/10 | 5727 | Withdraw | One Communications | | 156.83 | 46,019.13 |
| 11/17/10 | 5728 | Withdraw | PNC Bank | | 795.49 | 45,223.64 |
| 11/17/10 | 5729 | Withdraw | Print Factory | | 20.00 | 45,203.64 |
| 11/17/10 | 5730 | Withdraw | United Financial Casulty | | 2,600.75 | 42,602.89 |
| 11/17/10 | 5731 | Withdraw | Wendy Mooney | | 25.00 | 42,577.89 |
| 11/17/10 | 5735 | Withdraw | Liberty Schools | | 90.00 | 42,487.89 |
| 11/18/10 | | Deposit | Fees | 63.93 | | 42,551.82 |
| 11/18/10 | 5736 | Withdraw | Bruce Burgdorf | | 100.00 | 42,451.82 |
| 11/18/10 | 5737 | Withdraw | Cash | | 36.78 | 42,415.04 |
| 11/19/10 | | Deposit | Fees | 2,113.60 | | 44,528.64 |
| 11/19/10 | | Deposit | Fees | 142.32 | | 44,670.96 |
| 11/19/10 | 5732 | Withdraw | Christopher A. Bendel | | 266.00 | 44,404.96 |
| 11/19/10 | 5733 | Withdraw | Cash | | 240.00 | 44,164.96 |
| 11/19/10 | 5734 | Withdraw | Charles Sammarone, Jr. | | 400.00 | 43,764.96 |
| 11/19/10 | DD111910-1 | Withdraw | Robert Aughenbaugh | | 150.00 | 43,614.96 |
| 11/19/10 | DD111910-10 | Withdraw | James Walters | | 150.00 | 43,464.96 |
| 11/19/10 | DD111910-11 | Withdraw | Donald Wasilewski | | 180.00 | 43,284.96 |
| 11/19/10 | DD111910-2 | Withdraw | Fernando G. Chaves, M | | 230.77 | 43,054.19 |
| 11/19/10 | DD111910-3 | Withdraw | Dr. Nicholas P. DePizzo, | | 230.77 | 42,823.42 |
| 11/19/10 | DD111910-4 | Withdraw | Eastern Ohio Pulmonary | | 650.00 | 42,173.42 |
| 11/19/10 | DD111910-5 | Withdraw | Lawrence Greene | | 200.00 | 41,973.42 |
| 11/19/10 | DD111910-6 | Withdraw | Fran Havas | | 400.00 | 41,573.42 |
| 11/19/10 | DD111910-7 | Withdraw | McGarry,Keith | | 60.00 | 41,513.42 |
| 11/19/10 | DD111910-8 | Withdraw | Edward E. Palumbo Jr | | 480.00 | 41,033.42 |
| 11/19/10 | DD111910-9 | Withdraw | Robert O. Reinhart | | 120.00 | 40,913.42 |
| 11/19/10 | DD111192010-1 | Withdraw | Lynette J. Antonell | | 675.94 | 40,237.48 |
| 11/19/10 | DD11192010-10 | Withdraw | Nancy A. Greene | | 314.22 | 39,923.26 |
| 11/19/10 | DD11192010-11 | Withdraw | George Havas | | 1,047.75 | 38,875.51 |
| 11/19/10 | DD11192010-12 | Withdraw | Robert N. Havrilla, Jr | | 908.02 | 37,967.49 |
| 11/19/10 | DD11192010-14 | Withdraw | Lynn M. Hehr | | 279.88 | 37,687.61 |
| 11/19/10 | DD11192010-15 | Withdraw | Pamela A. Kenneally | | 712.96 | 36,974.65 |
| 11/19/10 | DD11192010-16 | Withdraw | Lisa A. Klempay | | 1,263.03 | 35,711.62 |
| 11/19/10 | DD11192010-17 | Withdraw | Dominic P. Koulianos | | 1,998.32 | 33,713.30 |
| 11/19/10 | DD11192010-19 | Withdraw | Deborah A. Kupas | | 1,123.75 | 32,589.55 |
| 11/19/10 | DD11192010-2 | Withdraw | Heather L. Brown | | 1,021.95 | 31,567.60 |
| 11/19/10 | DD11192010-20 | Withdraw | Justine C. Latiano | | 1,043.18 | 30,524.42 |
| 11/19/10 | DD11192010-21 | Withdraw | Scott E. Malachin | | 987.63 | 29,536.79 |
| 11/19/10 | DD11192010-22 | Withdraw | Linda A. McGarry | | 1,029.76 | 28,507.03 |
| 11/19/10 | DD11192010-23 | Withdraw | Wendy S. Mooney | | 1,563.64 | 26,943.39 |

# LIFELINE PARTNERS, INC.
## Account Register
### For the Period From Oct 1, 2010 to Jan 31, 2011
### 1050 - Checking-FNB

Filter Criteria includes: Report order is by Date.

| Date | Trans No | Type | Trans Desc | Deposit Amt | Withdrawal Amt | Balance |
|------|----------|------|-----------|------------:|---------------:|--------:|
| 11/19/10 | DD11192010-25 | Withdraw | Edwin Morales | | 680.27 | 26,263.12 |
| 11/19/10 | DD11192010-27 | Withdraw | Louis J. Nudo | | 952.06 | 25,311.06 |
| 11/19/10 | DD11192010-29 | Withdraw | Dominic M. Repasky | | 663.75 | 24,647.31 |
| 11/19/10 | DD11192010-3 | Withdraw | Deborah R. Christmas | | 875.40 | 23,771.91 |
| 11/19/10 | DD11192010-30 | Withdraw | Kathleen M. Rocco | | 742.04 | 23,029.87 |
| 11/19/10 | DD11192010-31 | Withdraw | Mary Beth Stride | | 607.90 | 22,421.97 |
| 11/19/10 | DD11192010-32 | Withdraw | Dianna M. Weaver | | 560.62 | 21,861.35 |
| 11/19/10 | DD11192010-5 | Withdraw | Robert M. Clark | | 1,246.81 | 20,614.54 |
| 11/19/10 | DD11192010-6 | Withdraw | Gayle M. Davis | | 1,690.48 | 18,924.06 |
| 11/19/10 | DD11192010-8 | Withdraw | Mary M. Diana | | 580.85 | 18,343.21 |
| 11/19/10 | DD11192010-9 | Withdraw | Valerie L. Domitrovich | | 1,782.87 | 16,560.34 |
| 11/22/10 | | Deposit | Fees | 3,995.71 | | 20,556.05 |
| 11/22/10 | | Deposit | Fees | 6,146.59 | | 26,702.64 |
| 11/22/10 | | Deposit | Fees | 704.05 | | 27,406.69 |
| 11/22/10 | | Deposit | Fees | 45.00 | | 27,451.69 |
| 11/22/10 | | Withdraw | John Hancock | | 2,737.93 | 24,713.76 |
| 11/22/10 | | Withdraw | FNB-HSA | | 278.66 | 24,435.10 |
| 11/22/10 | | Withdraw | EFTPS | | 7,873.99 | 16,561.11 |
| 11/23/10 | | Deposit | Fees | 2,704.02 | | 19,265.13 |
| 11/23/10 | | Withdraw | GMAC | | 499.40 | 18,765.73 |
| 11/23/10 | | Withdraw | Postalia | | 100.00 | 18,665.73 |
| 11/24/10 | | Deposit | Fees | 1,539.52 | | 20,205.25 |
| 11/24/10 | | Deposit | Fees | 361.00 | | 20,566.25 |
| 11/24/10 | | Deposit | Fees | 9,714.69 | | 30,280.94 |
| 11/24/10 | | Deposit | Fees | 50.00 | | 30,330.94 |
| 11/29/10 | | Deposit | Fees | 3,546.77 | | 33,877.71 |
| 11/29/10 | | Deposit | Fees | 4,617.99 | | 38,495.70 |
| 11/29/10 | | Deposit | Fees | 50.00 | | 38,545.70 |
| 11/29/10 | 5739 | Withdraw | Modern Builders Supplie | | 485.33 | 38,060.37 |
| 11/30/10 | | Deposit | Fees | 2,343.87 | | 40,404.24 |
| 11/30/10 | | Deposit | Fees | 425.73 | | 40,829.97 |
| 11/30/10 | svc | Other | service charge | | 79.29 | 40,750.68 |
| 12/1/10 | | Deposit | Fees | 9,212.35 | | 49,963.03 |
| 12/1/10 | | Deposit | Fees | 34.00 | | 49,997.03 |
| 12/1/10 | | Withdraw | CarlHo Properties, LLC | | 4,000.00 | 45,997.03 |
| 12/1/10 | | Withdraw | First National Bank | | 3,884.00 | 42,113.03 |
| 12/1/10 | | Withdraw | First National Bank | | 346.21 | 41,766.82 |
| 12/1/10 | | Withdraw | FNB | | 893.15 | 40,873.67 |
| 12/1/10 | | Withdraw | First National Bank | | 267.10 | 40,606.57 |
| 12/2/10 | | Deposit | Misc | 266.68 | | 40,873.25 |
| 12/2/10 | | Deposit | Fees | 766.49 | | 41,639.74 |
| 12/2/10 | | Withdraw | Sage Payment Solutions | | 76.34 | 41,563.40 |
| 12/2/10 | 5743 | Withdraw | Ohio Dept of Job & Fami | | 630.72 | 40,932.68 |
| 12/3/10 | | Deposit | Fees | 25.00 | | 40,957.68 |
| 12/3/10 | | Deposit | Fees | 255.66 | | 41,213.34 |
| 12/3/10 | | Withdraw | FNB-HSA | | 278.66 | 40,934.68 |
| 12/3/10 | 5740 | Withdraw | Christopher A. Bendel | | 114.00 | 40,820.68 |
| 12/3/10 | 5741 | Withdraw | Cash | | 180.00 | 40,640.68 |
| 12/3/10 | 5742 | Withdraw | Charles Sammarone, Jr. | | 400.00 | 40,240.68 |
| 12/3/10 | DD120310-1 | Withdraw | Robert Aughenbaugh | | 150.00 | 40,090.68 |
| 12/3/10 | DD120310-10 | Withdraw | Robert O. Reinhart | | 150.00 | 39,940.68 |
| 12/3/10 | DD120310-11 | Withdraw | James Walters | | 180.00 | 39,760.68 |
| 12/3/10 | DD120310-2 | Withdraw | Christopher A. Bendel | | 114.00 | 39,646.68 |
| 12/3/10 | DD120310-2V | Withdraw | Christopher A. Bendel | | -114.00 | 39,760.68 |
| 12/3/10 | DD120310-3 | Withdraw | Fernando G. Chaves, M | | 230.77 | 39,529.91 |
| 12/3/10 | DD120310-4 | Withdraw | Dr. Nicholas P. DePizzo, | | 230.77 | 39,299.14 |
| 12/3/10 | DD120310-5 | Withdraw | Eastern Ohio Pulmonary | | 650.00 | 38,649.14 |
| 12/3/10 | DD120310-6 | Withdraw | Lawrence Greene | | 250.00 | 38,399.14 |
| 12/3/10 | DD120310-7 | Withdraw | Fran Havas | | 400.00 | 37,999.14 |
| 12/3/10 | DD120310-8 | Withdraw | McGarry,Keith | | 30.00 | 37,969.14 |
| 12/3/10 | DD120310-9 | Withdraw | Edward E. Palumbo Jr | | 396.00 | 37,573.14 |
| 12/3/10 | DD12032010-1 | Withdraw | Heather L. Brown | | 1,042.77 | 36,530.37 |
| 12/3/10 | DD12032010-10 | Withdraw | Valerie L. Domitrovich | | 1,782.87 | 34,747.50 |

# LIFELINE PARTNERS, INC.
## Account Register
### For the Period From Oct 1, 2010 to Jan 31, 2011
#### 1050 - Checking-FNB

Filter Criteria includes: Report order is by Date.

| Date | Trans No | Type | Trans Desc | Deposit Amt | Withdrawal Amt | Balance |
|------|----------|------|-----------|-------------|----------------|---------|
| 12/3/10 | DD12032010-11 | Withdraw | Nancy A. Greene | | 323.42 | 34,424.08 |
| 12/3/10 | DD12032010-12 | Withdraw | George Havas | | 1,047.75 | 33,376.33 |
| 12/3/10 | DD12032010-13 | Withdraw | Robert N. Havrilla, Jr | | 910.59 | 32,465.74 |
| 12/3/10 | DD12032010-15 | Withdraw | Pamela A. Kenneally | | 657.92 | 31,807.82 |
| 12/3/10 | DD12032010-16 | Withdraw | Lisa A. Klempay | | 1,233.51 | 30,574.31 |
| 12/3/10 | DD12032010-17 | Withdraw | Dominic P. Koulianos | | 1,998.32 | 28,575.99 |
| 12/3/10 | DD12032010-19 | Withdraw | Deborah A. Kupas | | 1,215.66 | 27,360.33 |
| 12/3/10 | DD12032010-2 | Withdraw | Bruce A. Burgdorf | | 1,771.23 | 25,589.10 |
| 12/3/10 | DD12032010-20 | Withdraw | Justine C. Latiano | | 1,075.61 | 24,513.49 |
| 12/3/10 | DD12032010-21 | Withdraw | Scott E. Malachin | | 984.51 | 23,528.98 |
| 12/3/10 | DD12032010-22 | Withdraw | Linda A. McGarry | | 1,075.63 | 22,453.35 |
| 12/3/10 | DD12032010-23 | Withdraw | Wendy S. Mooney | | 1,584.11 | 20,869.24 |
| 12/3/10 | DD12032010-25 | Withdraw | Edwin Morales | | 650.30 | 20,218.94 |
| 12/3/10 | DD12032010-27 | Withdraw | Louis J. Nudo | | 952.06 | 19,266.88 |
| 12/3/10 | DD12032010-29 | Withdraw | Dominic M. Repasky | | 916.21 | 18,350.67 |
| 12/3/10 | DD12032010-3 | Withdraw | Kathleen Burgdorf | | 1,733.21 | 16,617.46 |
| 12/3/10 | DD12032010-30 | Withdraw | Kathleen M. Rocco | | 754.67 | 15,862.79 |
| 12/3/10 | DD12032010-31 | Withdraw | Mary Beth Stride | | 603.53 | 15,259.26 |
| 12/3/10 | DD12032010-32 | Withdraw | Martin J. Toth | | 462.24 | 14,797.02 |
| 12/3/10 | DD12032010-33 | Withdraw | Dianna M. Weaver | | 555.57 | 14,241.45 |
| 12/3/10 | DD12032010-4 | Withdraw | Deborah R. Christmas | | 850.40 | 13,391.05 |
| 12/3/10 | DD12032010-6 | Withdraw | Robert M. Clark | | 1,279.14 | 12,111.91 |
| 12/3/10 | DD12032010-7 | Withdraw | Gayle M. Davis | | 1,653.53 | 10,458.38 |
| 12/3/10 | DD12032010-9 | Withdraw | Mary M. Diana | | 596.45 | 9,861.93 |
| 12/6/10 | | Deposit | Fees | 5,487.86 | | 15,349.79 |
| 12/6/10 | | Deposit | Fees | 6,781.62 | | 22,131.41 |
| 12/6/10 | | Deposit | Fees | 25.00 | | 22,156.41 |
| 12/6/10 | | Withdraw | John Hancock | | 3,374.97 | 18,781.44 |
| 12/6/10 | 5743V | Withdraw | Ohio Dept of Job & Fami | | -630.72 | 19,412.16 |
| 12/6/10 | 5744 | Withdraw | Cash | | 130.00 | 19,282.16 |
| 12/6/10 | 5745 | Withdraw | Cash | | 78.00 | 19,204.16 |
| 12/6/10 | 5746 | Withdraw | Cash | | 52.00 | 19,152.16 |
| 12/6/10 | 5747 | Withdraw | Disabled American Veter | | 260.00 | 18,892.16 |
| 12/7/10 | | Deposit | Fees | 7,307.79 | | 26,199.95 |
| 12/7/10 | | Deposit | Fees | 9,253.41 | | 35,453.36 |
| 12/7/10 | | Withdraw | Postalia | | 100.00 | 35,353.36 |
| 12/7/10 | 5749 | Withdraw | Treasurer, State of Ohio | | 100.00 | 35,253.36 |
| 12/7/10 | 5750 | Withdraw | NBRC | | 20.00 | 35,233.36 |
| 12/7/10 | 5751 | Withdraw | Cash | | 361.00 | 34,872.36 |
| 12/8/10 | | Deposit | Fees | 189.00 | | 35,061.36 |
| 12/8/10 | | Deposit | Fees | 65.00 | | 35,126.36 |
| 12/8/10 | | Withdraw | EFTPS | | 8,258.05 | 26,868.31 |
| 12/8/10 | | Withdraw | Postalia | | 100.00 | 26,768.31 |
| 12/9/10 | | Deposit | Fees | 549.26 | | 27,317.57 |
| 12/9/10 | | Deposit | Misc | 298.99 | | 27,616.56 |
| 12/9/10 | | Deposit | Fees | 60.00 | | 27,676.56 |
| 12/9/10 | 5752 | Withdraw | Chase Auto Finance | | 217.44 | 27,459.12 |
| 12/9/10 | 5753 | Withdraw | Churchill Square Propert | | 650.00 | 26,809.12 |
| 12/10/10 | | Deposit | Fees | 2,859.35 | | 29,668.47 |
| 12/10/10 | | Deposit | Fees | 65.00 | | 29,733.47 |
| 12/10/10 | | Withdraw | Ohio Department of Tax | | 2,006.80 | 27,726.67 |
| 12/10/10 | | Withdraw | RITA | | 241.22 | 27,485.45 |
| 12/10/10 | | Withdraw | John Hancock | | 298.99 | 27,186.46 |
| 12/10/10 | | Withdraw | Chase Card Services | | 1,029.33 | 26,157.13 |
| 12/13/10 | | Deposit | Fees | 1,263.03 | | 27,420.16 |
| 12/13/10 | | Deposit | Misc | 601.38 | | 28,021.54 |
| 12/13/10 | | Deposit | Fees | 4,281.61 | | 32,303.15 |
| 12/13/10 | | Deposit | Fees | 131.48 | | 32,434.63 |
| 12/13/10 | | Deposit | Fees | 436.99 | | 32,871.62 |
| 12/13/10 | 5754 | Withdraw | Steve T Shelton, CPA, In | | 750.00 | 32,121.62 |
| 12/14/10 | | Deposit | Fees | 155.90 | | 32,277.52 |
| 12/14/10 | | Deposit | Fees | 5,576.63 | | 37,854.15 |
| 12/14/10 | | Deposit | Fees | 1,929.59 | | 39,783.74 |

# LIFELINE PARTNERS, INC.
## Account Register
### For the Period From Oct 1, 2010 to Jan 31, 2011
#### 1050 - Checking-FNB

Filter Criteria includes: Report order is by Date.

| Date | Trans No | Type | Trans Desc | Deposit Amt | Withdrawal Amt | Balance |
|------|----------|------|------------|------------:|---------------:|--------:|
| 12/15/10 | | Deposit | Fees | 7,153.05 | | 46,936.79 |
| 12/16/10 | | Deposit | Fees | 2,193.81 | | 49,130.60 |
| 12/16/10 | | Deposit | Fees | 86.96 | | 49,217.56 |
| 12/16/10 | | Withdraw | Postalia | | 100.00 | 49,117.56 |
| 12/17/10 | | Deposit | Fees | 32.71 | | 49,150.27 |
| 12/17/10 | | Deposit | Fees | 75.00 | | 49,225.27 |
| 12/17/10 | | Withdraw | EFTPS | | 7,846.98 | 41,378.29 |
| 12/17/10 | | Withdraw | John Hancock | | 3,203.67 | 38,174.62 |
| 12/17/10 | | Withdraw | FNB-HSA | | 278.66 | 37,895.96 |
| 12/17/10 | 5755 | Withdraw | Cash | | 180.00 | 37,715.96 |
| 12/17/10 | 5756 | Withdraw | Charles Sammarone, Jr. | | 400.00 | 37,315.96 |
| 12/17/10 | DD121710-1 | Withdraw | Robert Aughenbaugh | | 60.00 | 37,255.96 |
| 12/17/10 | DD121710-10 | Withdraw | Donald Wasilewski | | 120.00 | 37,135.96 |
| 12/17/10 | DD121710-2 | Withdraw | Fernando G. Chaves, M | | 230.77 | 36,905.19 |
| 12/17/10 | DD121710-3 | Withdraw | Dr. Nicholas P. DePizzo, | | 230.77 | 36,674.42 |
| 12/17/10 | DD121710-4 | Withdraw | Eastern Ohio Pulmonary | | 650.00 | 36,024.42 |
| 12/17/10 | DD121710-5 | Withdraw | Lawrence Greene | | 200.00 | 35,824.42 |
| 12/17/10 | DD121710-6 | Withdraw | Fran Havas | | 400.00 | 35,424.42 |
| 12/17/10 | DD121710-7 | Withdraw | McGarry,Keith | | 50.00 | 35,374.42 |
| 12/17/10 | DD121710-8 | Withdraw | Edward E. Palumbo Jr | | 424.00 | 34,950.42 |
| 12/17/10 | DD121710-9 | Withdraw | Robert O. Reinhart | | 180.00 | 34,770.42 |
| 12/17/10 | DD12172010-1 | Withdraw | Lynette J. Antonell | | 706.93 | 34,063.49 |
| 12/17/10 | DD12172010-10 | Withdraw | Mary M. Diana | | 353.04 | 33,710.45 |
| 12/17/10 | DD12172010-11 | Withdraw | Valerie L. Domitrovich | | 1,501.92 | 32,208.53 |
| 12/17/10 | DD12172010-12 | Withdraw | Nancy A. Greene | | 328.03 | 31,880.50 |
| 12/17/10 | DD12172010-13 | Withdraw | George Havas | | 1,047.75 | 30,832.75 |
| 12/17/10 | DD12172010-14 | Withdraw | Robert N. Havrilla, Jr | | 871.94 | 29,960.81 |
| 12/17/10 | DD12172010-16 | Withdraw | Lynn M. Hehr | | 151.33 | 29,809.48 |
| 12/17/10 | DD12172010-17 | Withdraw | Pamela A. Kenneally . | | 723.45 | 29,086.03 |
| 12/17/10 | DD12172010-18 | Withdraw | Lisa A. Klempay | | 1,161.79 | 27,924.24 |
| 12/17/10 | DD12172010-19 | Withdraw | Dominic P. Koulianos | | 1,849.74 | 26,074.50 |
| 12/17/10 | DD12172010-2 | Withdraw | Heather L. Brown | | 912.15 | 25,162.35 |
| 12/17/10 | DD12172010-21 | Withdraw | Deborah A. Kupas | | 1,040.18 | 24,122.17 |
| 12/17/10 | DD12172010-22 | Withdraw | Justine C. Latiano | | 879.09 | 23,243.08 |
| 12/17/10 | DD12172010-23 | Withdraw | Scott E. Malachin | | 856.40 | 22,386.68 |
| 12/17/10 | DD12172010-24 | Withdraw | Linda A. McGarry | | 938.66 | 21,448.02 |
| 12/17/10 | DD12172010-25 | Withdraw | Wendy S. Mooney | | 1,436.46 | 20,011.56 |
| 12/17/10 | DD12172010-27 | Withdraw | Edwin Morales | | 598.19 | 19,413.37 |
| 12/17/10 | DD12172010-29 | Withdraw | Louis J. Nudo | | 952.06 | 18,461.31 |
| 12/17/10 | DD12172010-3 | Withdraw | Bruce A. Burgdorf | | 1,771.03 | 16,690.28 |
| 12/17/10 | DD12172010-31 | Withdraw | Dominic M. Repasky | | 491.68 | 16,198.60 |
| 12/17/10 | DD12172010-32 | Withdraw | Kathleen M. Rocco | | 679.88 | 15,518.72 |
| 12/17/10 | DD12172010-33 | Withdraw | Mary Beth Stride | | 505.15 | 15,013.57 |
| 12/17/10 | DD12172010-34 | Withdraw | Dianna M. Weaver | | 555.57 | 14,458.00 |
| 12/17/10 | DD12172010-35 | Withdraw | Louis J. Nudo | | 1,382.43 | 13,075.57 |
| 12/17/10 | DD12172010-4 | Withdraw | Kathleen Burgdorf | | 1,732.92 | 11,342.65 |
| 12/17/10 | DD12172010-5 | Withdraw | Deborah R. Christmas | | 862.89 | 10,479.76 |
| 12/17/10 | DD12172010-7 | Withdraw | Robert M. Clark | | 1,069.97 | 9,409.79 |
| 12/17/10 | DD12172010-8 | Withdraw | Gayle M. Cafaro | | 1,415.70 | 7,994.09 |
| 12/18/10 | | Deposit | Fees | 805.87 | | 8,799.96 |
| 12/20/10 | | Deposit | Fees | 2,233.87 | | 11,033.83 |
| 12/20/10 | | Deposit | Fees | 4,525.09 | | 15,558.92 |
| 12/20/10 | | Deposit | Fees | 71.16 | | 15,630.08 |
| 12/20/10 | | Withdraw | Zurich North America | | 396.87 | 15,233.21 |
| 12/20/10 | 5757 | Withdraw | Cash | | 189.00 | 15,044.21 |
| 12/21/10 | | Deposit | Fees | 6,080.63 | | 21,124.84 |
| 12/21/10 | | Withdraw | Allstate | | 607.01 | 20,517.83 |
| 12/22/10 | | Deposit | Fees | 8,000.33 | | 28,518.16 |
| 12/22/10 | | Deposit | Reimbursement Sleep | 7,186.00 | | 35,704.16 |
| 12/22/10 | | Deposit | Fees | 405.73 | | 36,109.89 |
| 12/22/10 | | Deposit | Fees | 20.00 | | 36,129.89 |
| 12/22/10 | | Withdraw | Ohio Edison | | 525.74 | 35,604.15 |
| 12/22/10 | | Withdraw | Ohio Edison-Belmont | | 86.79 | 35,517.36 |

# LIFELINE PARTNERS, INC.
## Account Register
### For the Period From Oct 1, 2010 to Jan 31, 2011
### 1050 - Checking-FNB

Filter Criteria includes: Report order is by Date.

| Date | Trans No | Type | Trans Desc | Deposit Amt | Withdrawal Amt | Balance |
|------|----------|------|------------|-------------|----------------|---------|
| 12/22/10 | 5758 | Withdraw | Anthem BCBS | | 7,083.83 | 28,433.53 |
| 12/22/10 | 5759 | Withdraw | Avalon Golf and Country | | 129.56 | 28,303.97 |
| 12/22/10 | 5760 | Withdraw | Cocca Development | | 6,212.50 | 22,091.47 |
| 12/22/10 | 5761 | Withdraw | Community Home Medic | | 418.98 | 21,672.49 |
| 12/22/10 | 5762 | Withdraw | Dominion East Ohio | | 23.07 | 21,649.42 |
| 12/22/10 | 5763 | Withdraw | Ivans | | 97.45 | 21,551.97 |
| 12/22/10 | 5764 | Withdraw | Chase Card Services | | 5,990.91 | 15,561.06 |
| 12/22/10 | 5765 | Withdraw | Henry Schein Medical Sy | | 133.33 | 15,427.73 |
| 12/22/10 | 5766 | Withdraw | PNC Bank | | 795.49 | 14,632.24 |
| 12/22/10 | 5767 | Withdraw | Respironics | | 424.56 | 14,207.68 |
| 12/22/10 | 5768 | Withdraw | Rhino Pest Control | | 224.20 | 13,983.48 |
| 12/22/10 | 5769 | Withdraw | Sams Club Discover | | 1,345.98 | 12,637.50 |
| 12/23/10 | | Withdraw | GMAC | | 499.40 | 12,138.10 |
| 12/27/10 | | Deposit | Fees | 8,604.72 | | 20,742.82 |
| 12/28/10 | | Deposit | Fees | 4,946.33 | | 25,689.15 |
| 12/28/10 | | Deposit | Fees | 615.00 | | 26,304.15 |
| 12/29/10 | | Deposit | Fees | 6,284.66 | | 32,588.81 |
| 12/30/10 | | Deposit | Fees | 40.20 | | 32,629.01 |
| 12/31/10 | | Withdraw | Postalia | | 100.00 | 32,529.01 |
| 12/31/10 | | Withdraw | FNB-HSA | | 278.66 | 32,250.35 |
| 12/31/10 | 5770 | Withdraw | Cash | | 180.00 | 32,070.35 |
| 12/31/10 | 5771 | Withdraw | Charles Sammarone, Jr. | | 400.00 | 31,670.35 |
| 12/31/10 | DD123110-1 | Withdraw | Robert Aughenbaugh | | 60.00 | 31,610.35 |
| 12/31/10 | DD123110-2 | Withdraw | Fernando G. Chaves, M | | 230.77 | 31,379.58 |
| 12/31/10 | DD123110-3 | Withdraw | Dr. Nicholas P. DePizzo, | | 230.77 | 31,148.81 |
| 12/31/10 | DD123110-4 | Withdraw | Eastern Ohio Pulmonary | | 650.00 | 30,498.81 |
| 12/31/10 | DD123110-5 | Withdraw | Lawrence Greene | | 250.00 | 30,248.81 |
| 12/31/10 | DD123110-6 | Withdraw | Edward E. Palumbo Jr | | 406.00 | 29,842.81 |
| 12/31/10 | DD123110-7 | Withdraw | Robert O. Reinhart | | 60.00 | 29,782.81 |
| 12/31/10 | DD123110-8 | Withdraw | James Walters | | 120.00 | 29,662.81 |
| 12/31/10 | DD12312010-1 | Withdraw | Lynette J. Antonell | | 706.93 | 28,955.88 |
| 12/31/10 | DD12312010-10 | Withdraw | Robert N. Havrilla, Jr | | 895.12 | 28,060.76 |
| 12/31/10 | DD12312010-12 | Withdraw | Lynn M. Hehr | | 267.72 | 27,793.04 |
| 12/31/10 | DD12312010-13 | Withdraw | Pamela A. Kenneally | | 628.86 | 27,164.18 |
| 12/31/10 | DD12312010-14 | Withdraw | Lisa A. Klempay | | 1,220.85 | 25,943.33 |
| 12/31/10 | DD12312010-15 | Withdraw | Dominic P. Koulianos | | 1,800.21 | 24,143.12 |
| 12/31/10 | DD12312010-17 | Withdraw | Deborah A. Kupas | | 1,081.97 | 23,061.15 |
| 12/31/10 | DD12312010-18 | Withdraw | Justine C. Latiano | | 854.60 | 22,206.55 |
| 12/31/10 | DD12312010-19 | Withdraw | Scott E. Malachin | | 834.52 | 21,372.03 |
| 12/31/10 | DD12312010-2 | Withdraw | Heather L. Brown | | 890.35 | 20,481.68 |
| 12/31/10 | DD12312010-20 | Withdraw | Linda A. McGarry | | 902.23 | 19,579.45 |
| 12/31/10 | DD12312010-21 | Withdraw | Wendy S. Mooney | | 1,521.42 | 18,058.03 |
| 12/31/10 | DD12312010-23 | Withdraw | Edwin Morales | | 560.20 | 17,497.83 |
| 12/31/10 | DD12312010-25 | Withdraw | Louis J. Nudo | | 952.79 | 16,545.04 |
| 12/31/10 | DD12312010-27 | Withdraw | Dominic M. Repasky | | 783.87 | 15,761.17 |
| 12/31/10 | DD12312010-28 | Withdraw | Kathleen M. Rocco | | 661.75 | 15,099.42 |
| 12/31/10 | DD12312010-29 | Withdraw | Mary Beth Stride | | 496.17 | 14,603.25 |
| 12/31/10 | DD12312010-3 | Withdraw | Gayle N. Cafaro | | 1,410.29 | 13,192.96 |
| 12/31/10 | DD12312010-30 | Withdraw | Dianna M. Weaver | | 555.57 | 12,637.39 |
| 12/31/10 | DD12312010-5 | Withdraw | Deborah R. Christmas | | 881.63 | 11,755.76 |
| 12/31/10 | DD12312010-7 | Withdraw | Robert M. Clark | | 1,100.25 | 10,655.51 |
| 12/31/10 | DD12312010-8 | Withdraw | Valerie L. Domitrovich | | 1,423.12 | 9,232.39 |
| 12/31/10 | DD12312010-9 | Withdraw | Nancy A. Greene | | 318.83 | 8,913.56 |
| 12/31/10 | svc 1231 | Other | bank service charge | | 108.15 | 8,805.41 |
| 12/31/10 | transfer | Other | transfer | 26,000.00 | | 34,805.41 |
| 12/31/10 | transfer Chase | Other | Transfer to new checkin | | 27,000.00 | 7,805.41 |
| 1/3/11 | | Withdraw | CarlHo Properties, LLC | | 4,000.00 | 3,805.41 |
| 1/4/11 | | Withdraw | Sage Payment Solutions | | 52.23 | 3,753.18 |
| 1/5/11 | | Deposit | Fees | 6,700.31 | | 10,453.49 |
| 1/5/11 | | Deposit | Fees | 100.00 | | 10,553.49 |
| 1/5/11 | | Withdraw | EFTPS | | 6,154.32 | 4,399.17 |
| 1/5/11 | 5773 | Withdraw | LifeLine Partners | | 3,599.77 | 799.40 |
| 1/6/11 | | Deposit | Fees | 101.70 | | 901.10 |

# LIFELINE PARTNERS, INC.
## Account Register
### For the Period From Oct 1, 2010 to Jan 31, 2011
### 1050 - Checking-FNB

Filter Criteria includes: Report order is by Date.

| Date | Trans No | Type | Trans Desc | Deposit Amt | Withdrawal Amt | Balance |
|------|----------|------|-----------|------------|----------------|---------|
| 1/7/11 | | Deposit | Fees | 65.00 | | 966.10 |
| 1/7/11 | | Withdraw | Postalia | | 100.00 | 866.10 |
| 1/8/11 | | Deposit | Fees | 77.32 | | 943.42 |
| 1/10/11 | | Deposit | Fees | 20.00 | | 963.42 |
| 1/11/11 | 1006 | Withdraw | LifeLine Partners | | -16,249.16 | 17,212.58 |
| 1/11/11 | 1007 | Withdraw | LifeLine Partners | | -858.66 | 18,071.24 |
| 1/12/11 | | Deposit | Fees | 8,097.90 | | 26,169.14 |
| 1/12/11 | | Deposit | Fees | 32.44 | | 26,201.58 |
| 1/13/11 | | Deposit | Fees | 20.00 | | 26,221.58 |
| 1/14/11 | | Withdraw | FNB-HSA | | 858.66 | 25,362.92 |
| 1/14/11 | DD011411-1 | Withdraw | Robert Aughenbaugh | | 110.00 | 25,252.92 |
| 1/14/11 | DD011411-2 | Withdraw | Fernando G. Chaves, M | | 230.77 | 25,022.15 |
| 1/14/11 | DD011411-3 | Withdraw | Dr. Nicholas P. DePizzo, | | 230.77 | 24,791.38 |
| 1/14/11 | DD011411-4 | Withdraw | Eastern Ohio Pulmonary | | 650.00 | 24,141.38 |
| 1/14/11 | DD011411-5 | Withdraw | Lawrence Greene | | 300.00 | 23,841.38 |
| 1/14/11 | DD011411-6 | Withdraw | Edward E. Palumbo Jr | | 350.00 | 23,491.38 |
| 1/14/11 | DD011411-7 | Withdraw | Donald Wasilewski | | 150.00 | 23,341.38 |
| 1/14/11 | DD011142011-1 | Withdraw | Lynette J. Antonell | | 683.28 | 22,658.10 |
| 1/14/11 | DD011142011-10 | Withdraw | Robert N. Havrilla, Jr | | 1,049.04 | 21,609.06 |
| 1/14/11 | DD011142011-11 | Withdraw | Lynn M. Hehr | | 283.45 | 21,325.61 |
| 1/14/11 | DD011142011-12 | Withdraw | Pamela A. Kenneally | | 288.73 | 21,036.88 |
| 1/14/11 | DD011142011-13 | Withdraw | Lisa A. Klempay | | 1,202.90 | 19,833.98 |
| 1/14/11 | DD011142011-14 | Withdraw | Dominic P. Koulianos | | 2,281.30 | 17,552.68 |
| 1/14/11 | DD011142011-16 | Withdraw | Deborah A. Kupas | | 759.72 | 16,792.96 |
| 1/14/11 | DD011142011-17 | Withdraw | Justine C. Latiano | | 880.55 | 15,912.41 |
| 1/14/11 | DD011142011-18 | Withdraw | Scott E. Malachin | | 953.31 | 14,959.10 |
| 1/14/11 | DD011142011-19 | Withdraw | Linda A. McGarry | | 921.17 | 14,037.93 |
| 1/14/11 | DD011142011-2 | Withdraw | Heather L. Brown | | 899.75 | 13,138.18 |
| 1/14/11 | DD011142011-20 | Withdraw | Wendy S. Mooney | | 1,649.74 | 11,488.44 |
| 1/14/11 | DD011142011-21 | Withdraw | Edwin Morales | | 589.22 | 10,899.22 |
| 1/14/11 | DD011142011-22 | Withdraw | Louis J. Nudo | | 975.87 | 9,923.35 |
| 1/14/11 | DD011142011-24 | Withdraw | Kathleen M. Rocco | | 719.60 | 9,203.75 |
| 1/14/11 | DD011142011-25 | Withdraw | Mary Beth Stride | | 517.64 | 8,686.11 |
| 1/14/11 | DD011142011-26 | Withdraw | Dianna M. Weaver | | 578.94 | 8,107.17 |
| 1/14/11 | DD011142011-27 | Withdraw | Louis J. Nudo | | 1,510.91 | 6,596.26 |
| 1/14/11 | DD011142011-4 | Withdraw | Gayle M. Cafaro | | 1,360.10 | 5,236.16 |
| 1/14/11 | DD011142011-5 | Withdraw | Deborah R. Christmas | | 1,074.02 | 4,162.14 |
| 1/14/11 | DD011142011-6 | Withdraw | Robert M. Clark | | 1,092.15 | 3,069.99 |
| 1/14/11 | DD011142011-7 | Withdraw | Marcia DeAscentis | | 601.68 | 2,468.31 |
| 1/14/11 | DD011142011-8 | Withdraw | Valerie L. Domitrovich | | 1,531.74 | 936.57 |
| 1/14/11 | DD011142011-9 | Withdraw | Nancy A. Greene | | 164.73 | 771.84 |
| 1/17/11 | | Withdraw | Postalia | | 100.00 | 671.84 |
| 1/18/11 | | Deposit | Fees | 25.00 | | 696.84 |
| 1/18/11 | 5774 | Withdraw | LifeLine Partners | | 6,121.69 | -5,424.85 |
| 1/19/11 | | Deposit | Fees | 6,149.25 | | 724.40 |
| 1/19/11 | | Deposit | Fees | 25.00 | | 749.40 |
| 1/23/11 | | Withdraw | GMAC | | 499.40 | 250.00 |
| | | | Total | 462,853.03 | 507,320.42 | |



# LIFELINE PARTNERS, INC.
## Check Register
### For the Period From Jan 1, 2010 to Dec 31, 2010

Filter Criteria includes: 1) Vendor ID's from Bruce Burgdorf to Bruce Burgdorf. Report order is by Date.

| Check # | Date | Payee | Cash Account | Amount |
|---------|------|-------|--------------|--------|
| 5232 | 3/3/10 | Bruce Burgdorf | 1050 | 186.91 |
| 5447 | 6/15/10 | Bruce Burgdorf | 1050 | 130.80 |
| 5537 | 8/19/10 | Bruce Burgdorf | 1050 | 216.15 |
| 5736 | 11/18/10 | Bruce Burgdorf | 1050 | 100.00 |
| **Total** | | | | **633.86** |

*reimbursements for expenses paid by bruce*

# LIFELINE PARTNERS, INC.
## Check Register
## For the Period From Jan 1, 2010 to Dec 31, 2010

Filter Criteria includes: 1) Vendor ID's from Kathy Burgdorf to Kathy Burgdorf. Report order is by Date.

| Check # | Date | Payee | Cash Account | Amount |
|---------|------|-------|--------------|--------|
| 5430 | 6/14/10 | Kathy Burgdorf | 1050 | 4,633.82 |
| **Total** | | | | **4,633.82** |

*reimbursement for Kraftmaid cabinets*

# LIFELINE PARTNERS, INC.
## Check Register
## For the Period From Jan 1, 2010 to Dec 31, 2010

Filter Criteria includes: 1) Vendor ID's from George Havas to George Havas. Report order is by Date.

| Check # | Date | Payee | Cash Account | Amount |
|---------|------|-------|--------------|--------|
| 5364 | 5/12/10 | George Havas | 1050 | 877.43 |
| 5437 | 6/15/10 | George Havas | 1050 | 877.43 |
| 5607 | 9/16/10 | George Havas | 1050 | 2,632.29 |
| 5659 | 10/7/10 | George Havas | 1050 | 877.43 |
| 5726 | 11/17/10 | George Havas | 1050 | 877.43 |
| **Total** | | | | **6,142.01** |

loan pmts.

# United States Bankruptcy Court
## Northern District of Ohio

In re   **LifeLine Partners, Inc.**          Case No. _____

                                    Debtor(s)      Chapter    **11**

## DISCLOSURE OF COMPENSATION OF ATTORNEY FOR DEBTOR(S)

1.     Pursuant to 11 U.S.C. § 329(a) and Bankruptcy Rule 2016(b), I certify that I am the attorney for the above-named debtor and that compensation paid to me within one year before the filing of the petition in bankruptcy, or agreed to be paid to me, for services rendered or to be rendered on behalf of the debtor(s) in contemplation of or in connection with the bankruptcy case is as follows:

| | | |
|---|---|---|
| For legal services, I have agreed to accept | $ | * |
| Prior to the filing of this statement I have received | $ | 14,351.00 |
| Balance Due | $ | * |

            * Fees will be requested upon proper
               application to the U.S. Bankruptcy Court.

2.     The source of the compensation paid to me was:

       ☒ Debtor      ☐ Other (specify):

3.     The source of compensation to be paid to me is:

       ☒ Debtor      ☐ Other (specify):

4.     ☒ I have not agreed to share the above-disclosed compensation with any other person unless they are members and associates of my law firm.

       ☐ I have agreed to share the above-disclosed compensation with a person or persons who are not members or associates of my law firm. A copy of the agreement, together with a list of the names of the people sharing in the compensation is attached.

5.     In return for the above-disclosed fee, I have agreed to render legal service for all aspects of the bankruptcy case, including:

       a.  Analysis of the debtor's financial situation, and rendering advice to the debtor in determining whether to file a petition in bankruptcy;
       b.  Preparation and filing of any petition, schedules, statement of affairs and plan which may be required;
       c.  Representation of the debtor at the meeting of creditors and confirmation hearing, and any adjourned hearings thereof;
       d.  [Other provisions as needed]

6.     By agreement with the debtor(s), the above-disclosed fee does not include the following service:

---

### CERTIFICATION

     I certify that the foregoing is a complete statement of any agreement or arrangement for payment to me for representation of the debtor(s) in this bankruptcy proceeding.

Dated:    01/21/2011 _____      /s/ Melissa Macejko
                                                  **Melissa M. Macejko 0070974**
                                                  **Suhar & Macejko, LLC**
                                                  **29 E. Front St., 2nd Floor**
                                                  **P.O. Box 1497**
                                                  **Youngstown, OH 44501-1497**
                                                  **(330) 744-9007  Fax: (330) 744-5857**
                                                  **mmacejko@suharlaw.com**

Software Copyright (c) 1996-2010 CCH INCORPORATED - www.bestcase.com          Best Case Bankruptcy

# United States Bankruptcy Court

## Northern District of Ohio

In re     **LifeLine Partners, Inc.**                                   ,      Case No. _____

                                                         Debtor         Chapter _____**11**_____

## LIST OF EQUITY SECURITY HOLDERS

Following is the list of the Debtor's equity security holders which is prepared in accordance with Rule 1007(a)(3) for filing in this chapter 11 case.

| Name and last known address or place of business of holder | Security Class | Number of Securities | Kind of Interest |
|---|---|---|---|
| **George Havas**<br>**1111 Mansell**<br>**Youngstown, OH 44505** | | **9% shareholder** | |
| **Kathleen Burgdorf**<br>**5692 Lamplighter**<br>**Girard, OH 44420** | | **82% shareholder** | |
| **Sarah Kapp**<br>**963 Hereford Dr.**<br>**Akron, OH 44303** | | **9% shareholder** | |

## DECLARATION UNDER PENALTY OF PERJURY ON BEHALF OF CORPORATION OR PARTNERSHIP

     I, the President of the corporation named as the debtor in this case, declare under penalty of perjury that I have read the foregoing List of Equity Security Holders and that it is true and correct to the best of my information and belief.

Date___**January 21, 2011**_____      Signature _**/s/ Kathleen Burgdorf**_____

                                                                    **Kathleen Burgdorf**
                                                                    **President**

*Penalty for making a false statement or concealing property*:   Fine of up to $500,000 or imprisonment for up to 5 years or both.
18 U.S.C §§ 152 and 3571.

   **0**___ continuation sheets attached to List of Equity Security Holders

# United States Bankruptcy Court
## Northern District of Ohio

In re    **LifeLine Partners, Inc.**            Case No. _____

                   Debtor(s)     Chapter    **11**

# VERIFICATION OF CREDITOR MATRIX

I, the President of the corporation named as the debtor in this case, hereby verify that the attached list of creditors is true and correct to the best of my knowledge.

Date:    **January 21, 2011**            **/s/ Kathleen Burgdorf** _____

                                   **Kathleen Burgdorf/President**
                                   Signer/Title

Software Copyright (c) 1996-2010 CCH INCORPORATED - www.bestcase.com        Best Case Bankruptcy

.

ADT SECURITY SERVICES, INC.
PO BOX 371967
PITTSBURGH PA 15250-7967


BRUCE BURGDORF
5692 LAMPLIGHTER
GIRARD OH 44420


CARLHO PROPERTIES
5692 LAMPLIGHTER
GIRARD OH 44420


CARLHO PROPERTIES, LLC
5692 LAMPLIGHTER
GIRARD OH 44420


CHASE AUTO FINANCE
PO BOX 9001801
LOUISVILLE KY 40290-1801


CHASE CARD SERVICES
PO BOX 15153
WILMINGTON DE 19886-5153


CHURCHILL SQUARE PROPERTIES
49 ROCHE WAY
YOUNGSTOWN OH 44512


COCCA DEVELOPMENT, LTD.
100 DEBARTOLO PLACE
SUITE 400
YOUNGSTOWN OH 44512


COMDOC, INC.
PO BOX 1573
AKRON OH 44309-1573


FIRST NATIONAL BANK
4140 E. STATE ST.
HERMITAGE PA 16148


FIRST NATIONAL BANK OF PENNSYLVANIA
COMMERCIAL HERMITAGE
1 FEDERAL PLAZA WEST
YOUNGSTOWN OH 44503

GEORGE HAVAS
1111 MANSELL
YOUNGSTOWN OH 44505


HILL BARTH & KING LLC
CITY CENTRE ONE, SUITE 514
100 FEDERAL PLAZA EAST
YOUNGSTOWN OH 44503


KATHLEEN BURGDORF
5692 LAMPLIGHTER
GIRARD OH 44420


LIFELINE PARTNERS OF CANTON, INC.
6520 WHIPPLE AVE.
NORTH CANTON OH 44720


LIFELINE PARTNERS SLEEP &
DIAGNOSTIC, INC.
6520 WHIPPLE AVE.
NORTH CANTON OH 44720


MAHONING VALLEY INDUSTRIAL
LOAN FUND
4319 BELMONT AVE.
YOUNGSTOWN OH 44505


O'NEALS TARPAULIN
549 W. INDIANOLA AVE.
YOUNGSTOWN OH 44511


PHILLIPS-SEKANICK ARCHITECTS
142 E. MARKET ST.
WARREN OH 44481


PNC BANK
PO BOX 450
YOUNGSTOWN OH 44501


SAM'S CLUB
PO BOX 960016
ORLANDO FL 32896-0016

LifeLine Partners, Inc. -

THE EMERALD HEALTH NETWORK, INC.
PO BOX 73746-N
CLEVELAND OH 44193-1049

# United States Bankruptcy Court
## Northern District of Ohio

In re **LifeLine Partners, Inc.** _____

Case No. _____

Chapter **11**

Debtor(s)

## CORPORATE OWNERSHIP STATEMENT (RULE 7007.1)

Pursuant to Federal Rule of Bankruptcy Procedure 7007.1 and to enable the Judges to evaluate possible disqualification or recusal, the undersigned counsel for __LifeLine Partners, Inc.__ in the above captioned action, certifies that the following is a (are) corporation(s), other than the debtor or a governmental unit, that directly or indirectly own(s) 10% or more of any class of the corporation's(s') equity interests, or states that there are no entities to report under FRBP 7007.1:

■ None [*Check if applicable*]

__January 21, 2011__
Date

**/s/ Melissa M. Macejko**
**Melissa M. Macejko 0070974**
Signature of Attorney or Litigant
Counsel for __LifeLine Partners, Inc.__
**Suhar & Macejko, LLC**
**29 E. Front St., 2nd Floor**
**P.O. Box 1497**
**Youngstown, OH 44501-1497**
**(330) 744-9007 Fax:(330) 744-5857**
**mmacejko@suharlaw.com**

Software Copyright (c) 1996-2010 CCH INCORPORATED - www.bestcase.com

Best Case Bankruptcy